# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

UNITED STATES OF AMERICA,

    v.                                        CASE NO. 8:21-cr-355-WFJ-CPT

GREGORY ALLEN WILLIAMSON,

    Defendant.
_____/

## MOTION TO SUPPRESS

Defendant Gregory Allen Williamson, pursuant to the Fourth Amendment of the Constitution of the United States, respectfully requests to suppress evidence gathered from the result of a search warrant. For the reasons explained in the Memorandum below, this motion should be granted.

## INTRODUCTION

The results of the search warrants must be suppressed. Yahoo! acted as a state actor without a warrant, in violation of the Fourth Amendment. Even if Yahoo! were not a state actor, law enforcement exceeded the scope of Yahoo!'s private search and therefore the fruits of the search must still be suppressed.

Moreover, the warrant applications for the search of Mr. Williamson's residence and to Yahoo! contained material misrepresentations and omissions, including that NCMEC had previously identified material as child pornography when it had not.

## FACTUAL BACKGROUND

1. Mr. Williamson was arrested on or about November 17, 2021, pursuant to an Indictment and supporting affidavit alleging violations of 18 U.S.C. § 2422(b), 18 U.S.C. § 2252(a), 18 U.S.C. § 2252(a)(2), and 18 U.S.C. § 2252(a)(4)(B).

2. This case arises from a report from Oath Holdings d/b/a Yahoo! ("Yahoo!") to the National Center for Missing and Exploited Children ("NCMEC") through its CyberTipline reporting system.

3. Attached as **Exhibit A** is the CyberTipline report from NCMEC. Section A of that report contains all the information provided by Yahoo! to NCMEC.

4. The CyberTipline report identifies seven images and provides the date they were uploaded through a Yahoo! e-mail account titled *vladlover50@yahoo.com*, and the internet protocol ("IP") address from which they were uploaded. Section A of the CyberTipline report states: "Did Reporting ESP view entire contents of uploaded file?: Yes." However, it is unclear from the report what this means, and it does not identify who at Yahoo! identified, what was viewed, or a description of the contents. It may be that Yahoo! only viewed the computer code of the files and did not view the actual images. Neither Yahoo! nor NCMEC provided any additional information as to what may or may not have

been viewed by Yahoo! NCMEC did not view the images in the CyberTipline Report.

5. Section B of the report adds automated information that cross-references the "hash"[1] information of the image to other images that NCMEC has previously categorized. The seven images were put into categories titled "CP (Unconfirmed)," "Apparent Child Pornography," and "Child Clothed." Ex. A, p. 8.

6. Undersigned counsel spoke with the General Counsel for the NCMEC, Yiota Souras, who defined these labels. "CP (Unconfirmed)" means that the age of the person in the photograph could not be determined. This is also known as "age difficult." "Apparent Child Pornography" means that the image meets the federal definition of child pornography. And "Child Clothed" means that the child is clothed, which could also be defined as "child erotica."

7. NCMEC reported the information to the Central Florida Internet Crimes Against Children Task Force. Ex. A, p. 11.

8. On November 11, 2020, Detective James Keller of the North Port Police Department received the CyberTipline Report. Based on this information,

---

[1] "A hash value 'is a unique string of letters and numbers that reflects the content of an image or video file" and is created using a common algorithm like MD5. The series of letters and numbers are a file's digital fingerprint.'" *United States v. Montijo*, 2:21-CR-75-SPC-NPM, 2022 WL 93535, at *2 (M.D. Fla. Jan. 10, 2022).

3

Detective Keller submitted a subpoena to Comcast for the subscriber information of the IP address identified in the CyberTipline Report. Comcast identified Aliona Williamson, Mr. Williamson's wife, as the subscriber, along with the address of their residence in North Port.

9. Detective Keller submitted a warrant application to search Mr. Williamson's residence. A copy of that Warrant Application is attached as **Exhibit B**. As part of that warrant application, he stated that he reviewed the images. For three of the seven images stated that "NCMEC had categorized this image previously as Child Pornography," when in fact NCMEC has actually identified those images as "CP (Unconfirmed)" (a/k/a "age difficult"). Ex. B, at p. 4.

10. Detective Keller identifies two of the other seven images as "age difficult," and states that term "means it is difficult to determine an approximate age of the subject in the image." *Id*.

11. In the final image ("image.1-1.jpeg"), Det. Keller does not identify whether the subject he describes is nude. Further, this was allegedly uploaded through Yahoo! on September 8, 2020. However, pursuant to a warrant served on Yahoo!, Yahoo! produced a chart showing dates that the relevant e-mail account was logged into, and the last date was September 5, 2020. See Yahoo! Login List, attached as **Exhibit C**.

