# EXHIBIT B

# IN THE CIRCUIT COURT OF THE 12ᵀᴴ JUDICIAL CIRCUIT IN AND FOR SARASOTA COUNTY, FLORIDA

## SEARCH WARRANT
## AFFIDAVIT & APPLICATION
### (CHILD PORNOGRAPHY - PREMISES & COMPUTER)

BEFORE ME, a Judge of the Circuit Court, personally or by sworn attestment appeared Affiant, Detective/Officer James Keller #304, duly sworn law enforcement officers of the North Port Police Department, State of Florida, who after being first properly sworn, deposes and says that they have probable cause to believe and do believe that the laws of the State of Florida have been violated, to-wit:

The laws prohibiting the possession of child pornography under the: "Computer Pornography and Child Exploitation Prevention Act", and 827.071, Florida Statutes, prohibiting the sexual performance of a child and the creation, possession or promotion of an image of such conduct, controlled by Florida State Statute 847.0135(2), 847.0135(3)(a), 847.0135(5)(a)(3), and the unlawful use of a two-way communication device controlled by Florida State Statute 934.215, have been violated by a resident or person using the internet service at the house described below,

That the officer has reason to believe and does believe that a computer or other digital device capable of accessing the internet by means of service provided at or through the residence described below was knowingly used as an instrumentality of a crime described above.

That the officer has reason to believe and does believe that evidence connected with the crime is currently located at: 2575 Rolling Rd. North Port, FL 34288.

The description and location of the premises to be searched is as follows: The target location, 2575 Rolling Rd. North Port, FL 34288, is a single-family, single story, residential dwelling. The residence was built in 2006 and has three bedrooms and two bathrooms. The residence is a block and stucco home with a shingle roof. The parcel description is "LOT 26 BLK 1672 33RD ADD TO PORT CHARLOTTE". The residence is on a corner lot with a brown shingle roof, a tan exterior color with white trim around the doors and windows. The left side of the residence has two bedroom windows. To the right is a small covered entry with a dark front door (black). To the right of the front door is a third window. To the right is a two car garage the protrudes away from the residence towards the street. Above the garage door are the numbers "2575". From the garage door is a concrete driveway that connects to the street. On the right side of the residence there is a door that leads into the garage.

To arrive at the target location from the intersection of East Price Blvd./Toledo Blade Blvd. travel east on East Price Blvd. for 0.7 miles. Turn right onto Jeannin Dr. and travel south for 0.9 miles. Turn right onto E. Hallmark Blvd. and travel west for 300 feet. Yurn

right onto Kabbaby St. and travel for 300 feet. Turn left onto Rolling Rd. and travel west for 900 feet and the residence, 2575 Rolling Rd., will be on the left-hand side.

The aforesaid location is within the jurisdictional boundaries of Sarasota County.

**GROUNDS FOR ISSUANCE:**

The following grounds for issuance of a Search Warrant, as required by Florida Statutes exist, to-wit: the evidence sought is relevant to proving the aforesaid offense of violating the "Computer Pornography and Child Exploitation Prevention Act", 827.071, Florida Statutes, prohibiting the sexual performance of a child and the creation, and possession or promotion of an image of such conduct, controlled by Florida State Statute 847.0135(2) has been committed. See Florida Statute 933.02.

**PROBABLE CAUSE FOR ISSUANCE:**

Your Affiant, Detective James Keller #304, has probable cause to believe that the above-named crime has been committed and that evidence may be discovered for the following reasons:

Your Affiant is a Detective/Officer with the North Port Police Department and is currently assigned to the Criminal Investigative Division. Your Affiant has been a police officer for approximately seven years and eleven months and has been assigned to the Detective Division for four years and eight months. Your Affiant is charged with the responsibility of investigating crimes such as Computer Pornography and Child Exploitation.

