UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                                          CASE NO. 8:21-cr-00355-WFT-CPT

GREGORY WILLIAMSON

**UNITED STATES' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO SUPPRESS**

The United States hereby responds in opposition to Williamson's *Motion to Suppress* ("Motion"). Doc. 44. In his motion, Williamson alleges law enforcement, Yahoo and NCMEC violated his Fourth Amendment constitutional protections when his account was searched, and that law enforcement submitted a warrant application for the search of defendant's home that "contained material misrepresentations and omissions." In support of his motion, Williamson cites to various portions of the search warrant affidavit and makes conclusory assertions about IP addresses without providing proof. Yahoo and the National Center for Missing and Exploited Children ("NCMEC") are not government agencies. Williamson has misconstrued these private companies' roles in the investigation. Further, Williamson has not met his burden of showing that any omission by the search warrant affiant was reckless or intentional. For the reasons set forth below, Williamson's motion should be denied.

## I. PROCEDURAL BACKGROUND

1. On November 3, 2021, a federal grand jury charged Williamson in an eight-count indictment charging him with enticement of a minor, in violation of 18 U.S.C. § 2422(b), attempted production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e), two counts of production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e), three counts of distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1), and possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2). Doc. 1.

2. Williamson appeared for his initial appearance on November 19, 2021 and was ordered detained pending trial. Doc. 15.

3. On or about May 5, 2022, Williamson filed the instant Motion. Doc. 44.

## II. RELEVANT FACTUAL BACKGROUND

*Initial Investigation*

1. On or about November 5, 2020, North Port Police Department ("NPPD") received a CyberTipline Report #79384716 from NCMEC. *See* Exhibit 1.

2. The CyberTipline Report[1] was generated in September 2020, after NCMEC received information from Oath Holdings/Yahoo about apparent child pornography. *See* Exhibit 1. The information provided that Yahoo user, "vladlover50@yahoo.com" had

---

[1] The CyberTipline Report is a complaint generated from the centralized reporting system for the online exploitation of children. The public and electronic service provides can make reports of suspected online child exploitation.

transmitted seven images of suspected child pornography, also known as child sexual abuse material ("CSAM").

3. On or about November 11, 2020, the NPPD Detective assigned to the case reviewed the CyberTipline Report. After confirming that the electronic service provider (ESP)[2], Yahoo, reviewed the suspected CSAM, the Detective opened the image files for review. After observing each of the image files, he confirmed they contained six CSAM and one child erotica file. After reviewing and confirming the CSAM, the Detective then drafted the residential search warrant, describing each of the image files in detail. *See* Exhibit 2.

4. The CyberTipline Report details information about the purported CSAM material identified by the ESP. In this particular CyberTip, NCMEC confirms that the reporting ESP did review the entire contents of the uploaded files associated with the CyberTip. *See* Exhibit 1.

5. NPPD traced the IPv6 address[3] associated with the Yahoo User identified in the CyberTip, leading them to a North Port, Florida address and Williamson.

6. On or about January 27, 2021, NPPD obtained a state of Florida residential search warrant for Williamson's address.

7. The warrant was predicated upon violations of Florida law, to wit: prohibiting the possession of child pornography, in violation of Florida Statutes § 827.071,

---

[2] An electronic service provider is a telecommunications carrier, a provider of electronic service, a provider of remote computing, or any other provider that has access to wire or electronic communications.
[3] IPv6 address is an internet protocol version 6 which is the most recent version of the IP, which is a numeric label that is used to identify and locate a network interface of a computer or a network node participating in a computer network using IPv6.

possession or promotion of image/video of sexual performance by a child in violation of Florida Statutes § 847.0135 and unlawful use of a two-way communication device in violation of Florida Statutes § 934.215. *See* Exhibit 2.

### III.   MEMORANDUM OF LAW

#### A.   Yahoo is not a government agent

*No Expectation of Privacy*

Yahoo is a private company and does not serve as a government agent. *See* Exhibit 3 (Yahoo declaration). Williamson implies that Yahoo is a government agency but fails to set forth any facts which support such conclusory statements. Yahoo was not acting on behalf of the government when they reported the apparent child pornography to NCMEC and therefore did not violate the Fourth Amendment.

