UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

    v.                                                     CASE NO. 8:21-cr-355-WFJ-CPT

GREGORY ALLEN WILLIAMSON,

    Defendant.
_____/

**DEFENDANT'S SUPPLEMENTAL BRIEF REGARDING
<u>MOTION TO SUPPRESS</u>**

Defendant Gregory Allen Williamson, pursuant to the Court's July 7, 2022 order, by and through undersigned counsel, hereby submits this Supplemental Brief regarding the pending Motion to Suppress (Doc. 44). For the reasons explained in that Motion and below, the Motion to Suppress should be granted.

**I.    <u>Under *Steiger* and *Propst*, Yahoo was a State Actor</u>**

At the July 7, 2022 preliminary hearing on the Motion to Suppress, the Court requested further briefing, including to address the implications of *United States v. Steiger*, 318 F.3d 1039 (11th Cir. 2003), and *United States v. Propst*, 369 Fed. Appx. 42 (11th Cir. 2010), on the instant case. For the reasons discussed below, under the standards of those cases, Yahoo was a state actor.

### A. *Steiger*

The relevant facts of *Steiger* could not be more different from the present case. In *Steiger*, the defendant's illegal conduct was discovered by an anonymous hacker located in a foreign country. The hacker described his activities as a "hobby." *Id*. at 1043. He anonymously gave law enforcement images of a person engaged in illegal conduct and an IP address, along with additional information. Law enforcement referred the matter to the FBI, who issued a subpoena to an internet service provider. The provider reported that the IP address belonged to "Bradley Steiger." The FBI agent also performed a driver's license check and found that the photo of Bradley Steiger matched the individual in the photos sent by the hacker. *Id*. at 1042-43. The hacker had no contact with law enforcement prior to discovering the defendant's conduct and afterwards refused to be interviewed by law enforcement. *Id*. at 1044 ("I WILL NEVER TELL YOU MY NAME AND NEVER MEET YOU.") (emphasis in original).

In the district court, the defendant argued that the hacker was working for an "'unknown agency' and has conducted an elaborate ruse to obscure his identity and to protect the agency for whom he is or was working...." *Id*. at 1044. The defendant provided no factual support for this argument.

In addressing the "private search" argument, the Eleventh Circuit held that the record showed the anonymous hacker was acting as a private individual. *Id*.

2

at 1045. The Court held that "[f]or a private person to be considered an agent of the government, we look to two critical factors: (1) whether the government knew of and acquiesced in the intrusive conduct, and (2) whether the private actor's purpose was to assist law enforcement efforts rather than to further his own ends." *Id*. at 1045 (citations omitted). The Court made no analysis of how these factors applied in *Steiger*, instead holding that the record was clear the hacker was a private citizen and citing the district court's ruling that the defendant "produced no facts to meet his burden of proving the source acted as a government agent, finding that 'all [Steiger had was] mere speculation and conjecture.'" *Id*. at 1044, 1045.

The anonymous hacker was under no statutory duty to report child pornography and was not subject to any fines or other punishment for failing to so report. The hacker also was not granted immunity by federal statute for his possession of the illicit materials. Moreover, there was no evidence that the United States government knew what the hacker was doing prior to him searching and reporting the material to it.

    B.    <u>Propst</u>

The facts of *Propst* are likewise dissimilar to the instant case. *Propst* involved a bail bondsman entering the defendant's apartment "to apprehend him," but the opinion does not elaborate on why he was apprehending the defendant. 369 Fed.

Appx at 45. The bondsman was let into the defendant's apartment by a security guard. *Id*. While in the apartment the bondsman saw "weapons, drug paraphernalia, and what he believed to be heroin," and reported it to law enforcement. *Id*. Law enforcement officers then obtained a warrant and searched the defendant's apartment.

Propst argued that the "bail bondsman was a state actor because the security guard who opened his apartment door was allegedly an off-duty sheriff." *Id*. On appeal, the Eleventh Circuit rejected that argument. It reviewed the *Steiger* factors discussed above and the entirety of its analysis was that "The bail bondsman's purpose in entering the apartment was to apprehend Propst—not to assist law enforcement. Even if the security guard who opened the door for the bail bondsman was an off-duty sheriff, he was acting in his capacity as a security guard—not in his capacity as a sheriff—at the time he opened the door." *Id*.

