UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                             CASE NO. 8:21-cr-00355-WFT-CPT

GREGORY WILLIAMSON

**UNITED STATES' LEGAL MEMORANDUM**

## I.    PROCEDURAL BACKGROUND

1.      On November 3, 2021, a federal grand jury returned an eight-count indictment against Gregory Williamson ("Williamson"), charging him with enticement of a minor, in violation of 18 U.S.C. § 2422(b), attempted child pornography production, in violation of 18 U.S.C. § 2251(a) and (e), child pornography distribution, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1), and possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2). Doc. 1.

2.      Williamson appeared for initial appearance on November 19, 2021 and was ordered detained pending trial. Doc. 15.

3.      On May 5, 2022, Williamson filed a Motion to Suppress. Doc. 44.

4.      On October 11, 2022, the Court held an evidentiary hearing with reference to the Motion to Suppress. Doc. 96.

## II.    RELEVANT FACTUAL BACKGROUND

1.    On or about November 5, 2020, North Port Police Department

("NPPD") received CyberTipline Report #79384716 from the National Center for

Missing and Exploited Children (NCMEC). Keller Test., Hr'g Tr. at 155; 12-13,

October 11, 2022, Doc. 99.

2.    CyberTipline Report #79384716 was generated in September 2020,

after NCMEC received information from Yahoo about apparent child pornography.

Doc. 92, Gov't Ex. 1. The information provided that Yahoo user,

"vladlover50@yahoo.com" transmitted seven images of suspected child

pornography, also known as child sexual abuse material (CSAM). *Id*.

3.    NCMEC is a private non-profit organization that was founded in 1984

after the kidnapping and murder of Adam Walsh in 1981. Newman Test., Hr'g Tr. at

10; 18-23, October 11, 2022, Doc. 99. The purpose in founding NCMEC was to find

missing children, reduce child sexual exploitation and prevent future victimization.

*Id.*

4.    NCMEC serves as the nation's recording mechanism for online child

exploitation and those who are invested in child safety and protection. Newman

Test., Hr'g Tr. at 11; 1-9, October 11, 2022, Doc. 99. NCMEC oversees five core

programs: missing children, exploited children, prevention of future victimization,

family advocacy division and training and outreach. Newman Test., Hr'g Tr. at 12-

13; 22-5, October 11, 2022, Doc. 99.

2

5.      The CyberTipline program was created in 1998 and is the conduit that receives tips from the public or from electronic service providers. Newman Test., Hr'g Tr. at 14; 14-19, October 11, 2022, Doc. 99. If appropriate, the CyberTipline program makes those reports available to law enforcement. *Id.* The goal of the program is to surface any files or reports where there could be a child in danger and provide those reports to law enforcement. *Id.* Law enforcement can review, conduct their own analysis, and if they investigate, potentially safeguard a child. Newman Test., Hr'g Tr. at 14; 21-25, October 11, 2022, Doc. 99.

6.      CyberTipline Report #79384716 was received by NCMEC on September 10, 2020, and was later processed by a NCMEC analyst on October 22. Newman Test., Hr'g Tr.  at 27; 3-5, October 11, 2022, Doc. 99. The electronic service provider that reported the information in this tip was from Oath Holdings, the parent company of Yahoo at the time of the report. *Id.* at 31; 19-21.

7.      Yahoo is a service provider primarily for email, but also hosts other products such as Yahoo finance and Yahoo Sports. The mission of Yahoo is to inspire and entertain users on a personal level. Guizotti Test., Hr'g Tr. at 72; 18-24, October 11, 2022, Doc. 99. It is a private company and not a government organization. Guizotti Test., Hr'g Tr. at 73; 5-12, October 11, 2022, Doc. 99.

8.      CyberTipline Report #79384716 contained seven files uploaded by Yahoo. *Id.* at 32; 18. All seven files were human reviewed by Yahoo. Newman Test., Hr'g Tr. at 33; 8-10., October 11, 2022, Doc. 99; Guizzotti Test., Hr'g Tr. at 86; 23-2,

3

October 11, 2022, Doc. 99. Six of the seven files uploaded by Yahoo were reviewed by human representative of NCMEC. Newman Test., Hr'g Tr. at 34; 1-2, October 11, 2022, Doc. 99.

