## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

UNITED STATES OF AMERICA,

      v.                                    CASE NO. 8:21-cr-355-WFJ-CPT

GREGORY ALLEN WILLIAMSON,

      Defendant.

_____/

### DEFENDANT'S OBJECTION TO REPORT & RECOMMENDATION

Defendant, Gregory Allen Williamson ("Defendant" or "Mr. Williamson"), by and through undersigned counsel, pursuant Federal Rule of Criminal Procedure 59, files this Objection to the Honorable Magistrate Judge's Report and Recommendation (the "R&R"), Doc. 114, issued on February 10, 2023, that Defendant's Motion to Suppress be denied.

The Defendant reasserts his Motion to Suppress, Doc. 44, as well as the Supplemental Briefing on that Motion, Doc. 64, and the Proposed Findings of Fact and Conclusions of Law as to that Motion, Doc. 106, and adopts and incorporates the factual allegations and legal arguments contained therein. Further, a copy of the transcript from the October 11, 2022 evidentiary hearing on the Motion to Suppress is attached as **Exhibit A**.

## I.    Standard of Review

A district court reviewing a report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The district court "may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.* "The district court must consider the record and factual issues based on the record independent of the magistrate judge's report." *United States v. Madison*, 6:17-CR-15-ORL-37KRS, 2018 WL 3738255, at *2 (M.D. Fla. Aug. 7, 2018) (citing *Ernest S. ex rel. Jeffrey S. v. State Bd. Of Educ.*, 896 F.2d 507, 512 (11th Cir. 1990)). This analysis requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party." *Ernest S. ex rel. Jeffrey S. v. State Bd. Of Educ.*, 896 F.2d 507, 512 (11th Cir. 1990) (quoting H.R. 1609, 94th Cong., § 2 (1976)). "The *de novo* review requirement is essential to the constitutionality of section 636." *Id.*

## II. Argument.

While the Magistrate Judge correctly found that Mr. Williamson maintained a reasonable expectation of privacy in the email at issue[1], the R&R erred in several other regards. First, contrary to the R&R, Yahoo was acting as a state actor and, even if it was not, law enforcement exceeded the scope of its private search. Further, while the R&R did not reach the issue of whether NCMEC was a state actor, it should be found to be a state actor that exceeded the scope of any private search. Moreover, Mr. Williamson has met the threshold for a *Franks* hearing and under a new review of the warrants that includes omitted material and omits misrepresentations, probable cause would be lacking. Finally, the good-faith exception does not apply here.

### A. The Magistrate Judge erred because Yahoo is a state actor and the Government failed to meet its burden to establish the scope of a private search.

The R&R incorrectly determined that Yahoo was not a state actor. It also erred by not reaching the question of whether NCMEC is a state actor because it determined Yahoo was not and that law enforcement did not exceed the scope of Yahoo's private search. However, the actions taken of both Yahoo and NCMEC

---

[1] The Government did not challenge standing and no affirmative testimony was provided that the e-mail account belonged to Mr. Williamson.

were taken as state actors and therefore their actions constituted an illegal search under the Fourth Amendment.

The Fourth Amendment only curtails governmental action, and thus, "[a] search by a private person does not implicate the Fourth Amendment unless he acts as an instrument or agent of the government." *United States v. Steiger*, 318 F.3d 1039, 1045 (11th Cir. 2003). To determine whether a private person was acting as the government's agent, district courts "look to two critical factors: (1) whether the government knew of and acquiesced in the intrusive conduct, and (2) whether the private actor's purpose was to assist law enforcement efforts rather than to further his own ends." *United States v. Allen*, 854 Fed. Appx. 329, 333 (11th Cir. 2021). Beyond those somewhat ambiguous standards, neither the Eleventh Circuit nor the Supreme Court has provided much guidance applicable to the instant case.[2]

Here, for the reasons set forth below, both Yahoo and NCMEC were state actors for Fourth Amendment purposes.

_____

[2] Other circuits apply different standards to determine whether a party is acting on behalf of the Government. For instance, the Sixth Circuit has held that "Private action might still be attributed to the government if 'a sufficiently close nexus' exists between a private party and government actors." *United States v. Miller*, 982 F.3d 412, 425 (6th Cir. 2020) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)), and that "Private action might still be attributed to the government if 'a sufficiently close nexus' exists between a private party and government actors." *United States v. Miller*, 982 F.3d 412, 425 (6th Cir. 2020) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)); *United States v. Soward*, CR 20-03-DLB-CJS, 2021 WL 3027024, at *5 (E.D. Ky. Apr. 26, 2021), *report and recommendation adopted*, CR 20-3-DLB-CJS, 2021 WL 2383007 (E.D. Ky. June 10, 2021).

## 1.    Yahoo is a state actor for Fourth Amendment purposes.

In searching the "vladlover" e-mail account at issue in this case, Yahoo acted as a state actor and therefore its warrantless search was illegal.

### a.    The Government knows of Yahoo's reporting activities and federal law designs its statutory scheme around such activities.

