# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

UNITED STATES OF AMERICA,

    v.                                           CASE NO. 8:21-cr-355-WFJ-CPT

GREGORY ALLEN WILLIAMSON,

    Defendant.

_____/

## DEFENDANT'S SUPPLEMENTAL BRIEF ON SECOND MOTION TO SUPPRESS REGARDING SEVERABILITY

Defendant Gregory Allen Williamson, pursuant to the Court's order, Doc. 166, hereby submits this Supplemental Brief on the Second Motion to Suppress Regarding Severability. For the reasons explained in that Motion and below, the warrant should be deemed invalid and the entire results suppressed, or, in the alternative, only a small portion of the warrant should be deemed valid and the remainder of the results suppressed.

## FACTUAL BACKGROUND

1. Mr. Williamson was arrested on or about January 27, 2021. He was indicted on November 3, 2021, for alleged violations of 18 U.S.C. § 2422(b), 18 U.S.C. § 2252(a), 18 U.S.C. § 2252(a)(2), and 18 U.S.C. § 2252(a)(4)(B). Doc. 1.

2. This case arises from a report from Oath Holdings d/b/a Yahoo ("Yahoo") to the National Center for Missing and Exploited Children ("NCMEC") through its CyberTipline reporting system.

3. The CyberTipline report identifies seven images and provides the date they were uploaded through a Yahoo e-mail account titled *vladlover50@yahoo.com*, and the internet protocol ("IP") address from which they were uploaded.

4. On or about December 10, 2020, Detective James Keller with the North Port Police Department, who is also a member of the Internet Crimes Against Children Task Force, submitted a warrant application to Yahoo for information related to the *vladlover50@yahoo.com* email address.

5. The warrant required Yahoo to turn over the following data:[1]

- Account Information - User name, primary email address, secondary email addresses, connected applications and sites, and account activity from creation to 11/24/20, including account sign in locations, browser information, platform information, and internet protocol (IP) addresses;

- Evidence or user attribution – accounts, e-mail accounts, passwords, PIN codes, account names, user names, screen names, remote data storage accounts, credit card number or other payment methods, contact lists, calendar entries, text messages, voice mail messages, pictures, videos, telephone numbers, mobile devices, physical addresses, historical GPS locations, two-step verification information, or any other data that may demonstrate attribution to a particular user or users or the account(s);

- Calendar - All calendars, including shared calendars and the identities of those with whom they are shared, from creation to l 1/24/20, calendar entries, notes; alerts, invites, and invitees;

---

[1] A copy of that warrant application and the signed warrant has been filed as Doc. 134-1.

- Contacts - All contacts stored by Yahoo! (Oath Holdings Inc.,) including name, all contact phone numbers, emails, social network links, and images;

- Yahoo! Email - All email messages from creation to 11/24/20, including by way of example and not limitation, such as inbox messages whether read or unread, sent mail, saved drafts, chat histories, and emails in the trash folder. Such messages will include all information such as the date, time, internet protocol (IP) address routing information, sender, receiver, subject line, any other parties sent the same electronic mail through the 'cc' (Carbon copy) or the 'bcc' (Blind carbon copy), the message content or body, and all attached files;

- Photos - All images, graphic files, video files, and other media files stored by Yahoo! (Oath Holdings Inc.,) associated with the listed account;

- Search History - all search history and queries from creation to 11/24/20, including by way of example and not limitation, such as World Wide Web (WEB), images, news, shopping, ads, videos, maps, travel, and finance.

6. The warrant was signed by a Florida circuit court judge on December 11, 2020.

7. Yahoo submitted its response to the search warrant to Detective Keller electronically on or about December 23, 2020.

# MEMORANDUM OF LAW

## I. Severability of Warrants

There is limited binding precedent in the Eleventh Circuit regarding the severability of discrete portions of an otherwise unconstitutionally-overbroad warrant, and whether the items responsive to those discrete portions would not be subject to suppression. In sum, while severability is permitted in this Circuit, it is not applied in every instance. Instead, as detailed below, when a warrant is "essentially general in character," or is so vague that "Fourth Amendment principles are offended," the entirety of the warrant results will be suppressed, even if discrete parts could otherwise be severed.

