UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

    v.                                 CASE NO. 8:21-cr-355-WFJ-CPT

GREGORY ALLEN WILLIAMSON
    a/k/a "Vlad Vlad"

**UNITED STATES' SENTENCING MEMORANDUM**

On March 13, 2024 a federal jury found the defendant, Gregory Allen Williamson (hereinafter "Williamson" or "Vlad Vlad") guilty on all counts charged in the Indictment. Now, the United States files this sentencing memorandum requesting the only sentence within the applicable Guidelines range: a term of life imprisonment and order no contact with the victim or her family.

    **I.**     **Procedural History**

On September 21, 2021, Gregory Williamson a/k/a "VLAD VLAD," was indicted by a federal grand jury for several crimes. Count One charged Williamson with persuading, inducing, enticing, and coercing a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b). Counts Two, Three, and Four charged Williamson with attempted production or production of child pornography, in violation of 18 U.S.C. § 2251(a). Counts Five, Six, and Seven charged Williamson with distributing child pornography in violation of 18 U.S.C. § 2252(a)(2). And

1

Count Eight charged Williamson with possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). Doc. 1.

On March 14, 2024, Williamson was found guilty by jury trial on all counts. Williamson's sentencing is scheduled for June 8, 2022.

## II.    Evidence Presented at Trial

### A. Initial Tip and Search of Defendant's Electronic Devices

At trial, Yahoo! witness, Ashley Guizotti, testified that in September 2020, Yahoo! reported to the National Center for Missing and Exploited Children ("NCMEC") that its user, vladlover50@yahoo.com, had been distributing child sexual abuse materials ("CSAM"). That tip resulted in a search warrant for the email account vladlover50@yahoo.com (hereinafter, "Yahoo! account"). The returns from that search warrant revealed that the Internet Protocol ("IP") address associated with the account traced back to Williamson. They also showed that, in addition to the CSAM that had been initially reported by Yahoo!, Williamson had also distributed several CSAM images to his then thirteen-year-old minor stepdaughter ("Victim"). The body of those emails described (in explicit fashion) the sexual abuse that Williamson wanted to perpetuate on Victim, as well as sex acts that Williamson wanted to coerce Victim to perform on him.

By way of example, on January 16, 2020, Williamson sent Victim an email with the subject line "your sweetness." The body of the email stated that "this is how you

make me cum all over you" and included a CSAM image. *See* Trial Ex. 2. The next month, on February 5, 2020, Williamson sent Victim another email with the subject "your sweet pussy." Trial Ex. 3. The body of the email described how Williamson "would love to rub yourself until you become incredibly wet and horny and inserted my prick into your sweet wet pussy. Would love to make love to you for hours," and included a CSAM image. *Id*. And on September 8, 2020, Williamson sent Victim an email with the subject "I am in love with you!" Trial Ex. 4. The body of this email stated, "I want to cum all over your pussy like this," and included a CSAM image. *Id*.

From there, law enforcement obtained a search warrant for Williamson's residence. Several law enforcement witnesses testified at trial explaining that the search, law enforcement recovered, among other things, a Samsung Galaxy Note 8 cell phone and Seagate 500gb hard drive, both of which belonged to Williamson. They also recovered a computer, which Williamson had access to and used. These electronic devices were seized and forensically analyzed.

The forensic review of Williamson's electronic devices revealed that Williamson had attempted to or actually produced CSAM and possessed CSAM. *See* Trial Exs. 5.1, 6.1, 8.3. More specifically, from Williamson's password-protected account on the computer, law enforcement found hundreds of images of CSAM and evidence that the Yahoo! account was accessed on the computer. On the Seagate 500gb hard drive (which was found in Williamson's bedroom), law enforcement

3

located 36 child exploitation images, 9 of which were previously identified, known CSAM. Trial Ex. 8.3. On Williamson's Galaxy Note 8 cell phone, law enforcement found email and web history relating to the Yahoo! account, evidence that the cell phone had been connected to the wireless network "LOUHE-A5bce8," and hundreds of images of Victim, 33 of which depict Victim nude. Trial Ex. 6.1.