12. Despite recognizing that not all images are child pornography, Detective Keller states in the Warrant Application that he "determined that the reported user uploaded seven pictures of child sexual abusive material." *Id*. That discrepancy is not explained in the Warrant Application.

13. The Warrant Application was approved by Circuit Judge Rochelle Curley on January 27, 2021. The warrant permitted a search of Mr. Williamson's residence and seizure of certain items, including electronic devices. *Id*. at p. 12-13. Judge Curley was not provided the actual images as part of the Warrant Application.

14. On January 27, 2021, Mr. Williamson's home was searched and he was arrested. He has remained in custody since that time.

## **MEMORANDUM OF LAW**

**I.    The evidence seized pursuant to the search warrant must be suppressed because the search here was beyond the scope of a private search.**

The evidence seized pursuant to the search warrant in this matter must be suppressed. Yahoo! acted as a state actor in its search of the account allegedly belonging to Mr. Williamson and was therefore subject to the Fourth Amendment. Even if Yahoo! was not a state actor, the search by law enforcement and its agents exceeded the scope of a private search and the warrant results must nonetheless be suppressed.

**A.    The Fourth Amendment**

The Fourth Amendment protects individuals against unreasonable searches and seizures. *See Hudson v. Michigan*, 547 U.S. 586, 593 (2006) ("Until a valid warrant has issued, citizens are entitled to shield 'their persons, houses, papers, and effects' from the government's scrutiny." (*quoting* U.S. Const. amend. IV)). It provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

When a search or seizure is conducted by the government without a warrant, the government must establish that it did not violate the Fourth Amendment. *See United States v. Freire*, 710 F.2d 1515, 1519 (11th Cir. 1983) ("Upon a motion to suppress evidence garnered through a *warrantless* search and seizure, the burden of proof as to the reasonableness of the search rests with the prosecution."). Under the exclusionary rule, evidence resulting from an unconstitutional search or seizure cannot be admitted as proof against the victim of the search, and therefore must be suppressed. *See Wong Sun v. United States*, 371 U.S. 471, 485 (1963).

### B. Yahoo! is a state actor for Fourth Amendment purposes.

Yahoo! is an agent of the government for Fourth Amendment purposes because it has special rights and obligations granted by law, and because it maintains a nexus and special relationship with NCMEC, which is also a state actor.

### 1. Yahoo! has special obligations and privileges under the law.

The Supreme Court has held that "surely [it] cannot be that government, state or federal, is able to evade the most solemn obligations imposed in the Constitution by simply resorting to the corporate form." *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 375 (1995). In *Lugar v. Edmondson*, the Supreme Court held that an entity is a state actor if the constitutional deprivation is "fairly attributable to the State." 457 U.S. 922, 937 (1982). The determination of whether a private entity is a state actor must take into consideration all circumstances and facts and no one fact is dispositive. *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295-96 (2001). Further, "only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 722 (1961).

The Supreme Court has recognized that what might convert a private actor to a state actor might vary with the circumstances of the case, and so do the tests used to analyze that question. *Lugar*, 457 U.S. at 939. The Court has articulated a number of such tests, including the "public function" test, the "state compulsion" test, and the "nexus" test. *Id*. As articulated in the Eleventh Circuit, those standards are described as whether: (1) the state has coerced or at least significantly encouraged the action alleged to have violated the Constitution ("the state compulsion" test); (2) the private parties performed a public function that was traditionally the exclusive prerogative of the state (the "public function test"); or (3) the state had so far insinuated itself into a position of interdependence with the private parties that it was a joint participant in the enterprise (the "nexus" test). *Washington v. Veterans of Foreign Wars of U.S.*, 196 Fed. Appx. 777, 779 (11th Cir. 2006.

Here, Yahoo! is a "state actor" and satisfies all three tests. Federal law compels Yahoo! to report potential child pornography to NCMEC. 18 U.S.C. § 2258A.[2] Moreover, the failure to do so subjects Yahoo! to punishment, including fines of hundreds of thousands of dollars per incident. 18 U.S.C. § 2258A(e). As part of its obligations under § 2258A, Yahoo!, like NCMEC, is also entitled to

---

[2] Yahoo! is a "provider" as that term is defined in 18 U.S.C. § 2258A. *See* 18 U.S.C. § 2258E(6).

possess child pornography.³ Absent such a special privilege, it would otherwise commit serious federal crimes on a regular basis by possessing such child pornography. Instead, it is immune from such prosecution.⁴ Moreover, by putting the onus on internet service providers like Yahoo! to report child pornography, the government has delegated to Yahoo! and NCMEC the "public function" of law enforcement, which would otherwise be solely responsible for investigating such crimes. Thus, the government has, at the very least, "significantly encouraged" (if not outright compelled) the search by Yahoo! here, and has delegated an essential law enforcement function to Yahoo! and therefore made it a "state actor" for Fourth Amendment purposes.