Your Affiant, Detective James Keller #304, is trained currently assigned to the Central Florida Internet Crimes Against Children Task Force (ICAC) since May 2019. Your affiant is also currently assigned to the FBI Child Exploitation and Human Trafficking Task Force since December 2019 as a Task Force Officer. Your Affiant has been a duly sworn Police Officer for the City of North Port Police Department since December 2012. From January 2013 to March 2016, your Affiant was assigned to the North Port Police Departments Patrol Division. In March 2016, your Affiant was assigned to the Property Crimes Unit of the Criminal Investigative Division at the North Port Police Department. In March 2017, your Affiant was assigned to the Major Crimes Unit of the Criminal Investigations Division at the North Port Police Department. In May 2019, your Affiant was tasked with investigating sex crimes in the aforementioned capacity. Your Affiant is currently the North Port Police Department's agency affiliate for the Internet Crimes Against Children (ICAC) Task Force. In his career, your Affiant has conducted criminal investigations to include: crimes involving sexual abuse of children, sexual abuse of adults, aggravated battery, robbery, home invasion, kidnapping, child pornography, and homicide. Your Affiant has obtained a Bachelor of Science of Interdisciplinary Studies from Liberty University. Your Affiant has attended a 2 hour course of instruction on an Introduction to Human Trafficking. Your Affiant has attended a 40 hour course of instruction on Sex Crimes Investigations hosted by South West Florida Public Safety

Academy. Your Affiant has attended a 40 hour course of instruction on Case Preparation and Courtroom Presentations Investigations hosted by South West Florida Public Safety Academy. Your Affiant has attended an 8 hour course of instruction on Pedophiles and Child Abductions hosted by South West Florida Public Safety Academy. Your Affiant has attended multiple 1 hour course(s) of instruction to include, Part I ICAC App-Based Chat Sites, Part II ICAC App-Based Chat Sites, Legal Issues for Undercover Chat Investigations, and Evolution of Online Ad Site Investigations hosted by National Criminal Justice Training Center of Fox Valley Technical College. Your Affiant has attended a 40 hour course of instruction on Undercover Online Chat Operations hosted by National Criminal Justice Training Center of Fox Valley Technical College. Your Affiant has attended a 40 hour course of instruction on ICAC Investigative Techniques hosted by National Criminal Justice Training Center of Fox Valley Technical College. Your Affiant has attended a 24 hour peer-to-peer BitTorrent Investigations and a 24 hour peer-to-peer Child Protection System (CPS) Basic P2P Investigations. Your Affiant has attended a 4 hour Identify and Investigate Human Trafficking class. Your Affiant has attended a 40 hour course of instruction on Child Exploitation Investigations hosted by South West Florida Public Safety Academy. Your Affiant has attended a 2-day training on Cellebrite Mobile Forensic Fundamentals (CMFF) and completed the training in January 2021. Your Affiant has attended a 2-day training on Cellebrite Certified Operator, a 3-day training on Cellebrite Certified Physical Analyst, and completed both trainings in January 2021. Your Affiant has viewed numerous images of Child Sexual Abuse Material (CSAM) and been involved in such cases since May 2019 and in doing so has gain experience in determining approximate ages of children involved in CSAM.

Based on all the above described training and experience, the investigative facts and activity set forth herein, your Affiant has developed probable cause to believe and does believe that the crimes described herein have been and are being committed at or within the City of North Port, Sarasota County, Florida.

**THE FOLLOWING FACTS SUPPORT YOUR AFFIANT'S PROBABLE CAUSE:**

1. On September 10, 2020, Oath Holdings Inc. (Yahoo!), who is an Electronic Service Provider (ESP), submitted a child exploitation cyber tip (79384716) to the National Center for Missing and Endangered Children (NCMEC). Oath Holdings Inc. (Yahoo!) reported that the Yahoo! user identified as "vladlover50@yahoo.com" uploaded apparent child pornography on 9/8/20 at 1600 hours UTC from IP 2601:701:c200:ef50:f00e:48dc:fd43:543c to the Yahoo! Server (image three below "image.1-1.jpeg"). The reported user also uploaded other apparent child pornography on the following dates: 9/2/20, 11/8/19, 9/8/20, 12/6/19, 1/16/20, 9/1/20, and 12/6/19. Oath Holdings Inc. (Yahoo!) reported that the user account was disabled and the account was preserved.

2. On October 22, 2020, the National Center for Missing and Endangered Children (NCMEC) researched the reported IPv6 address of "2601:701:c200:ef50:f00e:48dc:fd43:543c" through a public available website called Maxmind. Maxmind provided an approximate GPS location of North Port,

Florida. The case was forwarded to the Internet Crimes Against Children Task Force (ICAC) in Central Florida who assigned it to North Port Police Department for further investigation.