When a user creates an account with Yahoo, they must agree to a Terms of Service which governs a user's use of Yahoo. There is no realistic of expectation of privacy from Yahoo once this agreement is made. Under the Yahoo Terms of Service in effect at the time Williamson's CyberTipline Report, Yahoo requires users to "not use Yahoo Services to: upload, post, email, transmit, or otherwise make available any Content that is unlawful, harmful, threatening, abusive, harassing, tortious, defamatory, vulgar, obscene, libelous, invasive of another's privacy, hateful, or racially, ethnically, or otherwise objectionable; [or] harm minors in any way[.]" *See* Exhibit 3-A. Even if Williamson himself believed that his communications within Yahoo were private, a reasonable person would not believe this based on the very nature of using an online service—knowing the abilities of private

internet companies to obtain and retain user information, and the agreement of the Terms of Services.

*Reporting Child Pornography*

Federal law requires internet service providers to report apparent instances of child pornography offenses. Specifically, 18 U.S.C. § 2258A(a) imposes a duty on providers to submit a CyberTip report containing the facts or circumstances from which there is an apparent violation of certain child pornography offenses. 18 U.S.C. § 2258A(a). Reports on apparent child pornography violations are requested to be submitted "as soon as reasonably possible after obtaining actual knowledge of any facts or circumstances" of the violation. 18 U.S.C. § 2258A(b).

While providers, such as Yahoo, are required to report to NCMEC when they find apparent child pornography, there is importantly, no affirmative duty to search for child pornography. 18 U.S.C. § 2258A(e). Section 2258A(f) specifically says that providers are not required by law to search their platforms for child pornography. Rather, they are only required to report when they become aware of it. Yahoo chooses as a company to initiate searches for illegal activity, as it is in their best interested to keep their platform safe. *See* Exhibit 3.

Here, the CyberTipline Report in question states, "Did Reporting ESP view entire contents of uploaded file?" The response is, "Yes." This indicates the reported image or file had been subjected to review, as defined by that company. *See* Exhibit 1. Upon inquiry, Yahoo specifically addresses whether actual humans review the suspected image or file, rather than a computer program. Yahoo confirms that they employ individuals specifically

5

to review this type of content and do not utilize computer software to fulfill that role. *See* Exhibit 3.

Numerous courts have held that providers do not act as government agents when they monitor their users' activities on their servers, or when they implement their own internal security measures against users engaging in illegal activity through their services. *United States v. Cameron*, 699 F.3d 621, 637-38 (1st Cir. 2012) (holding Yahoo!, Inc. did not act as agent in searching emails and sending reports to NCMEC).

This case is no different. Williamson agreed to Yahoo's Terms of Service when he signed up for their email services. He violated that agreement when he transmitted apparent child pornography across their platform. Williamson had no expectation of privacy when Yahoo conducted a private party search of his account. Williamson asserts that even though Yahoo reported in the Cybertip that the company reviewed the apparent child pornography, we do not know if that was a human or a computer who conducted the review. Yahoo, however, provided that humans do review of those files, not computers. *See* Exhibit 3. Regardless of the clarification provided by Yahoo, it would not change whether there was probable cause to search the residence. Therefore, the Fourth Amendment is not implicated, and no warrant is required for a provider to monitor, search and safeguard its platform.

**B.    NCMEC is not a government actor**

There is no Fourth Amendment violation regarding NCMEC's actions. NCMEC opened purported child pornography that was previously opened by Yahoo and then provided relevant information to law enforcement. *See* Exhibit 1, 5 (NCMEC Correction).

6

Despite Williamson's conclusory allegations, NCMEC is not a government actor. NCMEC takes on the role of a clearinghouse as a private, nonprofit organization. *See* Exhibit 4 (NCMEC declaration). As part of this role, NCMEC makes CyberTips available to federal, state, local, and/or foreign law enforcement agencies involved in the investigation of child sexual exploitation, kidnapping or enticement crimes. 18 U.S.C. § 2258A(c). Exhibit 4 makes it clear that law enforcement authorities have no role in NCMEC's operation of the CyberTipline.

 NCMEC's mission is to help reunite families with missing children, reduce child sexual exploitation, and prevent child victimization. NCMEC accomplishes its mission through the operation of the CyberTipline, which receives leads and tips regarding suspected crimes of sexual exploitation committed against children. Pursuant to 18 U.S.C. § 2258A(a), when internet service providers discover apparent child pornography on their servers or systems, they must submit a report of the suspected child pornography to NCMEC's CyberTipline. Upon receiving a CyberTipline Report that contains image files of apparent child pornography, a NCMEC analyst may open and view the files. NCMEC makes all CyberTipline reports available to the appropriate law enforcement agency for independent review and potential investigation. NCMEC receives funding from federal and private foundation grants, corporate financial and in-kind donations to perform its programs of work. NCMEC's employees, including the CyberTipline staff, are not hired, managed or supervised by any government entity.