Like the hacker in *Steiger*, the bondsman in *Propst* was under no statutory duty to report what he found and was not subject to any fines or other punishment for failing to so report. Nor was he given any statutory immunity under federal law. Moreover, there was no evidence that the United States government knew what the bondsman was doing prior to him searching and reporting the material to it.

C. *Burgos Montes*

Unlike the facts of *Steiger* and *Propst*, another case, *United States v. Montes Burgos*, No. Crim. 06-009 JAG, 2011 WL 1743420, at *1 (D.P.R. May 2, 2011), *aff'd*, 786 F.3d 92 (1st Cir. 2015), is more analogous to the instant case. *Burgos* applies the *Steiger* factors and concluded that an informant was a state actor for Fourth Amendment purposes, despite law enforcement not knowing in advance that the informant would take documents and despite the informant having interests besides assisting law enforcement.

In *Burgos Montes*, an informant, Ms. Semidy Morales, entered into a Confidential Source Agreement with the DEA. She was asked to "go out and get specific information with the knowledge she would be living in Defendant's home and that she would have the facility to obtain the information being particularly sought." *Id*. at *11. However, the DEA did not ask her to obtain any physical evidence, such as documents. Nevertheless, Semidy Morales obtained documents from the defendant's home and car. She was then told by the DEA not to bring in any more documents "because they could be considered as the product of an illegal acquirement." *Id*. at *10. She later acquired more documents and was again told not to do so, but the DEA marked all the documents she obtained as evidence. *Id*.

In ruling on a motion to suppress the documents obtained by Ms. Semidy Morales, the magistrate judge initially recommended that the motion be denied. The district court overruled that recommendation and suppressed the evidence.

The Government argued that law enforcement "did not know of, instigate, direct, nor participate in any of the disputed searches." Nevertheless, the Court found that the DEA knew the informant would have "constant and ample opportunity to obtain physical evidence." Id. at *11.

Further, the district court rejected the Government's argument that Semidey Morales "was motivated by multiple factors including avoiding prosecution for herself and receiving compensation for her efforts," rather than assisting law enforcement. *Id*. at *11. Instead, it held that "[b]oth of these reasons are ultimately dependent upon the amount of benefit the Government derived from her assistance and, therefore, it is understood that her actions were motivated by the desire to help the Government." *Id*.

The Court held that "the Governments acquiescence amounted to precisely the type of Government participation that triggers the activation of the Fourth Amendment protection." *Id*. at *12. Thus, the Court held the informant was a government agent when she obtained those documents. In a blistering critique, the Court held that it:

> "[W]ill not endorse the DEA's use of the virtual 'don't ask, don't tell policy' it employed in this case to sign up an informant who practically moved into Defendant's home and seized his personal property before the ink on the Confidential Source Agreement was even dry. Doing so would imply that the Court is willing to turn its back on this type of distressing attitude on the part of law enforcement towards the Fourth Amendment rights of citizens." *Id*. at *12.

The facts of *Burgos Montes* are more closely aligned with the facts of the instant case than either *Steiger* or *Propst*.[1] Like the informant in that case, ISP's are routinely and systematically, going into people's digital homes and automatically handing the contents over to law enforcement. They have "constant and ample opportunity to obtain physical evidence," and the government knows that they are doing exactly that. 2011 WL 1743420, at *11. That the government did not ask them to in each specific instance (and instead has passed federal legislation encouraging it through immunity and fines) does not somehow lessen the Constitutional violation, but rather exacerbates it. The government and law enforcement know that Yahoo reports all CSAM to NCMEC (itself a law

---

[1] The First Circuit uses slightly different factors than *Steiger* in analyzing whether a private person is acting for the state. *Id*. at *10 ("[1] the extent of the Government's role in instigating or participating in the search; [2] its intent and the degree of control it exercises over the search and the private party, and [3] the extent to which the private party aims primarily to help the government or to serve its own interests."). However, those factors are virtually identical, if not even more stringent, than the *Steiger* factors.

enforcement agency and state actor) and law enforcement and acquiesces to it.[2] That satisfies the first *Steiger* factor.

The second factor is also satisfied by Yahoo because its purpose was to assist law enforcement. The fact that Yahoo also may have also had financial motivations does not change this, 2011 WL 1743420, at *11, but given the automatic and systematic reporting to law enforcement is designed to do exactly that – assist law enforcement. Indeed, Yahoo publishes a "Compliance Guide for Law Enforcement" that is expressly designed to "assist law enforcement" regarding electronic information and is "**not meant to be distributed to individuals or organizations that are not law enforcement entities**."[3]

For these and other reasons, Yahoo is a state actor and its warrantless search of the email account at issue here requires that the evidence obtained therefrom must be suppressed.