9.      On or about November 11, 2020, NPPD Detective James Keller reviewed CyberTipline Report #79384716 and confirmed it contained CSAM by reviewing the seven uploaded files. Keller Test., Hr'g Tr. at 156; 11-25, October 11, 2022, Doc. 99.

10.     On or about December 11, 2020, a judge in Sarasota County, 12th Judicial Circuit, signed a search warrant, prepared by Detective Keller, for the Yahoo account "vladlover50@yahoo.com." Doc. 92, Gov't Ex. 6.

11.     After reviewing the contents of the Yahoo account Detective Keller applied for a residential search warrant. On or about January 27, 2021, a judge in Sarasota County, 12th Judicial Circuit, signed the search warrant for the residence located at 2575 Rolling Road, North Port, FL, 34288 where Williamson was residing. Doc. 92, Govt' Ex. 2.

### III.    MEMORANDUM OF LAW

### A.    The Fourth Amendment-Private Search Doctrine

The search of Williamson's Yahoo account did not violate the Fourth Amendment. The Fourth Amendment protects individuals from government actors, not private ones. A private party may conduct a search that would be unconstitutional if the government did it. *Coolidge v. New Hampshire*, 403 U.S. 443,

489 (1971). The government usually needs a warrant before it may search a person or his effects. *Katz v. United States*, 389 U.S. 347, 357 (1967). A warrantless search is invalid unless an exception applies to the warrant requirement. *Id.* The warrant exception in Williamson's case is the private search doctrine. The Fourth Amendment allows police to replicate a prior private search provided it stays within the same parameters. *United States v. Sparks*, 806 F.3d 1323, 1334 (11th Cir. 2015). Here, both Yahoo and NCMEC conducted private searches. Law enforcement's search of Williamson's Yahoo photo files was covered by the private search doctrine, as law enforcement did not exceed the scope of the private party search.

### B.    Yahoo is not a government agent

*No Expectation of Privacy*

Yahoo is a private company and does not serve as a government entity. Guizotti Test., Hr'g Tr. at 73; 5-12, October 11, 2022, Doc. 99. Williamson implies that Yahoo is a government agency but fails to set forth any facts which support such conclusory statements. Yahoo was not acting on behalf of the government when they reported the apparent child pornography to NCMEC and therefore did not violate the Fourth Amendment.

When a user creates an account with Yahoo, they must agree to a Terms of Service which governs a user's use of Yahoo. Doc. 92, Gov't Ex. 3. There is no realistic expectation of privacy from Yahoo once this agreement is made. Under the Yahoo Terms of Service in effect at the time Williamson's CyberTipline Report, he

5

agreed to "not use Yahoo Services to: upload, post, email, transmit, or otherwise make available any Content that is unlawful, harmful, threatening, abusive, harassing, tortious, defamatory, vulgar, obscene, libelous, invasive of another's privacy, hateful, or racially, ethnically, or otherwise objectionable; [or] harm minors in any way[.]" Doc. 92, Gov't Ex. 4. Even if Williamson believed that his communications within Yahoo were private, a reasonable person would not believe this based on the very nature of using an online service—knowing the abilities of private internet companies to obtain and retain user information, and the agreement of the Terms of Services. Guizotti Test., Hr'g Tr. at 75, 17-25, October 11, 2022, Doc. 99. Yahoo requires each user on their platform to agree to their terms of service prior to creating an account. The terms of service are basically rules to use their services. Guizotti Test., Hr'g Tr. at 74; 2-13, October 11, 2022, Doc. 99.  If a user refuses to agree to these terms, they are unable to use Yahoo services. *Id.*

In September 2020, when Yahoo account "vladlover50@yahoo.com uploaded suspected child pornography onto his account, there were terms of service in place. Guizotti Test., Hr'g Tr. at 75, 1-15, October 11, 2022, Doc. 99; Doc. 92, Gov't Ex. 3. Yahoo includes these terms to protect their reputation as a company as they do not want to host abusive material, especially harm to a minor. Guizotti Test., Hr'g Tr. at 76, 1-9, October 11, 2022, Doc. 99.