Yahoo receives special protections for its actions, and penalties for failing to act, with respect to child pornography.  Yahoo is obligated by federal law to report child pornography to NCMEC.  Ex. A 92: 6-11; Ex. A 98: 23-25.  If Yahoo does not report child pornography to NCMEC, it is subject to a criminal fine.  Ex. A 99: 1-5.  18 U.S.C.  2258A(a)(1), (e).  Moreover, unlike a normal citizen, Yahoo is granted special immunity to possess child pornography under federal law.  Ex. A 100: 15-18; 18 U.S.C.  2258B(a).   When Yahoo makes a report of child sexual exploitation to NCMEC, Yahoo must treat the confirmation as a request to preserve evidence for 90 days as if issued by the federal government itself.  Ex. A 42: 21-25; 18 U.S.C. § 2258A(h)(1).

Yahoo does not limit its activities to merely making a report to NCMEC.  It continues to actively investigate allegations of child pornography and provide further information to NCMEC.  Yahoo will actively seek to identify the specific individuals who have allegedly committed such acts.  Ex. A 98:5-9.  Yahoo is not obligated by law to perform such investigations.  *Id*. at 98:10-12.

The Government is well aware of Yahoo's activities. Indeed, the entire statutory scheme devised by Congress relies on ISP's like Yahoo in order to combat child pornography. *See* Legislative History of PROTECT Act of 2008, 154 Cong. Rec. H10241-02, 154 Cong. Rec. H10241-02, H10250, 2008 WL 4373171 ("Internet companies will need to do their part too. When we begin to hold Web sites accountable for the images that they host, we've taken the first step towards supporting parents in their efforts to protect children. Our combined efforts will help make the Internet a safer place."). In 2019, Yahoo reported 5,359 accounts to NCMEC for possible child pornography allegations. Ex. A 97: 15-20; Defense Ex. G. In 2021, Yahoo reported 5,498 accounts to NCMEC for possible child pornography allegations. Ex. A 97: 21-25. That averages to nearly fifteen CyberTipline Reports from Yahoo alone each and every day of the year.

By way of analogy, one can imagine a national company's employees going around peeking into its customers' windows and reporting to law enforcement anything it believed to be illegal, and doing this more than a dozen times a day, every day, resulting in many thousands of such reports each year. After thousands of such reports, a rational person would be hard-pressed to claim that law enforcement has no knowledge of the company's conduct just because it doesn't know about one specific instance in advance.

That is why this case is similar to *United States v. Burgos Montes*, No. Crim. 06-009 JAG, 2011 WL 1743420, at *1 (D.P.R. May 2, 2011), *aff'd*, 786 F.3d 92 (1st Cir. 2015), cited in Defendant's Supplemental Brief on the Motion to Suppress. Doc. 64. There, as detailed in the Supplemental Brief, the DEA knew and encouraged an informant to live in a suspect's home. The DEA asked her not to obtain physical evidence, but the informant did so anyway, and the DEA logged it as evidence.

In opposing a motion to suppress, the Government argued that law enforcement "did not know of, instigate, direct, nor participate in any of the disputed searches." Nevertheless, the Court found that the DEA knew the informant would have "constant and ample opportunity to obtain physical evidence." *Id*. at *11.

Like the informant in that case, ISP's like Yahoo routinely and systematically go into people's digital homes and automatically hand the contents over to law enforcement. They have "constant and ample opportunity to obtain physical evidence," and the government knows that they are doing exactly that. 2011 WL 1743420, at *11. Just because the government did not ask them to in each specific instance (and instead has passed federal legislation encouraging it through immunity and fines) does not somehow lessen the Constitutional violation, but rather systemizes it.

As the R&R also held, the cases that have found ISPs like Yahoo are not state actors in similar circumstances have focused on the fact that the federal statutory scheme does not compel the ISP to proactively search for child pornography. *See e.g. United States v. DiTomasso*, 81 F. Supp. 3d 304 (S.D.N.Y. 2015). But while a compulsion to act is sufficient to be found a state actor, it is not necessary. Where a person volunteers to undertake a police function on behalf of law enforcement, and law enforcement has knowledge of such action, that person is a state actor. For instance, in *United States v. Henry*, 447 U.S. 264 (1980), a confidential informant, Nichols, in custody with several federal prisoners (including the defendant Henry) was told by law enforcement to "be alert to any statements made by the federal prisoners, but not to initiate any conversation with or question Henry regarding the bank robbery," for which Henry had been indicted. *Id*. at 266. The Supreme Court found that Nichols was an agent of the Government for Sixth Amendment purposes and the statements made by Henry to Nichols should have been excluded at trial, despite Nichols having been informed not to extract such statements. *Id*. at 274-75.

Like the informants in *Burgos Montes* and *Henry*, the Government is well aware that Yahoo has "ample opportunity" and "access" to scan its customers emails for the purpose of reporting them to law enforcement, and in fact does so every day. *Burgos Montes*, 2011 WL 1743420, at *11; *Henry*, 447 U.S. at 270. Not

only does Yahoo volunteer to act to assist law enforcement (which is well aware of Yahoo's actions), but the entire federal enforcement scheme relies on such action, effectively deputizing ISPs like Yahoo to enforce child pornography laws.