### A. *Aday v. Superior Court*

The seminal case in this Circuit on the issue of severability of warrants is *United States v. Cook*, 657 F.2d 730 (5th Cir. 1981)[2], which relies almost entirely on a California Supreme Court case, *Aday v. Superior Court*, 362 P.2d 47 (Cal. 1961). In *Aday*, police officers requested a warrant and seized the petitioners' property, alleging that the petitioners conspired to publish obscene writings. *Id.* The petitioners sought a writ of mandamus for the return of their property. *Id.* The

---

[2] Decisions of the United States Court of Appeals for the Fifth Circuit, as of September 30, 1981, are binding as precedent in the Eleventh Circuit. *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981).

California Supreme Court held that the warrant was overbroad and general, but contained a valid portion explicitly listing two named books and copies of the petitioners' 1959 tax returns. *Id*. at 51.

The court ruled the valid portion of the warrant was severable from the invalid portions. *Id*. at 52. The decision contained very little reasoning on this point, citing only two cases without comment.[3]

The *Aday* court noted that there are exceptions to the doctrine of severability:

> "[W]e do not mean to suggest that invalid portions of a warrant will be treated as severable under all circumstances. We recognize the danger that warrants might be obtained which are essentially general in character but as to minor items meet the requirement of particularity, and that wholesale seizures might be made under them, in the expectation that the seizure would in any event be upheld as to the property specified." *Id*. at 52.

In other words, the *Aday* court warns that general warrants could include specific clauses to disguise their true nature, leading to wholesale seizures and an abuse of the warrant process. The court ruled such an abuse, "of course, would not be tolerated." *Id*.

**B.** *United States v. Cook*

In *Cook*, the defendants were accused of illegally reproducing and renting copyrighted movies. 657 F. 2d at 732. Federal agents obtained a search warrant

---

[3] *United States v. Nine 200-Barrel Tanks of Beer,* 6 F.2d 401, 402 (D.R.I. 1925); *United States v. Bell,* 48 F.Supp. 986, 997 (S.D. Ca. 1943).

for the defendants' place of business. The affidavit in support of the warrant identified "twelve motion pictures that the FBI had probable cause to believe had been illegally reproduced onto videotapes by the defendants and were stored at the place to be searched." *Id*. at 735-36. The warrant authorized the seizure of "books, records, and instrumentalities involved in the crime of copyright infringement," without providing any guidance as to how such items were to be identified. Agents seized 1,317 items over a seven and a half hour search. *Id*. at 732.

The district court granted the defendants' motion to suppress all evidence obtained in the search, finding that the warrant was "impermissibly general." *Id*. On appeal, the Fifth Circuit acknowledged that a warrant can use general terms or descriptions only when a more specific description is unavailable. *Id*. at 733. But it found that a more specific description was available there because, during their investigation, agents had obtained a catalog of the pirated movies. *Id*. at 734. The court held that agents could have used that catalog to "easily direct seizure of that property only without unnecessarily interfering with the other property of the possessor." *Id*. at 734. It thus held that the warrant was indeed overbroad.

The *Cook* court then analyzed whether it must suppress "all of the evidence seized when a search warrant provides a constitutionally sufficient description of some, but not all, of the things to be seized." It analyzed the reasoning behind

suppressing improperly obtained evidence, including that it: (1) acts as a deterrent to illegal searches; (2) prohibits the Government from benefiting from its own wrongs; and (3) precludes the Court from acting as an accomplice to a Constitutional violation. *Id*. at 734 (citing 1 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment s 1.1(f) (1978)).

It relied on *Aday* as the "leading decision" at the time. *Id*. As discussed above, the *Aday* court "chose to sever the defective portions of the warrant and suppress only those items that were not particularly described." *Id*. at 734-35. The *Cook* court thus held that "the district judge erred when she neglected to sever those portions of the warrant that did not particularly describe the things to be seized from the remainder of the search warrant." *Id*. at 735. Because the affidavit supporting the warrant listed twelve specific movies with probable cause to believe they were illegally reproduced, it held those twelve items should not have been suppressed, while the other 1,305 items were suppressed.

Like *Aday*, the *Cook* opinion addresses the danger of general warrants disguised as specific warrants. In dicta, it held that a situation where the warrant was "essentially general in character but as to some tangential items meets the requirement of particularity," or where "the description of a class of items to be seized is so vague that when read with the remainder of the warrant Fourth Amendment principles are offended," may require total suppression *Id*. at 735 n.6

(citing *In re Lafayette Academy, Inc.*, 462 F. Supp. 767, 771 (D.R.I. 1978), *aff'd on other grounds*, 610 F.2d 1 (1st Cir. 1979)).