As Detective James Keller testified at trial, based on law enforcement's review of Victim's images found on Williamson's cell phone, law enforcement had reason to believe that Williamson had placed a secret camera in Victim's bedroom. Soon after, Detective Keller explained that he recovered a USB charger that, according to Victim, Williamson had given to her to "charge her phone." But, unbeknownst to Victim, inside the USB charger was a secret camera that, using the "LOUHE-A5bce8" wireless network, would transmit, among other things, nude recordings of Victim to the Defendant's cell phone. Trial Exs. 10, 11.

### B. Additional Emails Sent by Williamson to Victim

The evidence at trial demonstrated that throughout 2019 and 2020, Williamson sent Victim multiple emails that were explicit and sexual in nature from the Yahoo! account, as well as other email accounts. For example, in August 2019, Williamson instructed Victim not to "wear any pntys under [her] dress today" and when Victim asked Williamson to stop and suggested she hated him, he responded with "that's not what you told me when you were cumming all over me. send pictures of your

4

wetness." Trial Ex. 1.11A.

Over the next year, Williamson continued to send Victim sexual emails. On August 18, 2020, Williamson told Victim that he "would love to watch you and see your face while you are cumming all over your fingers while playing with yourself." Trial Ex. 1.10A. And Williamson also sent Victim several emails that included pornographic attachments or links.[1] Those emails described how Williamson would "love to eat [Victim's] pussy while pinching [Victim's] nipples!" Trial Ex. 1.5A. He also explained how he "would love to watch [Victim] finger [her] little pussy and ride [his] hard prick until [Victim] creamed all over it." *See Id*.

In these emails, Williamson frequently discussed "popping" Victim's cherry, making her orgasm, and getting her pregnant. Trial Exs. 1.6A, 1.7A. At least one of these communications included a photograph of a young girl who was pregnant. Trial Ex.

Additionally, many of the emails Williamson sent Victim are consistent with the various sexual abuse incidents described by Victim.

### C. Testimony of Victim

At trial, Victim testified that Williamson sexually abused her at their house in Spring Hill, Florida. Specifically, Victim recalled that the abuse began when she was around 11 years old. She said the defendant would touch her differently than others

---

[1] These videos and images were not obvious CSAM images.

during hugs—including, Williamson positioned his hands too low on her body, touching her buttocks. Williamson would touch her breasts and rub her vagina over her clothes. Eventually, Williamson touched Victim's buttocks under her clothing and did so "too many times to count." According to Victim, the touching occurred underneath her pants and underwear and never in front of other people.

      On one occasion, Victim explained that Williamson took her outside where he inserted his fingers into her vagina. On another occasion, Victim testified that Williamson crawled into Victim's bed early in the morning and forcibly started kissing her against her will and tried to take her clothes off. Victim also recalled that one occasion where Williamson told her that, if she left her door open, he would come into her room and perform oral sex on her. And, as Victim explained at trial, soon after, Williamson came into her room, he put his mouth on her mouth and tried to touch her, he also pulled down her pants and underwear to her knees and put his mouth and tongue on her vagina.

      At trial, Victim testified that Williamson only sexually abused her when her mother was not around. She explained that she did not tell her mother but did confront Williamson about his sexual abuse—including calling him a pedophile. When she confronted Williamson, Victim testified that he tried to convince her that the abuse was common and told her that she "liked it."

### D. Ongoing Obstruction—including Post-Trial Obstruction

Since June of 2021 through June 2, 2024, Williamson sent *hundreds* of handwritten letters from jail to his ex-wife, A.W., the mother of Victim.[2] Within these letters, Williamson attempted to obstruct or impede this criminal trial repeatedly. He has attempted to discourage, harass, shame, bully, and threaten various legal actions (immigration and preventing divorce) against A.W. Even today, he *still* attempts to persuade A.W. to tell Victim to recant her testimony. He has threatened legal actions claiming he is appealing the divorce decree and wrote letters to immigration authorities to reconsider her status in the country.