Moreover, Yahoo! also satisfies the "nexus" test due to its close relationship with NCMEC, which is itself a state actor. *See e.g. U.S. v. Ackerman*, 831 F.3d 1292 (10th Cir. 2016) (holding NCMEC to be a governmental entity or agency for amendment purposes). NCMEC is a state actor because it enjoys a "broad delegation of power" that provides it with more law enforcement powers than

---

³ *See* 18 U.S.C. § 2285A(b)(4), which permits a provider to have "custody" of "any visual depiction of apparent child pornography" and make and provide it to NCMEC.

⁴ Roger Allan Ford, *Data Scams*, 57 Hous. L. Rev. 111, 183 (2019) ("Under federal law, service providers are obligated to report known instances of child pornography to NCMEC, and both they and the NCMEC are immune from liability for doing so.").

9

private individuals could invoke. *See* 18 U.S.C. § 2258A. For example, NCMEC is statutorily delegated powers which mandate that it is the sole collaborator—with regards to its duties—with state and federal law enforcement. *Ackerman*, 831 F.3d at 1296. Of relevance here is the CyperTipline. NCMEC alone maintains the Tipline. *Id*. In addition, internet service providers (like Yahoo!) must report any exploitation to NCMEC, not to law enforcement agencies. *Id*. Then, NCMEC must forward a report to law enforcement. *Id*. In addition, unlike a private entity, NCMEC can receive and forward the child pornography without civil or criminal prosecution. *Id*. at 1297.

Because NCMEC is a state actor, Yahoo!'s close relationship with NCMEC renders Yahoo! a state actor as well. In the Eleventh Circuit "The nexus/joint action test applies where "the state has so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." *Focus On The Family v. Pinellas Suncoast Transit Authority*, 344 F.3d 1263, 1277 (11th Cir. 2003) (*quoting Willis v. Un. Health Servs., Inc.*, 993 F.2d 837, 840 (11th Cir. 1993)). "To charge a private party with state action under this standard, the governmental body and private party must be intertwined in a 'symbiotic relationship.'" *Nat'l Broad. Co., Inc. v. Communications Workers of Am., AFL-CIO*, 860 F.2d 1022, 1027 (11th Cir. 1988) (quoting *Jackson v. Metropolitan Edison Company*, 419 U.S. 345, 349 (1974)).

NCMEC and Yahoo! maintain such a "symbiotic relationship." *Id*. As discussed above, federal law requires Yahoo! to report to NCMEC. 18 U.S. Code § 2258A. Yahoo! will suffer a serious penalty if it fails to adhere to the reporting mandates. *Id*. In addition, once Yahoo! sends a tip to NCMEC, it must preserve the file. Although Yahoo! is not required by law to search its email accounts for child pornography, this occurs regularly based on Yahoo! relationship with NCMEC. Indeed, the NCMEC CyberTipline system could not function without the reporting of providers like Yahoo!

Indeed, Yahoo! (through its owner Verizon) touts its partnership with NCMEC. Its corporate policy describes it as having a "close partnership" with NCMEC.[5] Verizon is a "Protector level" sponsor of NCMEC and has donated millions of dollars to NCMEC to "further support NCMEC's mission…[and] to amplify NCMEC's voice." *Id*. Specifically, regarding the CyberTipline, Yahoo! and NCMEC are entwined based on shared legal duties and their actions reflect a joint effort and commitment to work together. To be sure, providers like Yahoo! are crucial (and legally required) to enable NCMEC to provide its government function.

---

[5] *See* Verizon Digital Safety Policy, available at https://www.verizon.com/about/our-company/company-policies/digital-safety.

By performing its role, Yahoo! invaded an e-mail address to report the information in the CyberTipline. E-mail is subject to a legitimate expectation of privacy. Email is an "indispensable part in the Information Age" to the extent that it is "essential or necessary." *United States v. Warshak*, 631 F.3d 266, 286 (6th Cir. 2010). It has become a preferred and critical mode of communication. *Id*. It is almost impossible not to have an email address. *Id*. Additionally, email accounts store more than expressive communication; it is "an account of its owner's life." *Id*. In summary, the Government should not be able to skirt the constitutional duties of the Fourth Amendment to illegally search for specific content in a person's email account through joint action with private corporations.