3. On November 11, 2020, the North Port Police Department (NPPD) received the cyber tip (79384716). I reviewed the cyber tip and determined that the reported user uploaded seven pictures of child sexual abusive material (CSAM).

4. The first image, "image.4-1.gif", is child sexual abusive material (CSAM). This image is a gif file and is of a prepubescent minor white female torso area laying on a bed. An adult white male is captured with an erect penis ejaculating on the minor's pubic bone area above her genitals. The minor appears to be approximately 12-15 years old. The image is intended to cause sexual stimulation from the viewer. NCMEC had categorized this image previously as Child Pornography.

5. The second image, "image.125-1.jpeg", is child sexual abusive material (CSAM). The image is of a white female minor standing and wearing a white and red dress. The bottom of the dress is pulled up revealing the minor's genitals and is the focal point of the image. The minor appears to be approximately 11-12 years old. The image is intended to cause sexual stimulation from the viewer. NCMEC had categorized this image previously as Child Pornography.

6. The third image, "image.1-1.jpeg", is child sexual abusive material (CSAM). The image is of a prepubescent minor white female torso area laying on a bed. An adult white male is in the image with an erect penis and semen on the minor's pubic bone area above her genitals. The minor appears to be approximately 7-8 years old. The image is intended to cause sexual stimulation from the viewer. NCMEC had categorized this image previously as Apparent Child Pornography.

7. The fourth image, "image.120-1.jpeg", is of a white female clothed. The image is child erotica and not child sexual abusive material (CSAM).

8. The fifth image, "image.97-1.jpeg", is child sexual abusive material (CSAM). The image is of a prepubescent minor white female laying on a bed naked with her legs spread open and semen on her stomach above her genitals. The minor appears to be approximately 12-13 years old. The image is intended to cause sexual stimulation from the viewer. NCMEC had categorized this image previously as Child Pornography.

9. The sixth image, "image.5-1.jpeg", and the seventh image, "image.118-1.jpeg" are of a white female. The pictures are age difficult. Age difficult means that it is difficult to determine an approximate age of the subject in the image.

10. I searched the IPv6 address (2601:701:c200:ef50:f00e:48dc:fd43:543c) the image was uploaded with through the American Registry for Internet Numbers (ARIN) and it came back registered to Comcast. An investigative subpoena was executed

to Comcast for the IP address. Comcast provided a response with a subscriber of Aliona Williamson with a subscriber address of 2575 Rolling Rd. North Port, FL 34288.

11. According to the Florida Driver and Vehicle Information Database (DAVID), Aliona Williamson (FL DL W452000827170) and Gregory Allen Williamson (FL DL W452281632250), have the residence 2575 Rolling Rd. North Port, FL 34288 listed as an updated address. Their previous address was 14160 Newcastle Ave. Spring Hill, FL 34609 (Hernando County).

12. On 12/1/20, I executed a search warrant to Oath Holdings Inc. (Yahoo!) and Yahoo provided a response. On 1/25/21, I was able to successfully examine the results. All of the reported images were recovered as email attachments. The emails were sent to "deea.apostol1782@gmail.com". The defendant sent the CSAM images to the email and showed an ongoing series of communications over multiple months. The defendant advised that he wished to impregnate the recipient and conduct sexual acts.

13. I reviewed the log-in IP addresses that were included with the search warrant. According to Maxmind, all of the log in IP between 12/14/2019 - 05/21/2020 occurred in Spring Hill, Florida (Spectrum). Between 07/01/2020 till the last log in on 09/05/2020 all occurred in North Port, Florida (Comcast). Therefore, on 09/05/2020 was the last time the suspect logged into his Yahoo email before the reported incident occurred on 09/08/2020.

14. On 1/26/21, I contacted the Hernando County Sheriff's Office to obtain information on Gregory Allen Williamson (FL DL W452281632250), Aliona Williamson (FL DL W452000827170), and their previous address of 14160 Newcastle Ave. Spring Hill, FL 34609. I was provided information that Gregory Williamson was arrested for fraud and had the same phone number that was listed on the reported Yahoo account (941-445-1469). He also had his vehicle listed as a white Nissan van bearing FL tag JXDE21. Aliona Williamson was listed as his "spouse" and Deea Apolstol was listed as his "step-child". Therefore, I have reason to believe that Gregory Williamson was communicating via email with his stepchild, Deea Apolstol (6/7/07) ("deea.apostol1782@gmail.com").