 First, it is imperative to note that NCMEC made a scrivener's error on the CyberTipline Report. *See* Exhibit 5 (NCMEC Correction). The original CyberTipline stated

that NCMEC did not review the apparent child pornography submitted by Yahoo. That, however, was discovered to be a mistake upon further review. In this case, there was an actual human being from NCMEC who reviewed the images from the CyberTip provided by Yahoo. This error does not change the evaluation of this case. Regardless of whether NCMEC employees personally reviewed the images, the analysis is the same. Yahoo reviewed the images independently as a private party search, NCMEC reviewed the images, not exceeding the scope of Yahoo's search nor did law enforcement during their review of the image files.

Where an initially private search is followed by a search by a government acor, the test is to what degree the government search exceeded the scope of the private search. *United States v. Jacobsen*, 466 U.S. 109, 115 (1984), *and United States v. Miller*, 152 F.3d 813, 815 (8th Cir. 1998). Here, the Detective who reviewed the Cybertip images did not exceed the scope of Yahoo or NCMEC, both of which are private actors, and both of which had already reviewed the image files. Therefore, no further analysis is necessary to determine what degree the government search exceeded the scope.

The declaration makes clear that NCMEC is a private, non-profit organization which receives substantial support from private funding and in-kind donations. *See* Exhibit 4. Furthermore, NCMEC initially created and currently operates the CyberTipline without government direction. *Id.* But even if this Court were to conclude that NCMEC is a government agent, which the Government contests, because a private search of the suspect files was performed prior to any government search, and no subsequent government search

8

exceeded the scope of the private search without a lawful warrant, the evidence was not obtained in violation of the Fourth Amendment.

### C. The Fourth Amendment-Private Search Doctrine

The search of Williamson's Yahoo account did not violate the Fourth Amendment. The Fourth Amendment protects individuals from government actors, not private ones. A private party may conduct a search that would be unconstitutional if the government did it. *Coolidge v. New Hampshire*, 403 U.S. 443, 489 (1971). The government usually needs a warrant before it may search a person or his effects. *Katz v. United States*, 389 U.S. 347, 357 (1967). A warrantless search is invalid unless an exception applies to the warrant requirement. *Id.* The warrant exception that applied in Williamson's case is the private search doctrine. The private search doctrine extinguishes an individual's reasonable expectation of privacy in the object searched. The Fourth Amendment allows police to replicate a prior private search provided it stays within the same parameters. *United States v. Sparks*, 806 F.3d 1323, 1334 (11th Cir. 2015).

Here, Yahoo conducted a warrantless search on their internet service platform. As stated by Yahoo, their company has a strong business interest in enforcing their terms of service and ensuring that their products are free of illegal content, especially CSAM. Based on these private, non-governmental interests, at the time of the Cybertip, Yahoo voluntarily employed a combination of automated scanning and human review to detect and report CSAM transmitted via Yahoo's email services. Yahoo's Trust & Safety content moderators view and visually confirm that images and videos flagged as CSAM are

apparent child pornography. *See* Exhibit 3. Yahoo users must agree to the terms of services to use their service.

When law enforcement opened the image files from the CyberTipline Report, the action of opening the image files was covered by the private search doctrine, as law enforcement did not exceed the scope of the private party search.

### D. Law enforcement did not exceed the scope

Law enforcement did not exceed the scope of the search when they opened and viewed the apparent child pornography from the Cybertip. Nothing law enforcement learned was new or critical information needed to obtain a warrant. Both Yahoo and NCMEC had already reviewed the image files and the Detective did not exceed that scope. Instead of learning new information, the images reviewed by law enforcement were what was expected: apparent child pornography. The affiant of the residential search warrant went further into detail in his descriptions of the images, but that only furthered the probable cause. The affiant was merely more thorough in describing the apparent child pornography, which is not a violation of the Fourth Amendment. *United States v. Simpson*, 904 F.2d 607 (11th Cir. 1990).

### E. The Legal Standard-Franks Hearing

Affidavits supporting search warrants are presumptively valid. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). The Supreme Court instructs, however, that (1) "where the defendant makes a *substantial* preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit," and (2) "if the allegedly false statement is *necessary* to the finding of

probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Id*. at 155-56 (emphasis added). If, after a hearing, the defendant establishes the allegation of perjury or reckless disregard by a preponderance of the evidence, and "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id*. at 156.