---

[2] Indeed, in 2021, Yahoo reported 5,498 accounts to NCMEC.
*See* https://www.yahooinc.com/transparency/yahoos-efforts-combat-online-child-exploitation.html

[3] A copy of the Compliance Manual for Law Enforcement can be found through the Electronic Frontier Foundation at:
https://www.eff.org/files/filenode/social_network/yahoo_sn_leg-doj.pdf, at *6 (emphasis in original).

## II. Yahoo's Terms of Service do not negate the expectation of privacy in email.

At the July 7, 2022 hearing, the Court also requested Defendant address the Government's argument that Yahoo's "Terms of Service" negate an expectation of privacy here. As discussed below, that argument is without merit.

The Eleventh Circuit has not yet directly ruled on how or whether the terms and conditions of an internet service provider can affect a defendant's expectation of privacy in electronic communications. However, the Sixth Circuit addressed this issue and found that, under the circumstances of that case, the defendant retained an expectation of privacy.

In *United States v. Warshak*, 631 F.3d 266 (6th Cir. 2010), the Sixth Circuit upheld the expectation of privacy despite the terms of the defendant's agreement with the internet service provider ("ISP"). *Warshak* involved a massive fraud scheme to improperly charge customers for herbal supplements. Prior to indictment, agents initially requested the defendant's ISP prospectively preserve any communications and then later issued a subpoena to turn those emails over. *Id.* at 283.

In determining that the defendant maintained a right of privacy, the Court first recognized a "search" occurs when the government infringes upon "an expectation of privacy that society is prepared to consider reasonable." *Id.* at 284 (citing *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85

(1984)). The Sixth Circuit also recognized that the presence of an expectation of privacy "breaks down into two discrete inquiries: 'first, has the [target of the investigation] manifested a subjective expectation of privacy in the object of the challenged search? Second, is society willing to recognize that expectation as reasonable?'" *Id*. (citing *California v. Ciraolo,* 476 U.S. 207, 211, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986) (internal citations omitted). The Court found both inquiries favored the existence of a right to privacy.

First, the Court noted that the defendant had a subjective expectation of privacy because of "sensitive and sometimes damning substance of his emails." *Id*. The Court held that "people seldom unfurl their dirty laundry in plain view," and therefore the defendant had a subjective expectation of privacy in those emails. *Id*.

Next, the Court inquired whether society is prepared to recognize that expectation as reasonable. The Court acknowledged that the question "is one of grave import and enduring consequence, given the prominent role that email has assumed in modern communication." *Id*. (citing *Katz v. United States,* 389 U.S. 347, 352 (1967) (suggesting that the Constitution must be read to account for "the vital role that the public telephone has come to play in private communication"). In describing how email has taken over modern life, the Court stated:

"Since the advent of email, the telephone call and the letter have waned in importance, and an explosion of Internet-based communication has taken place. People are now able to send sensitive and intimate information, instantaneously, to friends, family, and colleagues half a world away. Lovers exchange sweet nothings, and businessmen swap ambitious plans, all with the click of a mouse button. Commerce has also taken hold in email. Online purchases are often documented in email accounts, and email is frequently used to remind patients and clients of imminent appointments. **In short, "account" is an apt word for the conglomeration of stored messages that comprises an email account, as it provides an account of its owner's life. By obtaining access to someone's email, government agents gain the ability to peer deeply into his activities**." *Id*. at 284 (emphasis added).

The Court then evaluated the principles and history surrounding governmental incursions into private communications as technology has developed, including letters and telephone conversations. For instance, in *Katz*, the Supreme Court found the government's actions of attaching a listening device to a phone booth constituted a search because "the caller was 'surely entitled to assume that the words he utter[ed] into the mouthpiece w[ould] not be broadcast to the world,'" despite the ability of the telephone company to monitor and record calls. *Id*. at 285 (quoting *Katz,* 389 U.S. at 352).

Similarly, the *Warshak* Court cited the fact that letters may not be intercepted and opened "despite the fact that sealed letters are handed over to perhaps dozens of mail carriers, any one of whom could tear open the thin paper envelopes that separate the private words from the world outside." *Id*. (citing *United States v. Jacobsen*, 466 U.S. 109 (1984)).