By agreeing to the Terms of Service, Williamson agreed to Yahoo accessing, preserving, and disclosing his account information and content. Courts have agreed

6

that users in this scenario do not have a reasonable expectation of privacy for/in their messages. *United States v. Montijo*, No. 2:21-cr-75-SPC-NPM, 2022 WL 93535, at *7 (M.D. Fla. 2022) (holding that the defendant did not have a reasonable expectation of privacy in his Facebook messages when he agreed to Facebook's community guidelines, which explicitly state that Facebook would send any apparent child exploitation material to NCMEC); *United States v. DiTomasso*, 56 F. Supp. 3d 584, 595 (S.D.N.Y. 2014) (holding that the defendant did not have a reasonable expectation of privacy in his emails when the defendant agreed to AOL's monitoring policy, which explicitly said the company actively assisted law enforcement). Ultimately, there is no evidence that Williamson was coerced to create a Yahoo account, or to agree to Yahoo's Terms of Service. By doing both, he waived any reasonable expectation of privacy that he may have had in his Yahoo email.

Even if Yahoo was found to have violated Williamson's expectation of privacy, the government does not know or acquiesce Yahoo's searching of its users' content nor does Yahoo search intending to assist law enforcement efforts. *United States v. Steiger*, 318 F.3d 1039 (11th Cir. 2003); Guizotti Test., Hr'g Tr. at 86, 13, October 11, 2022, Doc. 99.

*Reporting Child Pornography*

Federal law requires internet service providers to report apparent instances of child pornography offenses. Specifically, 18 U.S.C. § 2258A(a) imposes a duty on providers to submit a CyberTip report containing the facts or circumstances from

which there is an apparent violation of certain child pornography offenses. 18 U.S.C. § 2258A(a). Reports on apparent child pornography violations are requested to be submitted "as soon as reasonably possible after obtaining actual knowledge of any facts or circumstances" of the violation. 18 U.S.C. § 2258A(b).

While providers, such as Yahoo, are required to report to NCMEC when they find apparent child pornography, there is importantly, no affirmative duty to search for child pornography. 18 U.S.C. § 2258A(e). Section 2258A(f) specifically says that providers are not required by law to search their platforms for child pornography. Rather, they are only required to report when they become aware of it. Yahoo chooses as a company to initiate searches for illegal activity, as it is in their best interested to keep their platform safe. Guizotti Test., Hr'g Tr. at 91, 6-14, October 11, 2022, Doc. 99. Therefore, Yahoo does not rise to the level of government actor by merely reporting CSAM when they discover it on their platform as there is no government mandate nor encouragement to actively search for it.

Courts have held that providers do not act as government agents when they monitor their users' activities on their servers, or when they implement their own internal security measures against users engaging in illegal activity through their services. *United States v. Cameron*, 699 F.3d 621, 637-38 (1st Cir. 2012) (holding Yahoo, Inc. did not act as agent in searching emails and sending reports to NCMEC).

8

This case is no different. Williamson agreed to Yahoo's Terms of Service when he signed up for their email services. He violated that agreement when he transmitted apparent child pornography across their platform. Williamson had no expectation of privacy when Yahoo conducted a private party search of his account. Therefore, the Fourth Amendment is not implicated, and no warrant is required for a provider to monitor, search and safeguard its platform.

Further, because Yahoo is not a government agent, their review without a warrant of Williamson's photos did not violate the Fourth Amendment. *United States v. Coyne*, 387 F.Supp.3d 387, 400 (2018). Their searches are private ones, conducted pursuant to the terms of service that govern their agreement with customers. Yahoo did not conduct their search at the behest of law enforcement. Guizotti Test., Hr'g Tr. at 86, 13, October 11, 2022, Doc. 99. The Supreme Court has long recognized that the results of a private search are not subject to the exclusionary rule. *Coyne, 387 F.Supp.3d 387,* 400 (2018), citing *United States v. Jacobsen*, 466 U.S. 109, 117, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) ("The Fourth Amendment is implicated only if the authorities use information with respect to which the expectation of privacy has not already been frustrated.").