While the R&R found that the Government did not instigate or cooperate with Yahoo's activities in this specific search, that ignores the reality that the Government has encouraged such searches through the granting of immunity and the imposition of fines for failures to report. It also ignores that the Government knows full well that this activity is happening to every Yahoo user and has such knowledge in advance of the search. Thus, the Government "knew of and acquiesced in the intrusive conduct," undertaken by Yahoo.

Further, the R&R states held that "there is no evidence that the government instigated or cooperated with Yahoo's review" of Mr. Williason's email. Doc. 114, p. 32. While that is correct with respect to *this particular case*, it ignores the reality that the Government knows of and acquiesces to that conduct in *every single* instance.

In reaching its conclusion, the R&R ignored the special immunity that companies like Yahoo are given to possess and maintain child pornography. Under 18 U.S.C. § 2258B, that is a special right reserved only for an internet service provider or a "domain name registrar,"; it is not given to individuals. There

appears to be no other similar statute where a company is given blanket immunity for handling material the mere possession of which is a federal crime.

The R&R entirely ignores the significance of such immunity.  But that immunity effectively deputizes ISPs like Yahoo into becoming federal agents. Indeed, the entire federal enforcement scheme relies on ISPs like Yahoo to function, as discussed above.  Yahoo alone submits thousands of NCMEC tips every year.

For these reasons, the R&R should overruled and Yahoo should be determined to be a state actor.

**b.    The purpose of Yahoo's activities was to assist law enforcement.**

The R&R also incorrectly determined that Yahoo's motivation was solely self-interest instead of assisting law enforcement.

Yahoo is a private corporation that exists solely to make money. Ex. A 93:17-19.  However, there was no testimony that Yahoo has ever calculated how much money it would lose if it did not search for and eliminate child pornography. Instead, Yahoo makes no money from reviewing its platform for child pornography, Ex. A 93:3-7, and instead spends significant amounts to perform the searches it does.  *Id.*:8-16.  Thus, there was no evidence presented to support Yahoo's declaration that it has "a strong business interest in enforcing [its] terms of service and ensuring that [its] products are free of illegal content, especially

[child sexual abuse material."  Gov. Ex. 3.  Without such a business interest, the only basis is to comply with federal laws and to assist law enforcement.  As Yahoo testified, it continues to investigate customers after it has reported to NCMEC and after it has disabled the customer's account.  This has no business purpose and only serves to assist law enforcement.  The R&R does not address the lack of evidence supporting Yahoo's position that it acted out of an interest in safeguarding its reputation.

Thus, because the Government knows of and acquiesces to Yahoo's activities (indeed, the federal system of enforcement of child pornography laws depends on it), and because Yahoo acted with the intent to assist law enforcement. Yahoo is a state actor and its review of the images here was a warrantless search, the results of which must be suppressed.

For these reasons, Yahoo's conduct was that of a state actor and therefore its warrantless search of the email account at issue was an illegal search under the Fourth Amendment.  The R&R should be overruled.

### c.    The Government did not establish the scope of Yahoo's private search.

The R&R next determined that it need not reach the issue of whether NCMEC is a state actor because it found neither NCMEC or Detective Keller exceed the scope of Yahoo's private search.  As discussed below, even if Yahoo

were a private actor, the Government did not meet its burden of establishing the scope of that search.

The R&R found that "as a matter of policy" Yahoo's agents "reviews and manually selects each of the images to be uploaded with the report and then specifically attests that he or she has inspected those photographs by checking a box affirming the same." Doc. 114 at 35. However, even if that is Yahoo's "policy," there is no evidence that the policy was followed here.

No one from Yahoo who viewed the images testified at the evidentiary hearing in this matter. Indeed, the Yahoo representative, Ashley Guizzotti, initially testified that former Yahoo employee Jessica Hines personally reviewed the images at issue, before she admitted that she did not know whether an employee of Yahoo actually even viewed the images at issue in this case at all. Ex. A 102:8-10.

When Ms. Hines later testified, she initially claimed she reviewed the images – despite admitting to having no personal recollection of reviewing the images or making the CyberTipline Report. Ex. A 139:12-19. Indeed, when confronted with the Tracker spreadsheet, Def. Ex. I, Ms. Hines admitted that she, in fact, was not the person who reviewed the images. Instead, she believed it was another Yahoo employee, Chris Wayne. Ex. A 144-45:23-25, 1. Chris Wayne did not testify.

While Yahoo claims to have policies requiring a human review of images reported to the CyberTipline, Ex. A 78:5-10, there was no testimony that any such policies were followed here. Indeed, the Yahoo representative testified she had no knowledge whether all Yahoo's policies were actually followed. Ex. A 101:10-13. No such written policies were even entered into evidence. Further, while there was testimony that images must be viewed before submitting them to the CyberTipline, there was no evidence from any person with actual knowledge that that actually happened here.