### C. Other Eleventh Circuit Case Law

The only other Eleventh Circuit cases undersigned counsel found addressing the issue of severability are *United States v. Brown*, 374 Fed. Appx. 927, 936 (11th Cir. 2010), and *United States v. Carson*, 520 Fed. Appx. 874 (11th Cir. 2013). The *Brown* court held that "[t]he remedy for overbreadth in a warrant is severance. . ." However, it cites no cases and contains no analysis.

In *Carson*, the magistrate judge found that the warrant at issue was impermissibly general. The warrant at issue there authorized the seizure of several particular items (such as "radio electronic equipment," and "paraphernalia") and explicitly connected those items to drug trafficking. Then it also permitted the seizure of: "<u>Any</u> and all other material <u>evidence of violation of criminal code of Alabama</u> [sic], together with fruits, instrumentalities and evidence of crimes <u>at this time unknown</u>." *See United States v. Carson*, Case No. 2:10-cr-00483-ACA-SGC, Doc. 283 at 3 (emphasis in original); Doc. 137-1. The magistrate rejected "the government's alternative argument that any unconstitutional portion of the warrant could be severed from those portions supporting probable cause." 520 Fed. Appx. at 881. The magistrate found it "was impossible 'to determine whether the seizures were made pursuant to the

8

unlawful general provision of the warrant or the more limited one.'" *Id*. The magistrate ultimately denied the motion to suppress based on the good-faith exception, and the Eleventh Circuit ultimately affirmed the opinion on that ground. *Id.* at 881-82, 889. The appellate court did not address the magistrate judge's finding that the impermissible portions of the warrant could not be severed.[4]

### D. Other Circuits

While nearly every circuit appears to recognize a version of severance, like *Cook* several circuits have held that warrants should not be severed in every instance. For instance, in *United States v. Christine*, 687 F.2d 749, 754 (3d Cir. 1982), the Third Circuit cited *Aday* for the proposition that "Redaction[5] is inappropriate when the valid portions of the warrant may not be meaningfully severable from the warrant as a whole." The Ninth Circuit has likewise held that "severance is not always possible." *United States v. Cardwell*, 680 F.2d 75, 78 (9th Cir. 1982). In

---

[4] Few district courts in the Eleventh Circuit have addressed this issue since *Cook*. Almost all those cases cite either *Cook* or *Brown*. *See e.g. United States v. Chrisley*, 1:19-CR-297-ELR-JSA, 2021 WL 7286226, at *5 (N.D. Ga. Aug. 31, 2021) (citing *Cook*); *United States v. Qadri*, 119CR00290JPBJSA, 2021 WL 248865, at *5 (N.D. Ga. Jan. 26, 2021) (citing *Cook*); *United States v. Derbouze*, 14-20159-CR-MORENO, 2014 WL 2918670, at *6 (S.D. Fla. June 26, 2014) (citing *Cook*); *United States v. Kilgore*, 1:11-CR-00518-CAP, 2012 WL 5334298, at *6 (N.D. Ga. Sept. 13, 2012) (citing *Brown*).

Two cases, *Qadri* and *United States v. Sapp*, 3:08-CR-207-J-16MCR, 2009 WL 10697606, at *7 (M.D. Fla. Jan. 12, 2009), rely on a Tenth Circuit case, *United States v. Brown*, 984 F.2d 1074 (10th Cir. 1993). The law in the Tenth Circuit on this issue is well developed and is discussed below.

[5] The Third Circuit Court of Appeals refer to what the parties here have identified as "severability" as "redaction," using the term synonymously as it is used herein.

particular, "[i]f no portion of the warrant is sufficiently particularized to pass constitutional muster, then total suppression is required. Otherwise, the abuses of a general search would not be prevented." *Id.* (citing *Lafayette Acad.*, 610 F.2d at 6, relied on by *Cook*).

Likewise, the Tenth Circuit has limited the application of severance, holding that "[t]otal suppression may still be required even where a part of the warrant is valid (and distinguishable) if the invalid portions so predominate the warrant that the warrant in essence authorizes 'a general, exploratory rummaging in a person's belongings.'" *United States v. Sells*, 463 F.3d 1148, 1158 (10th Cir. 2006). To hold otherwise would "defeat rather than effectuate" the Fourth Amendment. *Id.*

The *Sells* court outlined a multi-step test to determine if severability is applicable by first dividing the warrant into individual clauses and determining the constitutionality of each clause. *Id.* at 1151. If no part of the warrant particularly describes the items to be seized for which there is probable cause, "then severance does not apply." *Id.* If part of the warrant is sufficiently particularized and supported by probable cause, then it looks to whether the valid portions are distinguishable from the invalid portions.