Before trial, Williamson wrote A.W. in a Valentine's Day letter stating, "I am guessing you already know that it is getting close to showtime. I am really hoping that all involved starts telling the truth." "There is still time to put an end to ALL of this nonsense between us. ALL of it! Damn it. If anyone knows what exactly did or did not happen…it would be you! I am guessing you also know that the district court of appeals have or is about to reverse the dissolution order too. Did you really think you were going to get rid of me that easy? Come on Baybee…you certainly know better than that…" *See* Exhibit A. Since trial concluded, Williamson's harassment and obstruction has not stopped. Instead, it's only gotten worse. Indeed, in a letter from

---

[2] Only a sample of Williamson's voluminous letters can be included, as he has been sending them to A.W. for years, hoping to wear her down.

June 2, 2024—notably, sent after Williamson was convicted on all counts--Williamson expresses his anger with A.W. "I am guessing that now the government is done using you that immigration is breathing down your neck." Exhibit A. In another post-trial letter on May 5, 2024, Williamson wrote to A.W. and states, "You and I have unfinished business…I will see you soon!" Exhibit A.

### III. Presentence Investigation Report

On June 13, 2024, probation issued its Final Presentence Investigation Report ("PSR") as to the defendant. Doc. 263. Pursuant to the PSR, Williamson's applicable Guideline for the underlying offense is life; he is a criminal history category II; and the applicable period of supervised release is five years up to life. *Id.* at ¶¶ 129, 130. Williamson is subject to a 10-year mandatory minimum up to life imprisonment as to Count One, a 15-year mandatory minimum up to 30 years imprisonment on Counts Two through Four, and a 5-year mandatory minimum up to 20 years imprisonment on Counts Five through Seven. *Id.* at ¶ 129.

### IV. Argument for Life in Prison

The facts of this case and the defendant's conduct are egregious and demand a life sentence. This is necessary due to the nature and circumstances of the offense, to promote respect for the law, provide just punishment for the offense, afford adequate deterrence of these crimes, and for the protection of the public against the defendant. *See* 18 U.S.C. § 3553(a).

The United States recognizes that a sentencing court may not presume that a sentence within the advisory guideline range is reasonable; however, the Guidelines remain a significant and pivotal component of the sentencing process. The Court "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." *Nelson v. United States*, 129 S. Ct. 890, 891-92 (2009). Section 3553(a)(1) provides that, in determining a sentence, courts must consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant. Additional factors outlined in § 3553(a)(2) include the need for the sentence to reflect the seriousness of the offense; to promote respect for the law; to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed education or vocational training, medical care, or other corrective treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). A consideration of these factors warrants a sentence of life in prison.

The Eleventh Circuit has found life sentences given to similarly situated defendants were not in violation of the Eight Amendment and not substantively unreasonable. *See United States v. Worsham*, 479 F. App'x 200 (11th Cir. 2012) (Life sentence for enticing minor to engage in sexual activity did not violate Eighth

9

Amendment as grossly disproportionate to offense, since sentence was within limits imposed by statute of conviction, so was neither excessive nor cruel); *United States v. Hutchinson*, 588 F. App'x 894 (11th Cir. 2014) (Defendant's sentence of life imprisonment for two counts of sexual exploitation of children, two counts of enticement of minors to engage in criminal sexual activity, and transferring obscene materials to minors, which was the sentencing guidelines sentence, was not substantively unreasonable in light of the statutory sentencing factors); *United States v. Harding*, 696 F. App'x 955 (11th Cir. 2017) (District court did not abuse its discretion in imposing total sentence of life imprisonment upon defendant after he pleaded guilty to charges of distribution of child pornography, possession of child pornography, enticing minor to engage in prohibited sexual conduct, and production of child pornography).

### A. Nature and Circumstances of the Offense

Williamson thought he scored a windfall when he married a woman from a foreign country who had a young female child that didn't speak English. Instead of being a decent human being, a father figure, or a good husband, he seized the opportunity to do what was best for himself—exploitation of his wife's child. He pressured, groomed, and coerced Victim over time to bend to his will and used her for his own gratification. He forced Victim to create child pornography, he engaged

in non-consensual sexual activity with her, and he manipulated her mind by stalking and harassing her with anonymous emails for years.