For these reasons, Yahoo! is a state actor and its actions constituted a warrantless search. Absent Yahoo!'s search and reporting to NCMEC (and subsequently to law enforcement), no warrant could have been issued. Therefore, the results of that search must be suppressed.

### C.   **Even if Yahoo! conducted a private search, law enforcement exceeded the scope of that search.**

If the Court finds Yahoo! not to be a state actor and instead acted as a private party, then law enforcement's subsequent search exceeded the scope of the private search and must therefore be excluded. Here, by viewing the images from the email account without knowing whether they had been viewed by Yahoo!, Detective Keller exceeded the scope of any private search. Keller relied on

descriptions of those images in applying for the warrant to search Mr. Williamson's residence.

While the Fourth Amendment does not apply to searches by private individuals ("the private search doctrine"), if a subsequent, warrantless search by law enforcement exceeds the scope of the private search, the evidence must nonetheless be suppressed. *See Walter v. United States*, 447 U.S. 649 (1980); *United States v. Jacobsen,* 466 U.S. 109, 120 (1984).

Here, neither NCMEC nor Detective Keller had any actual information that Yahoo! actually viewed the seven images that were the basis of the Warrant Application. While the NCMEC CyberTipline report states that "Did Reporting ESP view entire contents of uploaded file?: Yes." This phrase is entirely undefined in the CyberTipline Report. At best, this is hearsay-within-hearsay and not sufficient to form the basis for Detective Keller to know what information was subject to the "private search" doctrine, or to know whether he was exceeding the scope of that search in viewing the images himself. Hearsay may be used to support a warrant, but must have a "substantial basis for crediting the hearsay." *United States v. Ventresca*, 380 U.S. 102, 108 (1965) (*quoting United States v. Jones*, 362 U.S. 257 (1960) (*overturned on other grounds by United States v. Salvucci*, 448 U.S. 83 (1980)).

13

Here, there was no such basis for crediting the hearsay. Detective Keller obtained a warrant for Yahoo! records prior to obtaining the warrant to search Mr. Williamson's home. Yahoo! did not provide a report or any other information describing the scope of its search. As a result, it is unknown who at Yahoo! submitted the CyberTipline report. It is therefore also unknown who either the Government or undersigned counsel could call as a witness to testify as to the scope of Yahoo!'s search or what they would say. Detective Keller apparently made no attempt to obtain any additional from Yahoo! about the scope of its search prior to submitting the Warrant Application for Mr. Williamson's residence. Indeed, that Warrant Application makes no reference to whether Yahoo! viewed the images. Ex. B. The CyberTipline Report states that NCMEC did not view the images. Ex. A, p. 8.

It is entirely unclear whether Yahoo! actually reviewed the images that formed the basis of the Warrant Application. By Detective Keller viewing the images himself, law enforcement exceeded the scope of any private search conducted by Yahoo! As a result, the fruits of the search on Mr. Williamson's residence must be suppressed.

### III. The Warrant Application makes reckless misrepresentations and omissions and therefore the evidence must be suppressed.

The Warrant Application in support of the search warrant for Mr. Williamson's residence makes material misrepresentations and omissions. The fruits of the subsequent search must therefore be suppressed.

In *Franks v. Delaware,* 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978), the Supreme Court held that a search warrant is void under the Fourth Amendment if the affidavit supporting the warrant contains "deliberate falsity or … reckless disregard" for the truth." *See Madiwale v. Savaiko*, 117 F.3d 1321, 1326 (11th Cir. 1997). The reasoning in *Franks* also applies to information omitted from warrant affidavits. *United States v. Ward*, 732 Fed. Appx. 861, 862 (11th Cir. 2018). Thus, a warrant affidavit violates the Fourth Amendment when it contains omissions "made intentionally or with a reckless disregard for the accuracy of the affidavit." *Madiwale*, 117 F.3d at 1327. (*quoting United States v. Martin,* 615 F.2d 318, 329 (5th Cir.1980). A party need not show by direct evidence that the affiant makes an omission recklessly. Rather, it "is possible that when the facts omitted from the affidavit are clearly critical to a finding of probable cause the fact of recklessness may be inferred from proof of the omission itself." *Id.*

Here, there were material omissions and misrepresentations made in the warrant that were clearly critical to a finding of probable cause. Thus, the fruits of the search resulting from the warrant must be suppressed.

## A. Detective Keller misrepresented the images that formed the basis for a finding of probable cause.

The Warrant Application at issue here initially states that Detective Keller "reviewed the cyber tip and determined that the reported user uploaded seven pictures of child sexual abusive material (CSAM)" Ex. B, ¶ 3. Keller then immediately contradicts himself and states that three of the seven images are, in fact, not CSAM. EX ¶ 7, 9. Keller does not point out this discrepancy in the warrant affidavit.