15. On 1/26/21, I verified with the Sarasota School Board Police that Deea Apolstol is currently a 7th grader in North Port, FL. Next, at 1313 hours, I checked the residence and observed both listed vehicles at the residence (white Nissan truck with FL tag JXDE21 and black Nissan minivan with FL tag KYTP30).

16. Based upon the above facts and circumstances, I believe that probable cause exists to search and seize evidence from the residence, 2575 Rolling Rd. North Port, FL 34288, for the purposes of locating evidence as it relates to F.S.S. 827.071(5) - Possession of Image/Video of Sexual Performance by a Child, F.S.S. 847.0135(2),

F.S.S. 847.0135(3)(a), F.S.S. 847.0135(5)(a)(3), and the unlawful use of a two-way communication device controlled by F.S.S. 934.215.

Your Affiant knows from training and experience that searches and seizures of evidence from computers may require agents to seize most or all computer items (hardware, software, passwords and instructions) to be processed later by a qualified person in a laboratory or other controlled environment. This is true because of the following:

(1) The volume of evidence. Computer digital media storage devices (like but not limited to floppy disks, hard disk drives, tapes, Digital Video Discs, Compact Discs, or other magnetic, optical or mechanical storage devices which can be accessed by computers to store or retrieve data) can store the equivalent of millions of pages of information. Searching this vast amount of information is a very time consuming task. This sorting process can take weeks or months, depending on the volume of data stored, and it would be impractical and invasive to attempt this kind of data search on-site.

(2) Technical Requirements. Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert is qualified to analyze the system and its data. In any event, however, data search protocols are exacting scientific procedures designed to protect the integrity of the evidence and to recover even "hidden," erased, compressed, password-protected, or encrypted files. Because computer evidence is vulnerable to inadvertent or intentional modification or destruction, both from external sources or from destructive code imbedded in the system as a "booby trap", a controlled environment may be necessary to complete an accurate analysis. Further, such searches often require the seizure of most or all of a computer system's input/output peripheral devices, related software, documentation, and data security devices (including passwords) so that a qualified computer expert can accurately retrieve the system's data in a laboratory or other controlled environment. It is also necessary to seize all peripherals so that the analyst can show that the computer was in a functional operating state and was capable of being used in the manner described in this affidavit.

(3) Necessity to Search Files of Varying Formats. Searching for a particular piece of evidence can be a painstaking and complicated process. Computer evidence may be stored in random order with deceptive file names. File extensions can be intentionally altered to make graphic files appear to be text files and text files appear to be graphic files. Such difficulties can also arise even when the user is not intentionally trying to conceal the nature of his or her files. For example, documents are frequently stored on computers after having been scanned and converted into digital format. When stored in this manner, such documentary evidence is converted to a graphical image format much like a photograph. Therefore, it is necessary for the forensic examiner to inspect files stored in graphical format to see if the relevant documents have been so stored. Graphical images or pictures can be stored on a computer with either the standard graphical extensions such as .jpg,

.bmp, gif, etc... or they can be embedded in other file types, such as word processing documents, spreadsheets and database and PowerPoint programs. For instance, a slide show consisting of hundreds of images can be imbedded in a Power Point presentation program and it would not be apparent to the examiner until opening and viewing that program. The forensic examiner, therefore, will need to view such other programs to see if the relevant graphical images are stored in such a manner. It is thus essential to search files of all types in order to ensure that the requested "PROPERTY" is discovered. This may require searching authorities to examine all the stored data to determine which particular files is evidence or instrumentalities of crime.

(4) Necessity to Search Software Applications. Your affiant also requests to search the various software applications in the subject computer. Graphical imaging programs may contain data that shows the relevant images were actually viewed by someone after being downloaded to the computer. Since it is important to determine whether any of the relevant images were actually viewed while on the subject computer, a forensic analyst will need to examine the file properties of any images found and determine whether any of these images were manipulated or viewed by any of the software resident on the computer.