The Supreme Court further observed that this rule "has a limited scope, both in regard to when exclusion of the seized evidence is mandated, and when a hearing on allegations of misstatements must be accorded." *Id*. at 167. A defendant is not entitled to a hearing "when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Id*. at 171-172.

"Insignificant and immaterial misrepresentations or omissions will not invalidate a warrant." *United States v. Sims*, 845 F.2d 1564, 1571 (11th Cir. 1988) (quotation omitted). A court may deny a suppression motion under *Franks* based on the pleadings if it determines that the alleged omissions would not have defeated probable cause. *United States v. Kapordelis*, 569 F.3d 1291, 1309 (11th Cir. 2009). "What amounts to probable cause is purely a question of law." *United States v. Horne*, 198 Fed. Appx. 865, 869-871 (11th Cir. 2006) (upholding the district court's denial of motions to suppress without hearings). If, and only if, the defendant carries his burden as to each prerequisite, the defendant is entitled to a hearing with the opportunity to prove his *Franks* allegations by preponderance

11

of the evidence. If the defendant fails to carry his burden at as to either prerequisite, he is not entitled to a *Franks* hearing, as a matter of law. *United States v. Barsoum*, 763 F.3d 1321, 1328 (11th Cir. 2014). Here, Williamson is not entitled to a *Franks* hearing because he has failed to offer proof beyond conclusory assertions, and he has failed to show that the alleged false statements or omissions were *necessary* to the finding of probable cause.

*First Prerequisite: Specific Allegations and an Offer of Proof*

First, the defendant must "make specific allegations of knowing or reckless falsehood and an offer of proof to support the allegations." *United States v. Campbell*, 193 Fed. App'x. 921, 924 (11th Cir. 2006). Conclusory allegations are insufficient. *Franks*, 438 U.S. at 171. The defendant must offer proof supporting his grounds or give some satisfactory explanation for failing to do so. *Id.* This offer of proof is usually in the form of affidavits or reliable witness statements. *United States v. Haimowitz*, 706 F.2d 1549, 1556 (11th Cir. 1983). It is not enough for a defendant to argue that a *Franks* hearing would allow him to show that the information in question was false and deliberately or recklessly included or omitted. *See United States v. Barsoum*, 763 F.3d 1321, 1329 (11th Cir. 2014) (explaining that a defendant who argues that a hearing would allow him to show that information was deliberately misstated or omitted "misunderstands the Franks standard").

At the outset, the Court should deny the *Franks* argument because Williamson has offered no proof. He has not provided any witness statements or affidavits. The simple assertions in the motion are not the type of proof that *Franks* requires. *See Franks*, 438 U.S. at 171 ("Affidavits or sworn or otherwise reliable statements of witnesses should be

furnished, or n their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.").

*Second Prerequisite: Demonstrating Effect on Probable Cause*

Because Williamson fails to meet the first prerequisite to warrant a *Franks* hearing, the Court may deny his hearing request without looking further. However, should the Court continue its analysis, it will conclude that Williamson also fails to meet the second prerequisite.

If a defendant satisfies the first prerequisite for a *Franks* hearing—which Williamson here has not—then "the defendant bears the burden of demonstrating" that, had the affiant included the alleged omissions, it "would have prevented a finding of probable cause." *United States v. Lebowitz*, 676 F.3d 1000, 1010 (11th Cir. 2012). In other words, if, after the revision, the facts in the affidavit would still have contained probable cause, the defendant is not entitled to the hearing. Probable cause is not a finely tuned standard. *Florida v. Harris*, 568 U.S. 237, 244 (2013). It does not mean preponderance of the evidence; it is merely a "fair probability." *Id.*

### F. *Franks v. Delaware* Analysis

*The Affiant Did Not Make Statements in Reckless Disregard for the Truth*

Williamson alleges that the affiant, Detective Keller, made two statements in reckless disregard for the truth:

(1) That Detective Keller misrepresented the categorization of the images as child sexual abusive material (CSAM).

>   (2) That Detective Keller misrepresented NCMEC's previous categorization of the images as child pornography.