Given the protections granted to other forms of communications and their similarities to emails, *Warshak* held that "it would defy common sense to afford emails lesser Fourth Amendment protection." *Id*. 285-86 (citing *City of Ontario v. Quon,* 560 U.S. 746 (2010) (implying that "a search of [an individual's] personal e-mail account" would be just as intrusive as "a wiretap on his home phone line"); *United States v. Forrester,* 512 F.3d 500, 511 (9th Cir.2008) (holding that "[t]he privacy interests in [mail and email] are identical")).

The government argued in *Warshak* that the ISP "contractually reserved the right to access Warshak's emails for certain purposes," throughs its terms of service and therefore there was no legitimate expectation of privacy in those emails. *Id*. at 286. The Court disagreed, holding that "the mere *ability* of a third-party intermediary to access the contents of a communication cannot be sufficient to extinguish a reasonable expectation of privacy." *Id*. (emphasis in original). "[T]he ability of a rogue mail handler to rip open a letter does not make it unreasonable to assume that sealed mail will remain private on its journey across the country." *Id*.

The Court also held that the "*right* of access" does not eliminate the expectation of privacy. *Id*. at 287 (emphasis in original). At the time *Katz* was decided, telephone companies had a right to monitor calls, including "when reasonably necessary to 'protect themselves and their properties against the

12

improper and illegal use of their facilities.'" *Id*. (citing *Bubis v. United States,* 384 F.2d 643, 648 (9th Cir. 1967)).

The Court also likened such access to that of rented spaces, such as hotel rooms, where people have a legitimate expectation of privacy "even though maids routinely enter hotel rooms to replace the towels and tidy the furniture." *Id*. at 287.

The agreement with the ISP in *Warshak* provided that "NuVox may access and use individual Subscriber information in the operation of the Service and as necessary to protect the Service." *Id*. Thus, the Sixth Circuit held that under *Katz,* "the degree of access granted to NuVox does not diminish the reasonableness of Warshak's trust in the privacy of his emails."[4] Therefore, the Court held that "a subscriber enjoys a reasonable expectation of privacy in the contents of emails 'that are stored with, or sent or received through, a commercial ISP.'" *Id*. at 288.

While the Eleventh Circuit has not directly addressed this issue, it did cite *Warshak* with approval. In *United States v. Davis*, 785 F.3d 498, 528–29 (11th Cir. 2015) (Rosenbaum, J. concurring) (*abrogated on other grounds by Carpenter v. United States*, 138 S.Ct. 2206 (2018)), the Court stated that:

---

[4] While the *Warshak* court held in *dicta* that it would not hold that a subscriber agreement could never be broad enough to destroy an expectation of privacy, the language of the agreement there was insufficient.

13

> "If our expectation of privacy in our personal communications has not changed from what it was when we only wrote letters to what it is now that we use telephones to conduct our personal interactions, it has not changed just because we now happen to use email to personally communicate. **Just as the need to entrust third parties with our personal conversations when we communicate by written letter or by telephone does not affect the analysis, the need to rely on third parties to provide Internet service when we communicate by email cannot do so, either**." *Id.* (citing *Warshak,* 631 F.3d at 288) (emphasis added).

Here, the Government has alleged that there is no expectation of privacy under Yahoo's "Terms of Service". Doc. 48 at 4. The Government cites a provision of those terms that state that a Yahoo user agrees to "not use Yahoo Services to: upload, post, email, transmit, or otherwise make available any Content that is unlawful, harmful, threatening, abusive, harassing, tortious, defamatory, vulgar, obscene, libelous, invasive of another's privacy, hateful, or racially, ethnically, or otherwise objectionable; [or] harm minors in any way." Doc. 48-4 at 3.

As in *Warshak*, this term is not enough to overcome the "grave import and enduring consequence" of eliminating an expectation of privacy over our most sensitive communications. 631 F.3d at 284. The Government's argument that "the abilities of private internet companies to obtain and retain user information," Doc. 48 at 4-5, destroys a right of privacy is no different than the arguments rejected in *Warshak* regarding letters and phone calls. In other words, just because a telephone company has the *ability* to listen to phone calls, or because a mail-carrier has the

*ability* to open a letter, does not eliminate the expectation of privacy. Likewise, just because the ISP here has the *ability* to obtain information does not eliminate the expectation of privacy of email.