## C.    NCMEC is not a government actor

There is no Fourth Amendment violation regarding NCMEC's actions. NCMEC opened six of the seven apparent CSAM files that were previously opened by Yahoo and then provided relevant information to law enforcement. Newman

Test., Hr'g Tr. at 33; 8-10, October 11, 2022, Doc. 99; Guizzotti Test., Hr'g Tr. at 86; 23-2, October 11, 2022, Doc. 99. NCMEC is not a government actor, despite Williamson's conclusory allegations. NCMEC takes on the role of a clearinghouse as a private, nonprofit organization. Newman Test., Hr'g Tr. at 10; 18-23, October 11, 2022, Doc. 99.  As part of this role, NCMEC makes CyberTips available to federal, state, local, and/or foreign law enforcement agencies involved in the investigation of child sexual exploitation, kidnapping or enticement crimes. 18 U.S.C. § 2258A(c).

The mission of NCMEC is to help reunite families with missing children, reduce child sexual exploitation, and prevent child victimization. Newman Test., Hr'g Tr. at 10; 18-23, October 11, 2022, Doc. 99. One of the ways NCMEC accomplishes these missions is through the operation of the CyberTipline, which received leads and tips regarding suspected crimes of sexual exploitation committed against children. Newman Test., Hr'g Tr. at 14; 14-25, October 11, 2022, Doc. 99. Pursuant to statute, when internet service providers discover apparent child pornography on their servers or systems, they must submit a report of the suspected child pornography to NCMEC's CyberTipline. 18 U.S.C. § 2258A(c).  Upon receiving a CyberTipline Report that contains image files of apparent child pornography, a NCMEC analyst may open and view the files. Newman Test., Hr'g Tr. at 14; 21-25, October 11, 2022, Doc. 99. NCMEC makes all CyberTipline reports available to the appropriate law enforcement agency for independent review and potential investigation. *Id.* NCMEC receives funding from federal and private

10

foundation grants, corporate financial and in-kind donations to perform its programs of work. Newman Test., Hr'g Tr. at 12; 3-14, October 11, 2022, Doc. 99. NCMEC's employees, including the CyberTipline staff, are not hired, managed or supervised by any government entity. Newman Test., Hr'g Tr. at 36; 20-5, October 11, 2022, Doc. 99.

Where an initially private search is followed by a search by a government actor, the test is to what degree the government search exceeded the scope of the private search. *United States v. Jacobsen*, 466 U.S. 109, 115 (1984), *and United States v. Miller*, 152 F.3d 813, 815 (8th Cir. 1998). Here, NCMEC's search did not exceed the scope of Yahoo's private search at all, as substantiated by the testimony from NCMEC. Newman Test., Hr'g Tr. at 33; 8-10., October 11, 2022, Doc. 99. No further analysis is necessary to determine what degree the government search exceeded the scope.

In *United States v. Coyne*, a post-*Ackerman* case, the Court found that NCMEC was not a governmental entity for Fourth Amendment purposes. *United States v. Coyne*, 387 F.Supp.3d 387 (2018). The court in *Coyne* reviewed two cases involving very similar facts to Williamson's. In each case an electronic service provided submitted a Cybertip to NCMEC, who then submitted the tips to law enforcement. Id. Importantly, Yahoo was one of those electronic service providers. *Id.* Even if this Court were to conclude that NCMEC is a government agent, a private search of the suspect files was performed prior to any government search, and no subsequent

11

government search exceeded the scope of the private search without a lawful warrant, therefore, the evidence was not obtained in violation of the Fourth Amendment.

### D.    Law enforcement did not exceed the scope

Law enforcement did not exceed the scope of the search when they opened and viewed the CSAM. Importantly, law enforcement did not expand on Yahoo or NCMEC's private search when it opened the images. Nothing law enforcement learned was new or critical information needed to obtain a warrant. Instead, the images reviewed by law enforcement were what was expected: apparent child pornography. As long as the scope of a subsequent search by government agents does not exceed the private search, the results are not suppressed even if the private search may have invaded the defendant's privacy rights. *Coyne*, 387 F.Supp.3d 387 (2018). The actions of NCMEC duplicated the private search by Yahoo. The actions of Detective Keller duplicated the private search by NCMEC and Yahoo. Thus, law enforcement did not exceed the scope of the private search and the private search doctrine should apply.