By failing to enter Yahoo's policies into evidence, failing to establish that Yahoo's internal policies were actually followed here, and by failing to offer any witnesses with any personal knowledge about what happened in this specific instance, the Government failed to meet its burden to establish the scope of a private search. Instead, the R&R found that testimony about the mere *existence* of a policy, without that precise written policy being put into evidence, without evidence that the policy was followed, and without the testimony of someone with personal knowledge regarding how that policy was enacted in this specific instance, was sufficient to establish the scope of a private search.

That finding lowers the bar for law enforcement to comply with the Fourth Amendment to a dangerous degree. It is always the Government's burden to establish the scope of a warrantless search. *United States v. Johnson*, 2:12-CR-92-

FTM-29DNF, 2013 WL 3992254, at *7 (M.D. Fla. Aug. 2, 2013), *aff'd on other grounds sub nom. United States v. Sparks*, 806 F.3d 1323 (11th Cir. 2015) ("As with all factual matters involving a warrantless search, the government bears the burden of proof by a preponderance of the evidence as to both the scope of the subsequent searches by law enforcement."). But imagine a scenario where a police officer with no personal knowledge about a specific warrantless search testified simply that their police department has a policy to not conduct illegal searches. Then imagine that the alleged written policy is never tendered into evidence, on cross-examination that officer admits that they have no idea whether the policy was actually followed, that they were wrong about who even conducted that search, and that no one who conducted the search testifies about what occurred during the search. It is impossible to imagine that the Government will have met its burden with such a poor showing, but that is exactly what the R&R held here.[3] Thus, this Court should decline to adopt the R&R.

---

[3] For instance, with respect to inventory searches of vehicles, which often involve police department policies, it is not enough for the Government to establish merely that a policy exists. It must also establish that "the officers followed departmental policy in conducting the search." *United States v. Burd*, 546 Fed. Appx. 924, 925 (11th Cir. 2013). Yahoo's testimony did not establish that its policies were actually followed here, and in fact, it testified Yahoo lacked knowledge on whether its policies were followed.

**B.** **NCMEC was also a state actor for Fourth Amendment purposes.**

The R&R failed to reach the issue of whether NCMEC is a state actor because it found that neither NCMEC nor Detective Keller exceeded the scope of the private search. As discussed above, Yahoo was a state actor and the Government did not meet its burden to establish the scope of a private search. Therefore the question of whether NCMEC is a state actor remains significant.

NCMEC may not be an official government agency, but it operates and is funded like one. NCMEC, and NCMEC alone, is required under federal law to operate the CyberTipline. Ex. A 40: 3-9; 42:7-10; 18 U.S.C. § 2258A. There is no other private entity that fills the same role with respect to reporting of child pornography. *Id*. at 40:10-12.

NCMEC is statutorily obligated to forward every report of such exploitation to federal law enforcement agencies, and also make its reports available to state and local law enforcement. Ex. A 42:11-14; 18 U.S.C. § 2258A(c). It is also required by federal law to operate the national clearinghouse for information about missing and exploited children, and to assist federal law enforcement recover missing and exploited children. Ex. A 40:20-24; 34 U.S.C. § 11293(b).

NCMEC is required by law to provide forensic technical assistance to law enforcement to help identity victims of child exploitation. Ex. A 41:3-8; 34 U.S.C.

§ 11293(b)(1)(H).  It is also statutorily-obligated to track and identify patterns of attempted child abductions for law enforcement purposes.  Ex. A 41:9-13.

NCMEC is legally mandated to provide training to law enforcement agencies in identifying and locating non-compliant sex offenders.  *Id*. at 41:14-17; 34 U.S.C. § 11293(b)(1)(I).  NCMEC can also call upon other federal agencies for assistance.  *Id*. at 42:1-3; 18 U.S.C. § 3056(f).  As NCMEC testified, the purpose of these activities is to assist and support law enforcement.  *Id*. at 41:21-25.

Unlike private citizens, NCMEC (like Yahoo) is authorized by federal law to receive and possess child pornography, where as an average citizen has no such rights.  Ex. A 43: 4-11; 18 U.S.C. § 2258A(a), (b)(4); 18 U.S.C. § 2252A(a)(2). Moreover, the federal government provides approximately $42 million of NCMEC's $62 million budget.  Defense Ex. F, p 4; Ex. A 43-44: 25-11.

These facts are precisely what the Tenth Circuit Court of Appeals relied on in holding that NCMEC is a state actor in *United States v. Ackerman*, 831 F.3d 1292, 1296-1300 (10th Cir. 2016) (Gorsuch, J.).  Here, as in *Ackerman*, "in the face of so much law and evidence suggesting NCMEC qualifies as a governmental entity, the government offers almost no reply."  *Id*. at 1298.  The NCMEC witness's testimony that NCMEC is not "controlled by the federal government in any way" rings hollow in the light of so many federal statutory mandates controlling NCMEC's mission and conduct.  Ex. A 37:4-5.