But even if parts may be "meaningfully severed," it then "look[s] to the warrant on its face to determine whether the valid portions make up 'the greater part of the warrant,' by examining both the quantitative and qualitative aspects of

the valid portions relative to the invalid portion." *Id*. It looks not only at the number of invalid versus valid provisions of the warrant, though that is a factor. *Id*. It also looks to whether "[a] warrant's invalid portions, though numerically fewer than the valid portions, may be so broad and invasive that they contaminate the whole warrant." *Id*. at 1160. "Common sense indicates that we must also evaluate the relative scope and invasiveness of the valid and invalid parts of the warrant." *Id*. The *Sells* court recognized that other circuits follow similar tests, and cited *Cook* and *Aday* as examples. *Id*. at 1159 (collecting cases).

As detailed below, the warrant at issue here is a general warrant and, to the extent any part is particular, it contaminates the whole warrant and precludes severability. Further, even if the warrant is severable, only a tiny portion of the warrant would survive and the remainder must be suppressed.

### III. The warrant here is an impermissible general warrant and is not subject to severability.

Under the principles of *Cook* and other cases relying on the same precedent, the warrant at issue here is an impermissible general warrant.

As discussed above, the doctrine of severability of a warrant is not automatically applied. Under *Cook*, where a warrant is "essentially general in character," severance will not be applied. 657 F.2d at 735 n.6. This is true even if "some tangential items meet[] the requirement of particularity." *Id*.

As set forth in the Second Motion to Suppress, Doc. 134 at 8-10, and as summarized herein, the warrant to Yahoo was a general warrant. It is unlimited in scope, asking for everything in the Yahoo account without regard to dates or the probable cause set forth in the warrant. Among many other items, it demands every single email in the account, every internet search ever conducted, every GPS location, every text message, every photo, every contact, every calendar entry, every credit card number, *ad infinitum*. This is the very definition of a general warrant.[6]

The warrant lacks probable cause for most items and fails to set limitations for supported items. For example, it does not link calendar entries or contacts to the offense. Detective Keller seeks this information to identify co-conspirators without a basis for such speculation. Additionally, the warrant does not justify demanding all internet searches related to the account. All provisions of the warrant suffer similar problems.

As in *Cook*, law enforcement effectively had a "catalog" of contraband it could have referred to and requested the emails that were involved in the NCMEC Cybertip. 657 F. 2d at 734. Instead, like the officers in *Cook*, law enforcement seized

---

[6] *See* Black's Law Dictionary (11th ed. 2019) a "general warrant" is "[a] warrant giving a law-enforcement officer broad authority to search and seize unspecified places or persons; a search or arrest warrant that lacks a sufficiently particularized description of the person or thing to be seized or the place to be searched."

every single item they could get their hands on. Further, as in *Carson*, the warrant here contains general terms that would capture everything in the account – such as demanding all "account activity from creation" of the account, and "any other data that may demonstrate attribution to a particular user or users or the account." Doc. 134-1 at 12. It is therefore "impossible to determine whether the seizures were made pursuant to the unlawful general provision of the warrant or the more limited one[s]." 520 Fed. Appx. at 881.

By virtue of the unlimited date range, the unlimited items, and the lack of probable cause, this warrant is "essentially general in character," and therefore should not be subject to severance. *Cook*, 657 F.2d at 735 n.6. And, in the language of the Tenth Circuit, the invalid provisions of this warrant are so "broad and invasive," that they "predominate" and "contaminate" the whole warrant, requiring total suppression to effectuate the Fourth Amendment. *Sells*, 463 F.3d at 1158, 1160. Even if "some tangential items meet[] the requirement of particularity," *Cook*, 657 F.2d at 735 n.6, they are mere fig leaves that do not hide that this is a general warrant.

The Second Motion to Suppress should be granted and all items obtained as a result of the Yahoo warrant should be suppressed.

## IV. If the warrant is subject to severance, only a discrete portion is severable and the remainder of the evidence must be suppressed.

As discussed above, the warrant at issue is a general warrant and under *Cook* is not subject to severance. However, if the Court finds, a portion should be subject to severance, the severable portion would be only part of the first category of items from the warrant titled "Account Information," and a part of the second category "Evidence of user attribution."

That part of the warrant, Doc. 134-1 at 12, demands:

"Account Information - User name, primary email addresses, secondary email addresses, connected applications and sites, and account activity from creation to 11/24/20, including account sign in locations, browser information, platform information, and internet protocol (IP) addresses."