The emails sent to Victim outlined above establish an alarming fixation on Victim. Even when Victim told him to stop and said she would report him, he was never deterred. Armed with rejection, Williamson pushed forward with shame. In one email from January 2021, the defendant wrote:

> Just because you wanted to be a big girl a few months back does not make me a pervert. If that was the case then why did you come back for more and more and make me go outside with you and finger your pussy until you finally did cum? Or you forgot about that? I regret the little affair we did have as I thought you were a little more mature than what you really are. Shame on me. Since you really aren't a virgin anymore other than you have not had a penis inside you just make sure to find the one that will satisfy your desires when you finally do. Perhaps you should wait until you are married? No need to worry about me as I no longer have an attraction to you.

Trial Ex. 6.7.

The evidence presented at trial demonstrates that Williamson is a dangerous predator willing and ready to exploit vulnerable children. Williamson routinely used tactics of control on Victim, making her dependent on him for a father figure. This dangerous behavior requires a significant sentence in prison.

### B. History and Characteristics of the Defendant

Williamson's history and characteristics also weigh in favor of a life sentence. Williamson is a 60-year-old adult who has a long-demonstrated history of violating the law and in turn—disobeying court orders. As demonstrated from Williamson's

criminal history as described in the PSR, the need for the sentence imposed in this case to promote respect for the law and to provide adequate deterrence to criminal conduct is significant. Despite numerous prior criminal offenses, including several thefts, including grand thefts, an escape from jail charge, an assisting someone's escape from jail charge, numerous driving offenses, a battery, and a scheme to defraud, Williamson repeatedly violated court orders, evaded significant terms of incarceration, and continued his criminal behavior. He even previously presented fraudulent pardon paperwork to be released from jail, and violated court orders to stop contacting A.W. He has various violations of probation, demonstrating his utter lack of ability to follow court orders.

      Williamson acts as if there are no consequences, or at least none that he fears. These are characteristics that require serious intervention to protect the community. A sentence of life imprisonment is necessary to recognize those harmed by Williamson's conduct, to restore public confidence and respect for our laws, and to address Williamson's exploitive behavior.

      A term of life imprisonment is the only deterrence option left that will convey that such behavior is unacceptable and will be adjudicated harshly within the Eleventh Circuit. Accordingly, there is a strong need to impose a severe sentence that will serve as a warning to Williamson and individuals considering similar conduct.

### C. Need to Protect the Public from Further Crimes of the Defendant

There is a strong need to protect the public from further crimes of the defendant. Williamson demonstrated escalating dangerous behavior against a child. He took substantial steps to gain access to Victim in this case. He started small by buying her possessions, bringing her to the United States, and becoming the "good cop" in his relationship with her mother. Later, he started to secretly message Victim via email to the cellphone he provided her. When Victim was frightened by those emails, she confided in Williamson, a "safe" adult that she trusted. When those messages weren't enough for Williamson, he began sending explicit images and CSAM to Victim as young at 11 and 12 years old. His obsession with Victim only grew. He started to sexually abuse her at a time when Victim did not know about sex. He decided to take on the role of teaching her and taking away her innocence against her will. Again, this wasn't enough. Williamson then purchased secret cameras to monitor and watch Victim changing, violating her private space, and watching her as a child, in the nude, for his own pleasure. He saved those photos for his own use on his cellphone, continuing to violate Victim. Williamson showed a pattern of abuse and coercion against Victim who was young and vulnerable. This conduct poses a grave danger to society.

Williamson continues to demonstrate zero remorse for his crimes. Even today, Williamson disputes the evidence and testimony presented at trial—making hima

13

danger to our society in this case. In his own words, "…give ALL of our children a hug from me, a kiss to the little ones and remind them that daddy loves them to the moon and back a zillion times! And oh yeah, I will see them soon…real soon..." Williamson states in his letters continually, that he intends on contact with the victim and her siblings soon. A term of life imprisonment is the only mechanism available to the court to protect the public and his victim from further crimes of the defendant, someone who uses his influence as an American, an adult and stepfather to access and commit crimes against children.

### D. Defense Objections

Williamson objects to the "factual allegations set forth in the report detailing the alleged offense conduct." This blanket objection is no surprise, as explained above, Williamson refuses to take any responsibility for his actions. The Court was present for the entirety of the jury trial and had the benefit of witnessing all the testimony and evidence. Each element of each count was proved beyond and to the exclusion of all reasonable doubt according to the jury's verdict.