For three of the remaining four images that form the basis of probable cause, Keller misrepresents through omission that they are child pornography. For those three images, Keller states that "NCMEC had categorized this image previously as Child Pornography." Ex. B, ¶ 4, 5, 8. This misrepresents the actual categorization by NCMEC, which was that these images were "CP (Unconfirmed)."

On April 22, 2022, undersigned counsel spoke with NCMEC's General Counsel, Yiota Souras, and Senior Counsel, Ann Park, to inquire as to the definitions of categories used by NCMEC in describing potential CSAM. NCMEC's attorney stated that the definition "CP (Unconfirmed)" means that, while the image otherwise meets the definition of pornography, the age of the subject could not be determined. Undersigned counsel inquired whether the definition was synonymous with the phrase "age difficult" that Detective Keller

used in the warrant application. NCMEC's counsel answered in the affirmative. Detective Keller thus misrepresented to the judge who signed the warrant that these images were previously categorized by NCMEC as "Child Pornography" and omitted that the definition included images where the age of the subject could not be determined. Thus, six of the seven images were falsely identified to the judge as CSAM material.

An image that is merely "age difficult" cannot provide probable cause for a search. By definition, "age difficult" (and likewise "CP (Unconfirmed)" by NCMEC) means that Detective Keller could not determine whether or not the image was child pornography. Thus, it cannot be "probable" that a crime occurred based on those images. Hypothetically, if an officer were to submit a warrant to search a house for drugs and stated in the warrant application "I cannot tell you whether any drugs are involved in this case or not," there is no chance the warrant would be approved, and with good reason. The privacy of a person's home is entitled to a great deal of protection under the law. *Georgia v. Randolph*, 547 U.S. 103. 126 (2006) ("Since we hold to the centuries-old principle of respect for the privacy of the home, it is beyond dispute that the home is entitled to special protection as the center of the private lives of our people."). To allow a search warrant of a person's home without even having a reason to believe a crime was committed is inherently unreasonable.

With respect to the single remaining image, "image.1-1,jpeg," Ex. B ¶ 6, Detective Keller also made material misrepresentations and omissions in the warrant application. The NCMEC Cybertip Report states that the date this image was uploaded at 4:00 p.m. 9/8/20 via Yahoo! email. Ex. B, ¶ 1. However, at the time of the application for a warrant to search Mr. Williamson's residence, Detective Keller had already submitted a warrant to Yahoo!. As part of its response, Yahoo! provided a list of the date and time of every login to the e-mail account at issue. That list of log-ins shows that the last login to the e-mail account was on 9/5/20 and that there was no login to that account on 9/8/20. If there was no log-in on 9/8/20 (the date this image was uploaded), then it is entirely unclear how it could have been uploaded on that date.

Despite having this information at the time of the warrant application for the residence, Detective Keller made no attempt to explain how an image could have been sent from an e-mail on 9/8/20 when that account had not been accessed for several days prior. This is a material omission that could likely have given pause to the judge who signed the warrant.

The warrant applications for both Mr. Williamson's residence and to Yahoo! contain the same defects and make material misrepresentations and omissions about each of the seven image that formed the basis for Judge Curley to grant the warrant.

18

The misrepresentations and omissions set forth above regarding the nature of the images as containing child pornography when virtually all were "age difficult" or not pornography at all were clearly critical to the approval of the Warrant Application. Detective Keller's failure to include this information was, at minimum, a reckless disregard for the accuracy of the affidavit. The fruits of the searches must be suppressed.

## **CONCLUSION**

For the above reasons, Mr. Williamson respectfully requests that this Motion be granted, that all evidence obtained as a result of the search warrant on Mr. Williamson's residence be suppressed, and that the Court grant all other relief that the Court deems necessary and proper.

Respectfully submitted:

/s/ Gus M. Centrone
Gus M. Centrone (FB# 30151)
KYNES, MARKMAN & FELMAN, P.A.
P.O. Box 3396
Tampa, FL 33601-3396
Telephone: (813) 229-1118
Facsimile: (813) 221-6750
GCentrone@kmf-law.com

*Counsel for Defendant Gregory Allen Williamson*

**CERTIFICATE OF SERVICE**

I HERBY CERTIFY that on May 5, 2022, I electronically filed the foregoing with the Clerk of Court through the CM/ECF Filing System which will send a notice of electronic filing to all counsel of record.

<pre>
                                /s/ Gus M. Centrone
                                Gus M. Centrone
</pre>