(5) Necessity to Establish a Time Line. A forensic examiner may need to compile a time line of computer files that were in existence at or near the time of the offense. An analysis of such files may provide evidence that of the appropriate time frames. Your Affiant knows from training and experience that due to the nature of digital evidence, even if efforts are made by the user to delete digital information, a computer forensic analyst would likely be able locate the deleted or erased information in the computer. When a user "deletes" a digital file, the file is merely removed from the menu of available files that can be seen by the user; however, the digital file remains on the user's computer until the space that it occupies is overwritten by new data. This overwriting process, depending on the use of the computer, can take years to occur. Therefore, the mere passage of time, with regards to digital evidence, does not mean the evidence will not be found. To the contrary, digital evidence is generally maintained and will be found on the computer though significant time may have passed.

(6) Your Affiant knows from training and experience that in order to fully retrieve data from a computer system, the analyst may need all magnetic storage devices as well as the computer. In cases like this, one where the evidence consists partly of graphics files, the input and output devices including but not limited to: keyboards, mice, scanners, printers, monitors, network communication devices, modems and external or connected devices used for accessing computer storage media, and the associated storage media, may be required by an analyst to show the nature and quality of the graphic images which the system could produce. In addition, the analyst may need all the system software (operating systems or interfaces, and hardware drivers) and any application software which may have been used to create the data (whether stored on hard drives or on external media) as well as documentation of the data, items containing or displaying passwords, access codes, usernames or other identifiers necessary to examine or operate items, software or information seized or to activate specific equipment or software.

(7) Your Affiant knows from training and experience that computers used to access the Internet usually contain files, logs or file remnants which would tend to show ownership and use of the computer as well as ownership and use of Internet service accounts used for the internet access. In addition, your Affiant knows that there is relevant data on the computer which can be used to corroborate the user at any given time, such as time-stamped unrelated activity made contemporaneously with criminal acts described herein. Your Affiant is aware that search warrants of residences involved in computer related criminal activity usually yield items that would tend to establish ownership or use of computers and ownership or use of any Internet service accounts to include credit card bills, telephone bills, correspondence and other identification documents.

In light of these concerns, your affiant hereby requests the Court's permission to search the computer hardware (and associated peripherals) that are believed to contain some or all of the evidence described in the warrant, and to conduct an off-site search of the hardware for the evidence described.

Often, because of the nature of this investigation, it may become a dual investigation with the Federal Bureau of Investigation (FBI). Due to the need of forensic capabilities in the execution of this warrant, the FBI is also authorized to assist in the execution of this warrant, to include the forensic review of any content received from the response to this warrant.

On the basis of the foregoing facts, in addition to searching the residence described above your Affiant seeks to conduct a forensic search of any of the data stored in the aforementioned computer that may be in electronic or digital format.

**WHEREFORE**, your Affiant respectfully requests that a Search Warrant be issued commanding all and singular the Sheriffs and their Deputies, the Director of the Florida Highway Patrol and his Troopers, the Director of the Florida Fish and Wildlife Conservation Commission and his Officers, the Commissioner of the Florida Department of Law Enforcement and his designees, Constables, Municipal Police Officers and State Attorney's Investigators, all acting within their jurisdiction, either in the day time or night time, as the exigencies of the occasion may demand or require, or on Sunday, or holidays with proper and necessary assistance to search the above described premises, the curtilage thereof including any vehicles and structures located thereon and all persons found therein or thereon reasonably believed to be involved in the criminal activity and seize as evidence any of the following mentioned items:

EVIDENCE SOUGHT:

1. Computer hardware or other Internet capable device (including cellular phones) to include any and all computer equipment used to collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, optical, or similar computer impulses or data. Hardware includes (but is not limited to) any data-processing devices (such as central processing units, personal computers to

include "laptop" or "notebook" or "pocket" computers); internal and peripheral storage devices (such as fixed disks, external hard disks, floppy disk drives and diskettes, tape drives and tapes, optical storage devices, and other electronic media devices).

2. Computer input and output devices to include but not limited to keyboards, mice, scanners, printers, monitors, network communication devices, modems and external or connected devices used for accessing computer storage media.

3. Computer storage media and the digital content to include but not limited to floppy disks, hard drives, tapes, DVD disks, CD-ROM disks or other magnetic, optical or mechanical storage which can be accessed by computers to store or retrieve data or images.

4. Computer software and application software installation and operation media.

5. Computer software, hardware or digital contents related to the sharing of Internet access over wired or wireless networks allowing multiple persons to appear on the Internet from the same IP address.