"Allegations of negligence or innocent mistake are insufficient." *Franks*, 438 U.S. at 171; *see also Maduwake v. Savaiko*, 117 F.3d 1321, 1326 (11th Cir. 1997) (neither negligence nor mistake violates the Fourth Amendment). It is not enough to show that statements in an affidavit were wrong; to be entitled to a *Franks* hearing, a defendant must establish that the affiant *knowingly* or *recklessly* included such falsities and/or material omissions. *Sims*, 845 F.2d at 1571 (citing *Franks*, 438 U.S. at 171-72). "Reckless disregard for the truth" includes instances in which an affiant "should have recognized the error, or at least harbored serious doubts" about his representations. *United States v. Kirk*, 781 F.2d 1498, 1502–03 (11th Cir. 1986); *Franks*, 438 U.S. at 171 (standard requires proof of "deliberate falsehoods or reckless disregard for the truth").

### 1. Misrepresentation of Images as CSAM

First, Williamson alleges that Detective Keller misrepresented that there were seven photos of CSAM and then immediately contradicted himself by stating that three of the images were not CSAM, without any further explanation. Doc 44 at 16. The Court should deny Williamson's request for a *Franks* hearing because it is established that "[a]llegations of negligence or innocent mistake are insufficient" to support the need for a hearing. *Id*. Detective Keller made an innocent mistake in paragraph three of his warrant application when he indicated that the seven uploaded photos were each categorized as CSAM. In paragraphs four through nine, Detective Keller accurately describes the images that were uploaded with great specificity, thus negating any potential confusion or error caused by

14

the mistaken numerical classification that all the images were CSAM. Detective Keller made no room for confusion as to what the images contained due to his detailed descriptions of the images.

### 2. *Misrepresentation of Previous NCMEC Categorization*

Secondly, Williamson alleges that Detective Keller's assertions with reference to NCMEC's previous categorization of the images in this case were misrepresentations. Doc. 44 at 16. Similar to his first allegation, Williamson has not provided any proof that Detective Keller's statements in paragraphs four, five, and eight were made in reckless disregard for the truth. When reviewing the affidavit as a whole and reading the above-listed paragraphs in context, Detective Keller's statements are not false, but factual and consistent with the evidence presented to support the Court's finding of probable cause to issue the warrant.

In the affidavit, Detective Keller provides detailed explanations of the images he viewed along with approximate ages of the victims in each image. The images listed in paragraphs four, five and eight were determined to be "CP (unconfirmed)" by NCMEC; however, Detective Keller purports the images to have been classified previously by NCMEC as Child Pornography. This classification difference was not made in reckless disregard for the truth and to infer otherwise is an attempt to invalidate a warrant based on semantics and not the facts upon which the probable cause was found. Through Detective Keller's training and experience, he was able to provide approximate ages of each victim in his search warrant, thus eradicating any "unconfirmed" notion of the ages provided by NCMEC. Additionally, the detailed explanations of each photo would have likely been the

15

more persuasive portion of the warrant towards probable cause rather than the NCMEC designation of each photo. Detective Keller's training and experience to identify the ages in these photos, as an actual human being reviewing the photos, is essential to the Court's determination of probable cause in a child pornography case. Ultimately, Detective Keller not including "(unconfirmed)" in his explanation of previous categorizations of the photos by NCMEC was not in reckless disregard of the truth and would not have affected the Court's determination of probable cause to issue the warrant.

*The Affidavit Does Not Contain Material Omissions*

Williamson alleges one other deficiency within the affidavit, which he claims is a material omission made by Detective Keller:

(1) That Detective Keller omitted information with reference to Williamson's Yahoo account login.

This omission is not material because Williamson cannot show that the omission would change the Court's conclusion that probable cause existed for the search of Williamson's residence. *See United States v. Novaton*, 271 F.3d 968, 986 (11th Cir. 2001). Williamson specifically alleges that Detective Keller failed to explain how an image could have been sent from Williamson's Yahoo email account on September 8, 2020, when the most recent login to the account was on September 5, 2020. This is not an omission of fact nor would it have affected the Court's probable cause determination in the search warrant. Detective Keller did not include in his search warrant application a very well-established feature of internet accounts. According to Yahoo, their records reflect a timestamp for the last active session for the account associated with Williamson. See Exhibit 3. By logging in

16

or by extending a login session, the user would remain logged into the Yahoo account of the same device for a period of two weeks. *Id.* Thus, Detective Keller's lack of explanation on how an image could have been sent from Williamson's account on September 8, 2020, despite the last login to that account being on September 5, 2020, is not an omission of material fact nor was it made in reckless disregard for the truth.