The Government's argument that Yahoo "has a strong business interests in enforcing their terms of service and ensuring that their products are free of illegal content," Doc. 48 at 9, likewise does not negate an expectation of privacy. As the Court held in *Warshak*, at the time *Katz* was decided, telephone companies likewise had the right to "protect themselves and their properties against the improper and illegal use of their facilities," but the *Katz* Court nonetheless held that phone calls were entitled to an expectation of privacy.

The mere *ability*, or even the right, of an ISP to access its users' emails under the terms and conditions of its service does not destroy the expectation of the privacy to those emails. The Government's argument to the contrary is without merit.

### III. The good-faith exception does not apply here.

In its response to the Motion to Suppress, the Government argues that Detective Keller's warrant application is subject to the "good faith" exception to the exclusionary rule.

The good-faith exception "stands for the principle that courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause." *Martin,* 297 F.3d at 1313. Therefore, "in the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Leon,* 104 S.Ct. at 3422. "[W]hen officers engage in objectively reasonable law enforcement activity and have acted in good faith when obtaining a search warrant from a judge or magistrate, the *Leon* good faith exception applies." *Martin,* 297 F.3d at 1313 (internal quotation omitted).

There are four circumstances where the *Leon* good faith exception will not apply and evidence will be excluded: (1) where "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2)

"where the issuing magistrate wholly abandoned his judicial role in the manner condemned in" *Lo–Ji Sales, Inc. v. New York,* 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979); (3) where the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where, depending upon the circumstances of the particular case, a warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Id.* (internal quotation marks omitted). *See United States v. Martin*, 297 F.3d 1308, 1313 (11th Cir. 2002).

When read in conjunction with *Franks*, *Leon* and *Franks* hold that evidence seized pursuant to a search warrant obtained by false or omitted statements is admissible if the false or omitted statements were made in good faith. But if the false or omitted statements were deliberately or recklessly made, the evidence must be excluded *unless* the search warrant affidavit contained sufficient probable cause without the false statements or with the inclusion of omitted statements. "The government bears the burden of demonstrating that the good faith exception applies." *United States v. Morales*, 987 F.3d 966, 974 (11th Cir. 2021), *cert. denied,* 142 S. Ct. 500 (2021).

As discussed in the Motion to Suppress, Detective Keller recklessly omitted information from the affidavit supporting the warrant application. Specifically, he omitted that NCMEC had determined certain images relied on in the warrant were not child pornography, and omitted that the Yahoo account from which the images had been uploaded had not been logged in for several days before the image was uploaded.

"Reckless or intentional omissions will invalidate a warrant only if inclusion would have prevented a finding of probable cause." United States v. Jenkins, 901 F.2d 1075, 1080 (11th Cir.), cert. denied, 498 U.S. 901, 111 S.Ct. 259, 112 L.Ed.2d 216 (1990). Here, it is entirely possible that inclusion of material that had been omitted would have prevented the Court from finding probable cause. For instance, had Detective Keller informed the executing judge that NCMEC disagreed with his finding that the material was CSAM, she may not have granted the warrant. The same is true if Detective Keller had informed the executing judge that the Yahoo account had not been logged in to on the day an image was uploaded.

Because that information was omitted recklessly, and because the signing judge may not have found probable cause, the motion to suppress should be granted and the good-faith exception to the exclusionary rule should not apply.

## **CONCLUSION**

For the above reasons and the reasons set forth in the Motion to Suppress, Mr. Williamson respectfully requests that the Motion to Suppress be granted, that all evidence obtained as a result of the search warrant on Mr. Williamson's residence be suppressed, and that the Court grant all other relief that the Court deems necessary and proper.

Respectfully submitted:

/s/ Gus M. Centrone
Gus M. Centrone (FB# 30151)
KYNES, MARKMAN & FELMAN, P.A.
P.O. Box 3396
Tampa, FL 33601-3396
Telephone: (813) 229-1118
Facsimile: (813) 221-6750
GCentrone@kmf-law.com

*Counsel for Defendant Gregory Allen Williamson*

## CERTIFICATE OF SERVICE

I HERBY CERTIFY that on July 29, 2022, I electronically filed the foregoing with the Clerk of Court through the CM/ECF Filing System which will send a notice of electronic filing to all counsel of record.

/s/ Gus M. Centrone
Gus M. Centrone