### E.    The Legal Standard-Franks Hearing

Affidavits supporting search warrants are presumptively valid. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). The Supreme Court instructs, however, that (1) "where the defendant makes a *substantial* preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by

12

the affiant in the warrant affidavit," and (2) "if the allegedly false statement is

*necessary* to the finding of probable cause, the Fourth Amendment requires that a

hearing be held at the defendant's request." *Id*. at 155-56 (emphasis added). If, after a

hearing, the defendant establishes the allegation of perjury or reckless disregard by a

preponderance of the evidence, and "with the affidavit's false material set to one

side, the affidavit's remaining content is insufficient to establish probable cause, the

search warrant must be voided and the fruits of the search excluded to the same

extent as if probable cause was lacking on the face of the affidavit." *Id*. at 156. A

defendant is not entitled to a hearing "when material that is the subject of the alleged

falsity or reckless disregard is set to one side, there remains sufficient content in the

warrant affidavit to support a finding of probable cause, no hearing is required." *Id*.

at 171-172.

   "Insignificant and immaterial misrepresentations or omissions will not

invalidate a warrant." *United States v. Sims*, 845 F.2d 1564, 1571 (11th Cir. 1988)

(quotation omitted). "What amounts to probable cause is purely a question of law."

*United States v. Horne*, 198 Fed. Appx. 865, 869-871 (11th Cir. 2006) (upholding the

district court's denial of motions to suppress without hearings). If, and only if, the

defendant carries his burden as to each prerequisite, the defendant is entitled to a

hearing with the opportunity to prove his *Franks* allegations by preponderance of the

evidence. If the defendant fails to carry his burden at as to either prerequisite, he is

not entitled to a *Franks* hearing, as a matter of law. *United States v. Barsoum*, 763 F.3d

13

1321, 1328 (11th Cir. 2014). Williamson is not entitled to a *Franks* hearing because he failed to offer proof beyond conclusory assertions or show that the alleged false statements or omissions were *necessary* to the finding of probable cause.

*First Prerequisite: Specific Allegations and an Offer of Proof*

The defendant must "make specific allegations of knowing or reckless falsehood and an offer of proof to support the allegations." *United States v. Campbell*, 193 Fed. App'x. 921, 924 (11th Cir. 2006). Conclusory allegations are insufficient. *Franks*, 438 U.S. at 171. The defendant must offer proof, which is usually in the form of affidavits or reliable witness statements, supporting his grounds or give some satisfactory explanation for failing to do so. *Id.*; United *States v. Haimowitz*, 706 F.2d 1549, 1556 (11th Cir. 1983). It is not enough for a defendant to argue that a *Franks* hearing would allow him to show that the information in question was false and deliberately or recklessly included or omitted. *See United States v. Barsoum*, 763 F.3d 1321, 1329 (11th Cir. 2014) (explaining that a defendant who argues that a hearing would allow him to show that information was deliberately misstated or omitted "misunderstands the Franks standard").

The Government maintains that the Court should deny the *Franks* argument because Williamson has offered no proof and did not provide any witness statements or affidavits alleging misconduct. The simple assertions made in the motion to suppress are not the type of proof that *Franks* requires. *See Franks*, 438 U.S. at 171 ("Affidavits or sworn or otherwise reliable statements of witnesses should be

14

furnished, or in their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.") For judicial economy, the Court allowed Williamson to inquire during the evidentiary hearing about the *Franks* portion of his motion to suppress; however, the Court should not consider any of the testimony elicited during that portion due to the lack of proof provided preemptively by Williamson to even reach the standard of being able to conduct a *Franks* hearing.

*Second Prerequisite: Demonstrating Effect on Probable Cause*

Because Williamson failed to meet the first prerequisite to warrant a *Franks* hearing, the Court may deny his hearing request without looking further. However, should the Court continue its analysis, it will conclude that Williamson also fails to meet the second prerequisite.