The Government has previously cited *United States v. Coyne*, 387 F. Supp. 3d 387 (D. Vt. 2018), for the proposition that NCMEC "was not a governmental entity for Fourth Amendment purposes." Doc. 105 at 11. That citation is misleading. While *Coyne* did find NCMEC was not a governmental "entity," it found that NCMEC acted as an "agent" of the government "in the manner of a police agency," and therefore "its review of electronic communications is subject to the same Fourth Amendment requirements that apply to its partners in law enforcement." 387 F. Supp. 3d at 399-400.

As the Court held in *Ackerman*, NCMEC is a governmental entity for Fourth Amendment purposes.[4] Therefore, its search here, and the review of the images from Yahoo, constitute an improper warrantless search, the results of which must be suppressed.

---

[4] The Government has cited *United States v. Coyne*, 387 F. Supp. 3d 387 (D. Vt. 2018) for the proposition that NCMEC "was not a governmental entity for Fourth Amendment purposes." Doc. 105 at 11. That citation is misleading.

While *Coyne* did find NCMEC was not a governmental "entity," it found that NCMEC acted as an "agent" of the government "in the manner of a police agency," and therefore "its review of electronic communications is subject to the same Fourth Amendment requirements that apply to its partners in law enforcement." 387 F. Supp. 3d at 399-400.

**C.     Detective Keller exceeded the scope of the private search.**

The Government may replicate a private search, "as long as government officials constrain their search to the parameters of the search conducted by the private individual." *United States v. Harling*, 705 Fed. Appx. 911, 916 (11th Cir. 2017) (citing *United States v. Young*, 350 F.3d 1302, 1306–07 (11th Cir. 2003); *see also Jacobsen*, 466 U.S. at 115; *Walter v. United States,* 447 U.S. 649, (1980). Thus, a private search that is broader than the scope of the previously occurring private search violates the Fourth Amendment. *Id.*

To the extent a law enforcement officer views allegedly illegal images that were not reviewed by a private citizen, the viewing exceeds the scope of the private search. *Johnson*, 2013 WL 3992254, at *7. As discussed above, there is insufficient evidence to establish the scope of Yahoo's search and therefore the Government has failed to meet its burden with respect to Yahoo's alleged private search.

Likewise, there was no reliable testimony that NCMEC actually viewed the images here. NCMEC originally claimed it did not view the images, only to change that position later. NCMEC does not know who allegedly viewed the images, or when they were allegedly viewed. Ex. A 59:16-24, p. 60:1-6. NCMEC is unable to verify, and performs no investigation into, whether an ISP reporting

through the CyberTipline has actually viewed an image that it reports as child pornography. *Id*. at 53:11-16, 19-20.

NCMEC did not know whether the "hash matches" corresponding to six of the images in the CyberTipline Report had been previously categorized by NCMEC. Ex. A 56:2-6. This is significant because, if they had been previously categorized, they would not have been viewed again by NCMEC. Ex. A 47: 16-19. Thus, as with Yahoo, there was no evidence of what *actually* occurred with respect to this case from anyone with any knowledge of those facts.

Moreover, Detective Keller testified that, at the time he received the CyberTipline Report, it was his policy to review every image submitted as part of such a report, regardless of whether those images had previously been viewed by a private party. Ex. A 191:10-13. He did no investigation to determine what images had been viewed. Detective Keller never communicated with anyone at Yahoo who allegedly reviewed the images, nor did he ever communicate with anyone at NCMEC. *Id*. at 191:5-9, 190:21-23. Detective Keller does not know who viewed the images or when they were allegedly viewed. *Id*. at 191:2-4.

In sum, there was no testimony that Yahoo actually viewed the images in this case, no witnesses with any personal knowledge about what occurred at Yahoo, no documentation reflecting Yahoo's policies and no testimony that Yahoo's policies were followed here. And Detective Keller testified that it was his

policy that he would have viewed the images regardless of what Yahoo or NCMEC did.

This case is similar to *United States v. Wilson*, 13 F.4th 961, 971 (9th Cir. 2021), where the Ninth Circuit held that the "government's actions here exceed the limits of the private search exception as delineated in *Walter* and *Jacobsen* and their progeny." There, the Ninth Circuit reversed the district court's denial of a motion to suppress. Google reported alleged child pornography in a CyberTipline Report to NCMEC, which passed them on to law enforcement. Like Detective Keller here, that law enforcement officer policy at the time "called for inspecting the images without a warrant whether or not a Google employee had reviewed them." *Id*. At 965.

In *Wilson*, Google set forth in a declaration that it did not view the images prior to submitting them to NCMEC. *Id*. At 965. Here, for the reasons discussed above, the Government presented no evidence that Yahoo or NCMEC actually viewed the images prior to Detective Keller viewing them. This creates the same scenario as *Wilson* where the Court found that the "government has not met its burden" to prove that law enforcement warrantless search of the images was constitutionally valid. *Id*. at 971.

Further, in *Jacobsen*, the Supreme Court has, at minimum, heavily implied that the knowledge of law enforcement regarding the scope of a private search is

relevant to a determination of whether a Fourth Amendment violation has occurred.  There, the majority agreed with a portion of Justice White's concurrence that a case in which "the police simply learn from a private party that a container contains contraband, seize it from its owner, and conduct a warrantless search . . . would be unconstitutional."  *Jacobsen*, 466 U.S. at 120 n.17.  Thus, the Supreme Court has held that if a party merely tells law enforcement that a container contains contraband, that would be insufficient to conduct a warrantless search. Therefore, the knowledge of law enforcement regarding what actually transpired during a private search is required for a search to be constitutionally valid.