Evidence of user attribution - accounts, e-mail accounts, passwords, PIN codes, account names, user names, screen names, remote data storage accounts, credit card number or other payment methods, contact lists, calendar entries. text messages, voice mail messages, pictures, videos, telephone numbers, mobile devices, physical addresses, historical GPS locations. two-step verification information, or any other data that may demonstrate attribution to a particular user or users of the account(s).

If there is a portion of this warrant that is severable, it would be the portion of the "Account Information" paragraph demanding "[u]ser name, primary email address, [and] secondary email addresses," and "accounts, e-mail accounts, passwords, PIN codes, account names, user names, screen names," from the "Evidence of user attribution" category. Arguably, because those items relate to

14

the creation of the account, they are untethered in time so the failure to include a date range or other limitation may be deemed appropriate.[7]

However, the remainder of the "Account Information" category is improper. The probable cause affidavit gives no basis to demand "connected applications and sites." And, as discussed above, the demand for "account activity from creation to 11/24/20," demands everything in the account, making this a general warrant. Doc. 134-1 at 12.[8] The request for all account activity since the beginning of time, including those listed items, is the same as requesting "all account activity" and is improperly general.

Likewise, the remainder of the "Evidence of user attribution" portion is improper. Nowhere in the probable cause affidavit is there basis to demand "remote data storage accounts" or credit card information. Further, the other

---

[7] At the Second Motion to Suppress hearing, defendant argued that Detective Keller provided no reasoning for "Account Information," unlike he did for the other categories in the warrant. When an officer provides reasoning for demanding some items but not others, the Court many not infer such reasoning. *See Donovan v. Mosher Steel Co., Div. of Trinity Indus.*, 791 F.2d 1535, 1537 (11th Cir. 1986) ("[I]t is elementary that in passing on the validity of a warrant, the reviewing court may consider only information brought to the magistrate's attention"—that is, within the four corners of the warrant application.") (quoting *Aguilar v. Texas*, 378 U.S. 108, 109 n. 1 (1964)). Nowhere in his warrant application does Detective Keller explicitly state he is seeking this information to determine the identity of the account holder.

[8] The warrant gives examples of that "account activity" as "including account sign in locations, browser information, platform information, and internet protocol (IP) addresses." The phrase "including" does not limit the "account activity" demand to only those items explicitly listed. *See e.g. Young v. Progressive Max Ins. Co.*, 5:12-CV-221 MTT, 2013 WL 2458426, at *4 (M.D. Ga. June 6, 2013) ("'Include' means '[t]o contain as a part of something[,]' indicates a partial list, and is synonymous with the phrases including without limitation and including but not limited to.") (quoting Black's Law Dictionary, 9th ed.).

demands are improperly unlimited in scope or time, demanding every email, GPS record, etc. Moreover, the inclusion of "any other data that may demonstrate attribution to a particular user or users of the account," like "account activity," is essentially a catchall that exemplifies the overbreadth and lack of limitation of this warrant. Doc. 134-1 at 12.

Thus, if there is any portion of the warrant that is severable (which as discussed above, there is not), it is the portion demanding "User name, primary email address, [and] secondary email addresses," and "accounts, e-mail accounts, passwords, PIN codes, account names, user names, screen names." The remainder is not subject to severance and must be suppressed.

## **CONCLUSION**

For the above reasons and the reasons set forth in the Second Motion to Suppress and at oral argument, Mr. Williamson respectfully requests that the Second Motion to Suppress be granted, Doc. 134, that all evidence obtained from the Yahoo search warrant, Doc. 134-1, be suppressed, and that the Court grant all other relief that the Court deems necessary and proper.

Dated: May 25, 2023			Respectfully submitted:

<div style="margin-left: 2em;">

/s/ Gus M. Centrone
Gus M. Centrone (FB# 30151)
KYNES, MARKMAN & FELMAN, P.A.
P.O. Box 3396
Tampa, FL  33601-3396
Telephone: (813) 229-1118
Facsimile: (813) 221-6750
GCentrone@kmf-law.com

*Counsel for Defendant Gregory Allen Williamson*

</div>

## CERTIFICATE OF SERVICE

I HERBY CERTIFY that on May 25, 2023, I electronically filed the foregoing with the Clerk of Court through the CM/ECF Filing System which will send a notice of electronic filing to all counsel of record.

<div style="margin-left: 2em;">

/s/ Gus M. Centrone
Gus M. Centrone

</div>