### A. Enticement of a Minor (Count One)

Williamson was convicted of enticement of a minor victim, in violation of 18 U.S.C. § 2422(b). In this case, Williamson used the Internet when he sent graphic, sexual images to Victim to coerce her into engaging in sexual activity as charged. See Trial Exs. 1.1-1.19, 6.7. Not only was it established that Victim received these sexual

images, but a Yahoo representative also testified that it went through their company servers and those emails were also distributed to Yahoo. The evidence established that Williamson attempted to persuade, induce, entice, and coerce Victim (who was twelve or thirteen at the time) to engage in sexual acts when he: sent her sexual emails, many of which described sexual acts he wanted to perform on her, discussed her genitals, and made references to her virginity and impregnating her; distributed CSAM images to Victim; sent Victim other pornographic images, among other things; digitally penetrated Victim; and attempted to forcibly perform oral sex on Victim Additionally, Victim testified to her age, which was under 18 at the time of the offense.

### B. Attempted Production or Production of Child Pornography (Counts Two, Three, and Four)

Williamson was convicted of attempted production and production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e).

The evidence at trial demonstrated that Williamson gave Victim two hidden cameras and recorded her without her knowledge or participation and, therefore, that Williamson "used" or "induced" Victim within the meaning of § 2251. Pornographic images were "produced" when Williamson transported sexually explicit images of Victim from the secret cameras in the USB device to his cell phone. See Trial Ex. 7, 7.1, 7.2, The evidence established that Williamson produced

15

child pornography of Victim when he secretly recorded her nude in her bedroom. Victim was approximately twelve or thirteen years old when Williamson produced multiple images of Victim with his cellular telephone.

Further, the evidence demonstrated that the cell phone that produced the images of Victim was manufactured overseas. The evidence at trial proved that Williamson intended to create lascivious exhibition of the genitals or pubic area of Victim and took a substantial step toward doing so by recording the videos of Victim.

### C. Distribution of Child Pornography (Counts Five, Six, and Seven)

Williamson was convicted of distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2).

The United States introduced three images of child sexual abuse material that were emailed from Williamson to Victim. Trial Exs. 2, 3, 4, The evidence showed that these three images were just a fraction of the child sexual abuse images the defendant possessed. The evidence at trial proved that Williamson drafted the emails on his cellphone, sent them via Yahoo, through the internet, to Victim who received them.

### D. Possession of Child Pornography (Count Eight)

Williamson was convicted of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2).

The United States introduced evidence of multiple images of child sexual

16

abuse material. Trial Exs. 5.10, 5,14. The evidence showed that these images were a fraction of the child sexual abuse images the defendant possessed. These images came from Williamson's electronic devices from inside his home. The electronic devices were manufactured outside of the United States.

## V. Conclusion

Williamson is a predator. His actions demonstrate that he intended and succeeded in pressuring, manipulating, shaming, and exploiting a child into engaging in sexual activity with him. Williamson's sentence should fairly account for his predatory and abusive nature, the scope of his criminal endeavors, acknowledge the harm that he has caused to the victim, and acknowledge the ramifications of his actions. Williamson's freedom and autonomy are incompatible with the safety of children in our community. For the aforementioned reasons, the United States respectfully requests that this Court issue a lifetime sentence.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By: */s/ Erin Claire Favorit*
Erin Claire Favorit
Assistant United States Attorney
Florida Bar No. 104887
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone: (813) 274-6000

Facsimile:   (813) 274-6358
E-mail:      erin.favorit@usdoj.gov

U.S. v. Gregory Williamson   CASE NO. 8:21-cr-355-WFJ-CPT

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system and will send a copy via United States mail to the following:

Gregory Williamson
MNI#2300070303
16425 Spring Hill Dr. Brooksville, 34604
Hernando County Detention Center
General Inmate Correspondence

            */s/ Erin Claire Favorit*
            Erin Claire Favorit
            Assistant United States Attorney
            Florida Bar No. 104887
            400 N. Tampa Street, Suite 3200
            Tampa, Florida 33602-4798
            Telephone: (813) 274-6000
            Facsimile: (813) 274-6358
            E-mail: erin.favorit@usdoj.gov