6. Manuals and other documents (whether digital or written) which describe operation of items or software seized.

7. Items containing or displaying passwords, access codes, usernames or other identifiers necessary to examine or operate items, software or information seized.

8. Correspondence or other documents (whether digital or written) pertaining to the possession, receipt, origin or distribution of images or files involving the sexual exploitation of children.

9. Any and all tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, electronic mail, tape systems and hard drive and other computer-related operation equipment, in addition to computer photographs, graphic interchange formats and/or photographs, or other visual depictions.

10. Any documents, notes, or equipment relating to passwords, encryption codes and data security devices which may restrict access to the hardware, software or data.

11. All data and files associated with the computer listed above, including password protected files, both text and image types that may include, but are not limited to: ".doc, .txt, .gif, .bmp, .tiff, .pcs, .pic, .png, .dcs, .art or .jpeg.", that can be stored or saved by these suffixes or they can be renamed and saved under different titles.

12. Computer files showing ownership, possession or control of computers, and electronic storage devices to include but not limited to email associated files.

or any other evidence, implements or devices relating to the subject matter of this warrant that could be used in further violation or have been used in violation of the laws of the State of Florida, in order that evidence may be procured to be used in the prosecution of the Criminal Laws of the State of Florida.

**FURTHERMORE,** your Affiant respectfully requests that the Search Warrant direct that a forensic search of any of the above mentioned computer or computer related equipment including using forensic computer analyst experts off-site search the above described Computer, and seize as evidence any of the above mentioned items:

Det. James Keller #304

_____
Affiant / Signature
Electronic Signature

STATE OF FLORIDA    )
COUNTY OF SARASOTA )

The foregoing instrument was acknowledged before me this 27th day of January, 2021, by the individuals whose name and signatures appear above, and who are personally known to me and who did take an oath.

Det. Lee Wallace #304

_____
Signature/Electronic Signature
Law Enforcement Officer
Notary Public, State of Florida

DISC-01169

| | |
|---|---|
| STATE OF FLORIDA ) | |
| 12TH JUDICIAL CIRCUIT ) | SEARCH WARRANT (PREMISES & COMPUTER) |
| COUNTY OF SARASOTA ) | |

IN THE NAME OF THE STATE OF FLORIDA, to all and singular the Sheriffs and their Deputies, the Director of the Florida Highway Patrol and his Troopers, the Commissioner of the Florida Department of Law Enforcement and his Special Agents, the Director of the Florida Fish and Wildlife Conservation Commission and his Officers, and Constables, Municipal Police Officers and State Attorney's Investigators all acting within their jurisdiction;

WHEREAS, I have received affidavit for search warrant, on this date made before me by the Affiant, James Keller #304, who have prepared same in his capacity as a law enforcement officers; and

WHEREAS, Det. James Keller #304 having been placed under oath and having sworn to the facts as stated therein, and having examined the said facts set forth in support of said application for search warrant, and the facts contained therein which are now incorporated herein by reference and made a part of this Warrant, and;

WHEREAS, said facts so made known to me by such affidavit as set forth, have caused me to certify and find that there is probable cause to believe that the laws of the State of Florida relative to: 847.0135(2), 847.0135(2), 847.0135(3)(a), 847.0135(5)(a)(3), and 934.215 Florida Statutes, prohibiting possession of child pornography under the: "Computer Pornography and Child Exploitation Prevention Act", and 827.071, Florida Statutes, prohibiting the sexual performance of a child and the creation, possession or promotion of an image of such conduct. have been violated by a resident or person using the internet service at the house described below and that evidence of the crime is currently located within the computer, internet capable or digital storage device described to wit;

THE DESCRIPTION AND LOCATION TO BE SEARCHED is as follows: The target location, 2575 Rolling Rd. North Port, FL 34288, is a single-family, single story, residential dwelling. The residence was built in 2006 and has three bedrooms and two bathrooms. The residence is a block and stucco home with a shingle roof. The parcel description is "LOT 26 BLK 1672 33RD ADD TO PORT CHARLOTTE". The residence is on a corner lot with a brown shingle roof, a tan exterior color with white trim around the doors and windows. The left side of the residence has two bedroom windows. To the right is a small covered entry with a dark front door (black). To the right of the front door is a third window. To the right is a two car garage the protrudes away from the residence towards the street. Above the garage door are the numbers "2575". From the garage door is a concrete driveway that connects to the street. On the right side of the residence there is a door that leads into the garage.