## IV. Good Faith Exception Applies

Generally, evidence seized in violation of the Fourth Amendment is subject to suppression under the exclusionary rule, the purpose of which is "to deter future unlawful police conduct." *United States v. Calandra*, 414 U.S. 338, 347 (1974). The Supreme Court has stated that "[i]f exclusion of evidence obtained pursuant to a subsequently invalidated warrant is to have any deterrent effect . . . it must alter the behavior of individual law enforcement officers or the policies of their departments." *United States v. Leon*, 468 U.S. 897, 918 (1984). "[W]here the officer's conduct is objectively reasonable, excluding the evidence will not further the ends of the exclusionary rule in any appreciable way. . . ." *Id.* at 919–20 (internal citation omitted). Thus, the Supreme Court has held that where an officer relied upon a warrant in an objectively reasonable manner, the evidence obtained, even though the warrant is found deficient, will not be excluded. *Id.*

An officer's reliance on a warrant would not qualify as "objectively reasonable" in four circumstances: where (1) probable cause is based on statements in an affidavit that are knowingly or recklessly false; (2) the magistrate fails to perform a neutral and detached function and instead merely "rubber stamps" the warrant; (3) the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or

17

(4) the warrant was so facially deficient that the executing officer could not reasonably have assumed it was valid. *Leon*, 468 U.S. at 914–15. Only the first circumstance is potentially applicable here. The question is, then, whether the alleged omissions recklessly false statements made by the affiant in the warrant would cause that the officer's belief in the warrant's validity is objectively unreasonable. Simply put, it does not.

There is no evidence beyond mere conclusory allegations and interpretations that demonstrate the affiant recklessly disregarded the truth when presenting the affidavit. Furthermore, based on his experience handling child sexual abuse material cases and working with forensic examiners, the affiant was aware that persons who share child pornography rarely delete it. Based on the information from Yahoo, NCMEC, the surveillance relating to the Residence, the affiant's knowledge of persons involved with child sexual abuse material, and the affiant's knowledge of forensic capabilities, the agents' beliefs that the warrant was valid was not objectively unreasonable, and therefore, the evidence obtained therefrom should not be excluded. The affiant reasonably relied on Yahoo and NCMEC's statutory duty to report apparent child pornography and voluntarily provide the incriminating evidence to view the photos.

## V.   CONCLUSION

Even assuming that the Court agrees with Williamson on any one of these allegations, it does not change the fact that probable cause existed to issue a search warrant for Williamson's residence. The affidavit established probable cause that a Yahoo user identified as vladlover50@yahoo.com associated with Williamson's residence was being used to transmit apparent child pornography on several occasions. The presence of child

pornography was confirmed by NCMEC, through hash matching, and Detective Keller, through viewing the images. Detective Keller confirmed the identify of Williamson through a search warrant to Yahoo and the subsequent IP address information. Additionally, Detective Keller further confirmed the identify of Williamson through the Florida Driver and Vehicle Information Database (DAVID) and local police reports. Ultimately, Williamson has not made a substantial preliminary showing to entitle him to a *Franks* hearing because (1) he has not provided the necessary proof; and (2) even when the alleged false statements and omissions are set aside, there remains sufficient content in the affidavit to support a finding of probable cause.

WHEREFORE the United States respectfully requests this Court enter an order denying Williamson's *Motion to Suppress*.

> Respectfully submitted,
>
> ROGER B. HANDBERG
> United States Attorney
>
> By: *s/ Erin Claire Favorit*
> Erin Claire Favorit
> Assistant United States Attorney
> Florida Bar No. 104887
> 400 N. Tampa Street, Suite 3200
> Tampa, Florida 33602-4798
> Telephone: (813) 274-6000
> E-mail: erinf.favorit@usdoj.gov
>
> */s/ Abigail K. King*
> Abigail K. King
> Assistant United States Attorney
> Florida Bar No. 294963
> 400 N. Tampa St., Ste. 3200
> Tampa, FL 33602-4798
> E-mail: Abigail.King@usdoj.gov

U.S. v. Gregory Williamson    CASE NO. 8:21-cr-00355-WFJ-CPT

## CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Gus Centrone, Esq.

        By: *s/ Erin Claire Favorit*
          Erin Claire Favorit
          Assistant United States Attorney
          Florida Bar No. 104887
          400 N. Tampa Street, Suite 3200
          Tampa, Florida 33602-4798
          Telephone: (813) 274-6000
          Facsimile: (813) 274-6103
          E-mail: erin.favorit@usdoj.gov