If a defendant satisfies the first prerequisite for a *Franks* hearing—which Williamson here has not—then "the defendant bears the burden of demonstrating" that, had the affiant included the alleged omissions, it "would have prevented a finding of probable cause." *United States v. Lebowitz*, 676 F.3d 1000, 1010 (11th Cir. 2012). In other words, if, after the revision, the facts in the affidavit would still have contained probable cause, the defendant is not entitled to the hearing. Probable cause is not a finely tuned standard. *Florida v. Harris*, 568 U.S. 237, 244 (2013). It does not mean preponderance of the evidence; it is merely a "fair probability." *Id.*

**F.   *Franks v. Delaware* Analysis**

*The Affiant Did Not Make Statements in Reckless Disregard for the Truth*

15

Williamson alleges Detective Keller misrepresented the categorization of the images as CSAM and misrepresented NCMEC's previous categorization of the images as child pornography. Doc. 44.

"Allegations of negligence or innocent mistake are insufficient." *Franks*, 438 U.S. at 171; *see also Maduwake v. Savaiko*, 117 F.3d 1321, 1326 (11th Cir. 1997) (neither negligence nor mistake violates the Fourth Amendment). It is not enough to show that statements in an affidavit were wrong; to be entitled to a *Franks* hearing, a defendant must establish that the affiant *knowingly* or *recklessly* included such falsities and/or material omissions. *Sims*, 845 F.2d at 1571 (citing *Franks*, 438 U.S. at 171-72). "Reckless disregard for the truth" includes instances in which an affiant "should have recognized the error, or at least harbored serious doubts" about his representations. *United States v. Kirk*, 781 F.2d 1498, 1502–03 (11th Cir. 1986); *Franks*, 438 U.S. at 171 (standard requires proof of "deliberate falsehoods or reckless disregard for the truth"). The Court conducted a *Franks* hearing during the evidentiary hearing, in the interest of judicial economy. The Government maintains the *Franks* hearing was not warranted because Williamson did not provide the proper evidence required to obtain a *Franks* hearing; however, the Government will cite to portions of the *Franks* hearing in the below analysis based on the relevance for purposes of this legal memorandum.

1. *Misrepresentation of Images as CSAM*

16

First, Williamson alleges that Detective Keller misrepresented that there were seven photos of CSAM and then immediately contracted himself by stating that three of the images were not CSAM, without any further explanation. Doc 44 at 16. This is seen in both the Yahoo account search warrant and the residential search warrant. Doc. 92, Govt' Exs. 2, 6. Detective Keller provides a general summary detailing that seven photos of CSAM exist, and then proceeds to describe six of the seven images in specific detail. *Id.*

The Court should deny Williamson's request for a *Franks* hearing because it is established that "[a]llegations of negligence or innocent mistake are insufficient" to support the need for a hearing. *Id.* Detective Keller provided in his affidavits for the Yahoo account and residential search warrants the total number of uploaded files that were the subject of the CyberTipline Report, which was seven. Keller Test., Hr'g Tr. At 159; 12-21, October 11, 2022, Doc. 99. He then provided specific detail as to six of the images, despite needing to only include a description of one. *Id.* at 161; 19-25; *Id.* at 162; 1-3. By accurately describing the images and providing approximate age ranges based on his training and experience, Detective Keller provided the necessary information to allow a court to make a determination of probable cause. The detailed descriptions negated any potential confusion or error caused by the initial misclassification that all the images were CSAM.

This discrepancy does not affect a court's finding of probable cause. While Detective Keller initially stated there were seven files of CSAM, based on the seven

that were the subject of the CyberTipline Report, and then specifically detailed four images of CSAM, a court would likely rely more on the detailed descriptions of the images to determine if CSAM existed, rather than a broad statement about the total number of CSAM images. Detective Keller left no room for confusion as to what the images contained based on his detailed descriptions, and thus if the statement of the total amount of CSAM images were removed from the warrant, a court would still find probable cause for the search of the Yahoo account and residence.

2. *Misrepresentation of Previous NCMEC Categorization*

Williamson alleges that Detective Keller's misrepresented NCMEC's previous categorizations of the images. Doc. 44 at 16. Williamson has not provided any proof that Detective Keller's statements were made in reckless disregard for the truth. The only proof that Williamson likely presents now is Detective Keller's own testimony at the Evidentiary Hearing, which is not the type of proof necessary to even reach the standard of a *Franks* hearing. *Barsoum*, 763 F.2d at 1329.