Here, as discussed above, Detective Keller had no knowledge regarding what actually happened during the alleged private search, including who conducted it or when.  Indeed, Yahoo and NCMEC do not even know.  And Detective Keller testified that it would not have mattered to him anyway as he would have viewed the images regardless of what was done.  Therefore, under *Jacobsen*, Detective Keller's lack of knowledge regarding the scope of a private search renders his warrantless search constitutionally invalid.

Further, the R&R's finding that Detective Keller "uncovered no new, critical information from the photographs," is incorrect.  Doc. 114, p. 35.  As in *Wilson*, by viewing the images at issue here, Detective Keller's warrantless search "substantively expanded the information available to law enforcement far

beyond" what was contained in the NCMEC report. *Wilson*, 13 F.4th at 973. While the NCMEC report contains only labels, such as "CP (Unconfirmed)" or "Child Clothed," in his warrant applications Detective Keller described the contents of the images, including sexual positions and alleged approximations of the ages of participants. Neither Yahoo nor NCMEC had made any such determination before Detective Keller. By viewing the images, Detective Keller "learned exactly what the image showed, and learned that at least one of the images was child pornography. *Id*. "Only by viewing the images did the government confirm, and convey to the fact finder . . . that they depicted child pornography under the applicable federal standard." *Id*. In a child pornography case, it is hard to imagine a more critical finding by law enforcement that it believes the images at issue are child pornography.

For these reasons, the R&R has reached an incorrect conclusion and this Court should decline to adopt it.

**D.  Mr. Williamson has met the threshold for a *Franks* hearing and, under a new review of the warrants, probable cause is lacking.**

While affidavits supporting search warrants are presumed valid, *Franks v. Delaware*, 438 U.S. 154 (1978), criminal defendants have a right to challenge the veracity of that affidavit. *See United States v. Schwinn*, 376 Fed. Appx. 974, 978 (11th Cir. 2010).

Under *Franks*, if a defendant "makes a threshold showing that the affiant deliberately or recklessly made a false statement," then he is entitled to a *Franks* hearing.[5] "[W]hen the facts omitted from the affidavit are clearly critical to a finding of probable cause the fact of recklessness may be inferred from proof of the omission itself." *Madiwale v. Savaiko*, 117 F.3d 1321, 1327 (11th Cir. 1997).

**1. Detective Keller made reckless omission and misrepresentations in the warrant application and thus the threshold test for Franks is met.**

If a "defendant makes a threshold showing that the affiant deliberately or recklessly made a false statement, then the defendant is entitled to a *Franks* hearing." *United States v. Schulz*, 486 Fed. Appx. 838, 841 (11th Cir. 2012). *Franks* also applies "when the 'misinformation' involves omissions from the affidavit "'made intentionally or with a reckless disregard for the accuracy of the affidavit.'" *Madiwale v. Savaaiko,* 117 F.3d 1321, 1326-27 (11th Cir.1997) (quoting *United States v. Martin,* 615 F.2d 318, 329 (5th Cir.1980)). "The distinction among such categories as 'negligence,' 'reckless or callous indifference,' and 'intentional' conduct can be elusive." *United States v. Rauda-Constantino*, 1:18-CR-00203-AT-JSA, 2019 WL 7838968, at *10 (N.D. Ga. Aug. 6, 2019), *report and recommendation adopted,* CV118CR0203AT13, 2020 WL 469675 (N.D. Ga. Jan. 28,

---

[5] As the Court noted at the evidentiary hearing in this matter, it was the Court's prerogative to have a hearing both as to the *Franks* threshold question and the ultimate question simultaneously. Ex. A 148:20-25.

2020).  "Reckless" conduct is "a gross deviation from what a reasonable person would do."  *Black's Law Dictionary* 1298–99 (8th ed. 2004).

Here, Detective Keller made reckless omissions and also misrepresentations in the warrant application to search Mr. Williamson's residence.  With respect to three of the seven images, Detective Keller stated that "NCMEC had categorized this image previously as Child Pornography." Def. Ex. B.  This is a false statement – it both affirmatively misrepresents that NCMEC categorized the images as child pornography (which is not true), and omits that NCMEC categorized the images as "CP (Unconfirmed)," which means the age could not be determined.

As Detective Keller testified, the fact of whether an image depicts a person whose age cannot be determined is "material" to include in a warrant application. Ex. A 179: 18-24.  Further, Detective Keller testified that images that are "age difficult" do not support a finding of probable cause.  Ex. A 183: 15-18.  At least he is correct on that point.