To arrive at the target location from the intersection of East Price Blvd./Toledo Blade Blvd. travel east on East Price Blvd. for 0.7 miles. Turn right onto Jeannin Dr. and travel south for 0.9 miles. Turn right onto E. Hallmark Blvd. and travel west for 300 feet. Yurn right onto Kabbaby St. and travel for 300 feet. Turn left onto Rolling Rd. and travel west for 900 feet and the residence, 2575 Rolling Rd., will be on the left-hand side.

The aforesaid location is within the jurisdictional boundaries of Sarasota County.

**THEREFORE**, these presents are to command you, with the proper and necessary assistance, either in the day time or in the night time, as the exigencies of the situation may demand or require or on Sundays, or holidays, to enter the said location described above, and diligently search said location, the curtilage thereof, any structures and vehicles found thereon as well as any persons found therein or thereon reasonably believed to be connected with the suspected illegal activity and seize as evidence any of the following:

EVIDENCE SOUGHT:

1. Computer hardware or other Internet capable device (including cellular phones) to include any and all computer equipment used to collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, optical, or similar computer impulses or data. Hardware includes (but is not limited to) any data-processing devices (such as central processing units, personal computers to include "laptop" or "notebook" or "pocket" computers); internal and peripheral storage devices (such as fixed disks, external hard disks, floppy disk drives and diskettes, tape drives and tapes, optical storage devices, and other electronic media devices).

2. Computer input and output devices to include but not limited to keyboards, mice, scanners, printers, monitors, network communication devices, modems and external or connected devices used for accessing computer storage media.

3. Computer storage media and the digital content to include but not limited to floppy disks, hard drives, tapes, DVD disks, CD-ROM disks or other magnetic, optical or mechanical storage which can be accessed by computers to store or retrieve data or images.

4. Computer software and application software installation and operation media.

5. Computer software, hardware or digital contents related to the sharing of Internet access over wired or wireless networks allowing multiple persons to appear on the Internet from the same IP address.

6. Manuals and other documents (whether digital or written) which describe operation of items or software seized.

7. Items containing or displaying passwords, access codes, usernames or other identifiers necessary to examine or operate items, software or information seized.

8. Correspondence or other documents (whether digital or written) pertaining to the possession, receipt, origin or distribution of images or files involving the sexual exploitation of children.

9. Any and all tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, electronic mail, tape systems and hard drive and other computer-related operation equipment, in addition to computer photographs, graphic interchange formats and/or photographs, or other visual depictions.

10. Any documents, notes, or equipment relating to passwords, encryption codes and data security devices which may restrict access to the hardware, software or data.

11. All data and files associated with the computer listed above, including password protected files, both text and image types that may include, but are not limited to: ".doc, .txt, .gif, .bmp, .tiff, .pcs, .pic, .png, .dcs, .art or .jpeg.", that can be stored or saved by these suffixes or they can be renamed and saved under different titles.

12. Computer files showing ownership, possession or control of computers, and electronic storage devices to include but not limited to email associated files.

FURTHERMORE, these presents are to command you, with the proper and necessary assistance, including off-site forensic computer analyst experts with the assistance of any agency the North Port Police Department requests to include the FBI, either in the day time or in the night time, as the exigencies of the situation may demand or require or on Sundays, or holidays, to search the said computer equipment described above, and seize as evidence any of the aforementioned evidence and any other implements or devices or evidence that could be used or have been used in violation of the laws of the State of Florida relating the subject matter of this warrant in order that evidence may be procured to be used in the prosecution of the Criminal Laws of the State of Florida, and make return of your doings under this warrant to me or to my designated clerk, within ten (10) days of the date hereof, and give proper receipts for any property taken hereunder, and deliver a copy of this warrant to the person at whom directed.

YOU ARE FURTHER DIRECTED to bring the evidence so seized if it be of a contraband nature and also the body of the person or persons in possession of it, before a court having jurisdiction to be disposed of and dealt with according to law.

GIVEN UNDER MY HAND AND SEAL THIS DAY

1/27/2021
DATE

SIGN *[signature]* 1/27/2021 12:39:23 PM TURE

Rochelle Curley
Circuit Judge