Similar to his first allegation, Williamson has not provided any proof that Detective Keller's statements made in reckless disregard for the truth. In the Yahoo account search warrant, Detective Keller provided detailed descriptions, along with approximate ages of the victims, for the listed images. Doc. 92, Govt' Ex. 6. He used the same descriptions but added a NCMEC classification for the residential search warrant. Doc. 92, Govt' Ex. 2.

18

Detective Keller did not report the NCMEC classifications in reckless disregard for the truth. While NCMEC classifies the submitted images, it ultimately rests on the law enforcement officer to use his training and experience to determine whether the image depicts child pornography. Keller Test., Hr'g Tr. at 162; 18-24, October 11, 2022, Doc. 99. Detective Keller reviewed the images that NCMEC categorized as "CP (Unconfirmed)" and was able to confirm the victims' ages as minors, thus believing he had eradicated the need to include "Unconfirmed" in the description. *Id.* at 163; 17-24; *Id.* at 171; 12-20. During the evidentiary hearing, Detective Keller learned the definitions NCMEC uses to categorize images, as it was not something he was provided in its entirety while he was creating the residential search warrant. *Id.* at 171; 5-11. The standard delineated in *Kirk* to establish "reckless disregard for the truth" is simply not met in Williamson's allegation, lack of witness statements or affidavits, and Detective Keller's own testimony (which the United States maintains should not be considered for the *Franks* preliminary portion because it cannot be used to establish the burden to require a *Franks* hearing).

Pursuant to *Franks*, if probable cause is not met in the warrant once the statements made in perjury or reckless disregard are determined and set to the side, then the warrant must be voided. *Franks,* 438 U.S. at 156. If the Court found Detective Keller made the NCMEC classification misrepresentations in reckless disregard for the truth – of which there has been no substantive proof -- and removed them from the residential search warrant, probable cause would still remain, as

19

evidenced by the Yahoo account search warrant that does not contain the NCMEC classifications in its probable cause portion. A court found probable cause for the Yahoo account search warrant based at least in part on Detective Keller's detailed descriptions of the images, without any mention of the NCMEC classifications. Doc. 92, Govt' Ex. 6. Ultimately, Detective Keller used his training and experience to identify the approximate ages of the children in the images, and did not recklessly disregard the truth in providing NCMEC classifications as Child Pornography rather than "CP (unconfirmed)." It is clear these NCMEC classifications did not affect the court's determination of probable cause as Detective Keller secured a search warrant using just the image descriptions.

*The Affidavit Does Not Contain Material Omissions*

Williamson alleges one other deficiency within the residential search warrant affidavit, in which he claims Detective Keller omitted information with reference to Williamson's Yahoo account login. This omission is not material because Williamson cannot show that the omission would change the Court's conclusion that probable cause existed for the search of Williamson's residence. *See United States v. Novaton*, 271 F.3d 968, 986 (11th Cir. 2001). Williamson specifically alleges that Detective Keller failed to explain how an image could have been sent from Williamson's Yahoo email account on September 8, 2020, when the most recent login to the account was on September 5, 2020. This is not an omission of fact nor would it have affected the Court's probable cause determination in the search

20

warrant. The United States maintains Williamson did not present the proper predicate evidence to warrant a *Franks* hearing on this issue; however, based on the testimony provided in accordance with judicial economy, it is clear Detective Keller did not omit material information for the residential search warrant by not including the last login date of Williamson's Yahoo account. Detective Keller was aware that a user's last login date doesn't necessarily mean it was the user's last access date, as many users stay logged in for extended periods of time without retyping in their username and password. Keller Test., Hr'g Tr. at 164-165; 13-25, 1-20, October 11, 2022, Doc. 99. A Yahoo representative further solidified this commonly known practice, testifying that a persistent login session exists where you can be logged into Yahoo on multiple electronic devices and won't need to login again for several weeks. Guizotti Test., Hr'g Tr. at 88-89; 4-25, 1-21, October 11, 2022, Doc. 99. Detective Keller did not include an immaterial fact in his residential warrant application when it was irrelevant to probable cause nor did it provide any exculpatory evidence.