Yet Detective Keller had no knowledge of the meaning of "CP (Unconfirmed)," as NCMEC uses that term, before misrepresenting it to say that NCMEC affirmatively found those three images to be child pornography when it did not.  Despite working on sex crimes since 2019, being a member of the Internet Crimes Against Children ("ICAC") Task Force, and attending a 40-hour course on sex crimes investigations, Def. Ex. B, Detective Keller had no idea that "CP

(Unconfirmed)" means "age difficult." He was unaware of that definition until attending the evidentiary hearing in this very case. Ex. A 171: 5-11. Thus, Detective Keller admitted that his statements in the warrant application that NCMEC had previously determined several images to be child pornography were false. Ex. A 180-81: 20-10. That false statement applies to the three images titled "image.4-1.gif", "image.125-1.jpg," and "image.97-1.jpg" Ex. A 181: 10-12: 13-18, 19-24.

In addition to the misrepresentations and omissions about three of the images, Detective Keller also omitted from the warrant applications that there was no information whether the Yahoo account was logged-in or logged-out at the time that "image.1-1.jpg" was allegedly sent on September 8, 2020. Def. Ex. B. If the Yahoo account was not logged in on September 8, 2020, then it would call the probable cause into question regarding the sending of the allegedly pornographic image on that date.

At the time of the warrant application for Mr. Williamson's residence, Detective Keller had already submitted a search warrant to Yahoo that included a list of log-in dates for the "vladlover" account. Def. Ex. D. That list showed daily logins on the preceding days of August 31, September 1, September 2, September 3, and September 4, 2020. Ex. A 127: 15-23; Defense Ex. D; Ex. A 185: 21-24.

The R&R credits Detective Kellers "training and experience" that users "can stay logged into [their] accounts for a significant period of time." Doc. 114, p. 40. But he admitted he had no such training. Ex. A 187:4-8 (discussing training on other topics and stating that training "has no bearing on the logging in or logging out."). No one from Yahoo has ever told him how long an account is logged in for before it logs out. *Id*. at 187:9-13. He also admitted he has never received any training about that topic. *Id*. at 187:14-17.

Yahoo has no method to track whether an account was logged in manually or automatically. Ex. A 128:7-12. The Yahoo witness testified that Yahoo does not know whether the account at issue was logged in or logged out at the time of the alleged transmission. Ex. A 89:4-6. Detective Keller did no investigation regarding how or when Yahoo logs out accounts. Ex. A 187:18-20.

The warrant applications here do not provide any information regarding when the account may have been logged out. Ex. A 189: 9-11. Thus, based on the testimony of the Yahoo witness here, it is entirely possible the account was logged out on September 8, 2022, at the time "image.1-1" was allegedly sent from that account.

The failure to know important, objective facts, and instead including in the warrant application material information that is incorrect and omitting crucial information, was reckless. Whether an image is child pornography and whether

an account was actually logged in when messages were allegedly transmitted were "clearly critical" to a finding of probable cause and thus recklessness can be inferred. *Madiwale*, 117 F.3d at 1327. Thus, the threshold for a *Franks* hearing has been met.

The R&R credits the Yahoo representative's testimony that Yahoo users can remain logged into Yahoo for "a couple weeks." Doc. 114, p. 40. However, the Yahoo representative later testified on cross-examination that she did not know that's what actually occurred here and she did not know when the account was logged out. Ex. A, 128:13-16.

The R&R's determination that Mr. Williamson has not met the preliminary threshold for a Franks hearing should not be adopted by the district court.

## 2. Under a new evaluation of probable cause, the warrants here fail.

Because the threshold for *Franks* has been met, the Court may reevaluate the probable cause supporting the warrants at issue. Here, based on the misrepresentations and omissions in the warrant, the warrants lack probable cause.

"[I]f that threshold showing of deliberate or reckless falsity is then proved by a preponderance of the evidence, the defendant is entitled to a new evaluation of probable cause with the affidavit stripped of the false statements." If the falsity of the statement stems from an omission, then inclusion of the omitted material is

used to re-evaluate probable cause. *United States v. Murray*, 625 Fed. Appx. 955, 957 (11th Cir. 2015).

Here, if the warrant application for Mr. Williamson's residence was rewritten to address both the omissions and misrepresentations, it would lack probable cause. With respect to the categorization of the images, six of the seven images at issue were "age difficult" and thus lacked probable cause. With respect to images "image.120-1.jpg", "image.5-1.jpg", and "image.118.jpg," Detective Keller admitted those images did not support a finding of probable cause. With respect to images "image.4-1.gif", "image.125-1.jpg," and "image.97-1.jpg," because Detective Keller misrepresented that NCMEC determined these images were child pornography and Ex. A 101:10-13 that they were "age difficult," the judge who signed the warrant did not know that those images had, in fact, *not* been categorized by NCMEC as child pornography. Nor did that judge know that NCMEC had in fact categorized those images as "age difficult," which Detective Keller omitted. Those "age difficult" images would not give rise to probable cause.

The signing judge did not review the images at issue in this case herself. Had she known that six of the seven images had been deemed by NCMEC and Detective Keller to be ***not*** child pornography, she could have found that probable cause did not exist, at minimum, as to those six images. With respect to the single remaining image, "image.1-1," had the judge who signed the warrant known that

there was no evidence that the "vladlover" account was logged in at the time that image was allegedly sent from that account, she could have found there was insufficient probable cause that the images were sent from that account.