## IV.    Good Faith Exception Applies

Generally, evidence seized in violation of the Fourth Amendment is subject to suppression under the exclusionary rule, the purpose of which is "to deter future unlawful police conduct." *United States v. Calandra*, 414 U.S. 338, 347 (1974). The Supreme Court has stated that "[i]f exclusion of evidence obtained pursuant to a subsequently invalidated warrant is to have any deterrent effect . . . it must alter the

behavior of individual law enforcement officers or the policies of their departments." *United States v. Leon*, 468 U.S. 897, 918 (1984). "[W]here the officer's conduct is objectively reasonable, excluding the evidence will not further the ends of the exclusionary rule in any appreciable way. . . ." *Id.* at 919–20 (internal citation omitted). Thus, the Supreme Court has held that where an officer relied upon a warrant in an objectively reasonable manner, the evidence obtained, even though the warrant is found deficient, will not be excluded. *Id.*

An officer's reliance on a warrant would not qualify as "objectively reasonable" in four circumstances: where (1) probable cause is based on statements in an affidavit that are knowingly or recklessly false; (2) the magistrate fails to perform a neutral and detached function and instead merely "rubber stamps" the warrant; (3) the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant was so facially deficient that the executing officer could not reasonably have assumed it was valid. *Leon*, 468 U.S. at 914–15. Only the first circumstance is potentially applicable here. The question is, then, whether the alleged omissions recklessly false statements made by the affiant in the warrant would cause that the officer's belief in the warrant's validity is objectively unreasonable. Simply put, it does not.

There is no evidence beyond mere conclusory allegations and interpretations that demonstrate the affiant recklessly disregarded the truth when presenting the affidavit. Based on his experience handling child sexual abuse material cases,

22

Detective Keller was aware that persons who share child pornography rarely delete
it. Based on the information from Yahoo, NCMEC, the surveillance relating to the
residence, Detective Keller's knowledge of persons involved with child sexual abuse
material, and Detective Keller's knowledge of forensic capabilities, Detective Keller's
beliefs that the warrant was valid was not objectively unreasonable, and therefore,
the evidence obtained therefrom should not be excluded. Detective Keller reasonably
relied on Yahoo and NCMEC's statutory duty to report apparent child pornography
and voluntarily provide the incriminating evidence to view the photos.

## V.    CONCLUSION

Even if the Court agrees with Williamson on any one of these allegations, it
does not change the existence of probable cause to issue a search warrant for
Williamson's residence and Yahoo account. The affidavits established probable
cause that a Yahoo user identified as vladlover50@yahoo.com associated with
Williamson's residence was being used to transmit apparent child pornography on
several occasions. The presence of child pornography was confirmed by NCMEC
and Detective Keller, through viewing the images. Williamson has not established a
Fourth Amendment violation nor has he made a substantial preliminary showing to
entitle him to a *Franks* hearing because (1) he has not provided the necessary proof;
and (2) even when the alleged false statements and omissions are set aside, there
remains sufficient content in the affidavit to support a finding of probable cause.

WHEREFORE the United States respectfully requests this Court enter an order denying Williamson's *Motion to Suppress*.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By: <u>*s/ Erin Claire Favorit*</u>
Erin Claire Favorit
Assistant United States Attorney
Florida Bar No. 104887
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone:   (813) 274-6000
E-mail: erinf.favorit@usdoj.gov

<u>*/s/ Abigail K. King*</u>
Abigail K. King
Assistant United States Attorney
Florida Bar No. 294963
400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
E-mail: Abigail.King@usdoj.gov

24

**U.S. v. Gregory Williamson**          **CASE NO. 8:21-cr-00355-WFJ-CPT**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 25, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Gus Centrone, Esq.

By: <u>*s/ Erin Claire Favorit*</u>
    Erin Claire Favorit
    Assistant United States Attorney
    Florida Bar No. 104887
    400 N. Tampa Street, Suite 3200
    Tampa, Florida 33602-4798
    Telephone:   (813) 274-6000
    Facsimile:    (813) 274-6103
    E-mail: erin.favorit@usdoj.gov

25