Thus, under *Franks*, the warrant lacks probable cause and the results of the search must be suppressed.

**E.     The Exclusionary Rule applies here and the "Good-Faith" exception does not.**

For the reasons discussed above, Yahoo, NCMEC and Detective Keller violated the Fourth Amendment in their warrantless search of the email address at issue.  The evidence from those searches should be suppressed.

The exclusionary rule applies "when it serves to deter otherwise unlawful conduct and the benefit of the deterrence outweighs the cost."  *United States v. Franklin*, 721 F. Supp. 2d 1229, 1242 (M.D. Fla. 2010), *aff'd*, 694 F.3d 1 (11th Cir. 2012).   In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court created the "good faith" exception, holding that courts should generally find evidence inadmissible if police officers were not acting in reasonable reliance on a search warrant ultimately found to be unsupported by probable cause.  Four situations will negate the existence of good faith, but only one applies here: good faith will not be found where "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known

was false except for his reckless disregard of the truth." *United States v. Martin*, 297 F.3d 1308, 1313 (11th Cir. 2002).

As established above, the warrant contained recklessly false statements and omissions that misled the judge who signed the warrant. Here, there is ample improper conduct that a ruling excluding the evidence obtained in the search of the residence and from Yahoo would serve to deter. Detective Keller apparently had no idea that, as a law enforcement officer, he needed a warrant to view the images here. As he testified, it was his policy that he would have viewed the images regardless of whether Yahoo or NCMEC conducted a private search because he viewed them in every instance. Indeed, he only learned a few months before the evidentiary hearing in this matter that he should not do so, and it took intervention from the State Attorney's Office.

A law enforcement officer tasked with investigating crimes should know the bounds of his powers under the Constitution. And one whose job is to investigate child pornography, nearly all of which is in electronic form, should know how the Fourth Amendment applies to searching such electronic images. The failure to have such knowledge is not an act of "good faith," it is indifference to the law. An officer sticking his head in the sand about the laws he operates under when submitting a warrant application is not the type of reasonable reliance on the law on which the good-faith exception applies.

Ignorance of the law is no excuse for criminal defendants; there is no reason why that rule should not apply to law enforcement as well. *See Gilker v. Baker*, 576 F.2d 245, 247 (9th Cir. 1978) (reversing dismissal of civil rights claim and holding that, while "law enforcement officials perform functions indispensable to the preservation of public safety and [] they must not be left defenseless, it does not follow that an unreasonable ignorance of the law or an entirely subjective "good faith" belief is always a defense in section 1983 damage actions."). To hold otherwise would only serve to encourage ignorance of the law, or even feigned ignorance of the law, by law enforcement officers. This is especially true here because this case involves not merely a technical violation of the law, such as the failure to serve a copy of the warrant before a search commences under Federal Rule of Criminal Procedure 41. *See e.g. United States v. Williamson*, 439 F.3d 1125, 1134 (9th Cir. 2006). Rather, this issue goes to fundamental rights of privacy and the government's ability to invade those rights without respect to Constitutional boundaries. Mr. Williamson has been unfairly prejudiced by that invasaion.

This argument applies to both the warrant as to Mr. Williamson's residence and the warrant to Yahoo. The probable cause set forth in both warrants suffer from the same taint arising from the warrantless search by state actors, or by Detective Keller's exceeding the scope of the private search, as set forth above.

The Court should exclude the evidence seized pursuant to the warrants here as deterrence to other law enforcement agencies that continue to ignore the bounds of the Constitution.

F.     **Items to be suppressed**

Attached hereto as **Exhibit B** is an inventory of all items seized during the January 27, 2021 search of Mr. Williamson's residence.  This list, including the contents of all electronic devices seized during the search, constitutes the items to be suppressed as a result of that illegal search.

With respect to the warrant to Yahoo, all items received from Yahoo are due to be suppressed.  This includes, without limitation, the emails and images connected to the "vladlover" account, subscriber details, the login page, and any other information received from Yahoo pursuant to the search warrant.  However, because the information received pursuant to this warrant contains contraband, undersigned counsel does not have in his possession all of the information received from Yahoo and therefore cannot fully list every single item law enforcement has received pursuant to that warrant.

## CONCLUSION

As detailed above and in the briefing related to the Motion to Suppress, Docs. 44, 64, 106, Defendant respectfully requests that the contraband found in the vehicle be suppressed, and that the Court grant such further relief as the Court deems necessary and proper.

Dated:  February 24, 2023      Respectfully Submitted,

**Kynes, Markman & Felman, P.A.**
P.O. Box 3396
Tampa, Florida 33601-3396
Phone:  (813) 229-1118
Fax:  (813) 221-6750

/s/ Gus M. Centrone
_____
**GUS M. CENTRONE, ESQ.**
Florida Bar No. 30151
e-mail: gcentrone@kmf-law.com
Attorney for Gregory Williamson

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 24, 2023, a true and correct copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

/s/ Gus M. Centrone
_____
Attorney