```
1              IN THE UNITED STATES DISTRICT COURT
                  MIDDLE DISTRICT OF FLORIDA
2                       TAMPA DIVISION

3

4   UNITED STATES OF AMERICA,        )
                                     )
5                 Plaintiff,         )
                                     )
6                                    ) Case No.
            vs.                      ) 8:21-CR-00355-WFJ-CPT
7                                    )
                                     )
8   GREGORY ALLEN WILLIAMSON,        )
                                     )
9                 Defendant.         )

10

11

12  _____

13              MISCELLANEOUS PRE-HEARING
       BEFORE THE HONORABLE CHRISTOPHER P. TUITE
14          UNITED STATES MAGISTRATE JUDGE

                    SEPTEMBER 6, 2022
15                    11:10 A.M.
                    TAMPA, FLORIDA
16  _____

17

18

19

20

21        Proceedings transcribed via courtroom digital audio
    recording by transcriptionist using computer-aided
22  transcription.

23  _____

            DAVID J. COLLIER, RMR, CRR
24        FEDERAL OFFICIAL COURT REPORTER
        801 NORTH FLORIDA AVENUE, 7TH FLOOR
25           TAMPA, FLORIDA  33602
```

1    **APPEARANCES:**

2

3    **FOR THE GOVERNMENT:**

4

5            *Erin C. Favorit*

6            *Abigail King*

7            United States Attorney's Office

8            400 North Tampa Street, Suite 3200

9            Tampa, Florida  33602

10           (813) 274-6000

11

12

13   **FOR THE DEFENDANT:**

14

15           *Gus M. Centrone*

16           Kynes, Markman & Felman, P.A.

17           P.O. Box 3396

18           Tampa, Florida  33601-3396

19           (813) 221-1118

20

21

22

23

24

25

```
 1                  P R O C E E D I N G S

 2                  - - - o0o - - -

 3           THE COURT:  Good morning, everyone.

 4           Madam Clerk, if you could please call the case.

 5           COURTROOM DEPUTY:  United States of America versus

 6    Gregory Allen Williamson, Criminal Case Number 8:21-CR-355.

 7           THE COURT:  If I could please have the appearances of

 8    counsel for the record, beginning with the Government.

 9           MS. FAVORIT:  Good morning, Your Honor.  Erin Favorit

10    on behalf of the United States.

11           MS. KING:  And Abigail king on behalf of the

12    United States.

13           THE COURT:  Good morning to you both.

14           And for the defense?

15           MR. CENTRONE:  Good morning, Judge.  Gus Centrone for

16    Gregory Williamson, who is with me in the courtroom.

17           THE COURT:  Good morning to you both as well.

18           So the Court scheduled this for a prehearing

19    conference.  I find these to be helpful so that it eliminates

20    what I have found to be any confusion or things that require

21    clarification.  So I've identified a number of items that

22    I want to discuss with the parties, the first of which I think

23    is a given, but I'll make sure that all are aware, as with any

24    evidentiary hearing, the Court will expect witness lists and

25    exhibit lists to be filed immediately before the hearing
```

```
1   identifying the witnesses that the parties expect to call and

2   exhibit lists, and those should be exchanged between the

3   parties and a copy provided to the Court so the Court can keep

4   track of the proceeding.

5           Any question there, Ms. Favorit?

6           MS. FAVORIT:  No, Your Honor.

7           THE COURT:  All right.  Mr. Centrone, pretty basic

8   stuff, but any questions there?

9           MR. CENTRONE:  No, Your Honor.  Thank you.

10          THE COURT:  Okay.  As far as more discreet items,

11  Mr. Centrone, I've reviewed the filings here.  I'm trying to

12  make sure that I understand, are you challenging both warrants

13  here or the one on the residence or the one on Yahoo?

14          MR. CENTRONE:  Yes.  Yes, Your Honor, both of them.

15          THE COURT:  Okay.  Just when you address the Court,

16  if you would kindly stand.

17          MR. CENTRONE:  I apologize.

18          THE COURT:  Just to -- that's okay.

19          MR. CENTRONE:  I apologize.

20          THE COURT:  That's just the school in which I was

21  raised, effectively, so --

22          MR. CENTRONE:  Same, Your Honor, just -- just a slip

23  of -- and by the way, thank you for moving this hearing to

24  accommodate my attendance at the Federal Sentencing Guidelines

25  seminar last -- last week.  I appreciate that.
```

 1              THE COURT:  Very valuable.  I've taught at that
 2    before in the past.
 3              MR. CENTRONE:  And we'd love to have you back next
 4    year.  It's going to be in Orlando.
 5              So, Judge, yes, to answer your question, the basis
 6    for the warrant to the residence and the basis for the warrant
 7    to Yahoo are effectively identical, so it's a challenge to
 8    both.
 9              THE COURT:  Okay.  Ms. Favorit, is that how you
10    understand it, or do you have any questions there?
11              MS. FAVORIT:  That was not my original understanding
12    based on the first motion to suppress and the attached warrant
13    exhibit to that motion.  I can make adjustments to my
14    preparation, but that was not my understanding.
15              THE COURT:  Okay.  When you say you can -- let me
16    just -- before you speak, Mr. Centrone.
17              MR. CENTRONE:  Yes.
18              THE COURT:  When you say you can make adjustments,
19    Ms. Favorit, that means -- or I take it to mean that you'll be
20    prepared to proceed tomorrow as scheduled, with that
21    understanding, that it's a challenge to both warrants?
22              MS. FAVORIT:  Yes, we could still proceed forward,
23    Your Honor, I just -- that was just not my understanding, so
24    I'll have to kind of adjust my preparation for that.  I don't
25    think it will be too big of an adjustment because they're

1   similar, but I don't know if they're identical in this moment

2   because I haven't compared them side-to-side, so I don't know

3   if I'll have any new arguments in relation to the second

4   warrant, but I can attempt to prepare for that as well.

5           THE COURT:  Okay.  And which brings up another point

6   that I wanted to make sure I cover.  Typically, and I expect to

7   do it here, what I do in these cases is I'll establish a

8   briefing schedule after the parties have the transcript and

9   they'll submit a post-hearing brief that will cover the issues.

10  I do that for a number of reasons.  Sometimes the evidence

11  isn't exactly what's anticipated or it's slightly different,

12  things come up.  It's also a chance sometimes for the parties,

13  once they hear the evidence, to sometimes distill matters.  It

14  may turn out that an argument that was sought to be made may no

15  longer have the factual predicates, but the Court has to go

16  through that exercise, so it's going to look at the transcript,

17  and it's benefited in the past from the parties doing so.

18          Ms. Favorit, I typically look to the Government to

19  order the transcript, so you'll -- sometimes it's beneficial to

20  talk to your office in advance about the timing.  In other

21  words, there's an expedited cost and a regular transcript.

22  Talk to the court reporter.  The court reporter should be here

23  before the Court takes the bench, you can talk to the

24  court reporter then, Ms. Favorit, about what your preference

25  is, and then we'll establish a briefing schedule based on that.

1   So if it's two weeks for the transcript, you can tomorrow tell

2   me how much time you need.  I would normally think two weeks

3   after the receipt of the transcript.  You know these cases

4   well.  You'll have heard the testimony.  But then what the

5   Court is looking for, and will likely enter an order to this

6   effect, is page cites and even line references, so that it can

7   put together am informative report and recommendation for the

8   presiding District Judge, who will have to look at the

9   transcript as well.

10          Any questions there, Ms. Favorit?

11          MS. FAVORIT:  No, Your Honor.

12          THE COURT:  Okay.  Mr. Centrone?

13          MR. CENTRONE:  No.  Thank you, Your Honor.

14          THE COURT:  All right.  In terms of the evidence

15   that's sought to be excluded, Mr. Centrone, I'll ask you now as

16   a preliminary matter, but just so Ms. Favorit is aware, and to

17   the extent there's any ambiguity here, we'll clarify it, what

18   evidence specifically are you looking to exclude?

19          MR. CENTRONE:  All evidence derived from both search

20   warrants, to residence and to Yahoo.

21          THE COURT:  Which would consist of?

22          MR. CENTRONE:  A number of things.  There were a

23   number of devices that were seized from the residence, both

24   computers, phones, and then a hidden camera that looks like a

25   USB charger, all of which was found at the residence and then

```
 1    derived from the search warrant.
 2              THE COURT:  So the items seized from the residence.
 3              MR. CENTRONE:  Yes, sir.
 4              THE COURT:  And what else, if anything?
 5              MR. CENTRONE:  All the information provided by Yahoo
 6    in response to its search warrant, because as we discussed
 7    earlier, the bases for the two were identical and my argument
 8    will be that therefore they contain the same flaws and then
 9    should also -- the results therefrom should also be suppressed.
10              THE COURT:  Anything else?
11              MR. CENTRONE:  No, I believe that's it, Your Honor.
12              THE COURT:  Okay.  Ms. Favorit, any questions there
13    or objections or anything to that effect?
14              MS. FAVORIT:  The hidden camera specifically was not
15    obtained through the warrant, so I would have an objection to
16    that being included as evidence obtained from the residence.
17              THE COURT:  Was the hidden camera at the residence?
18              MS. FAVORIT:  It was at the residence but it was
19    provided later from the victim and her mother.
20              THE COURT:  Okay.  Mr. Centrone?
21              MR. CENTRONE:  That is not my recollection, Judge.
22    My recollection was that there -- there was one discovered on
23    the day of the warrant and then a second one that did not have
24    any -- basically any information on it that was provided later.
25    I guess since I haven't looked at it, I can't be 100 percent
```

1    positive, but that's my recollection right now, and I'll look

2    deeper into that today so I can get clarity on that.

3           THE COURT:  As far as proof is concerned, it would

4    seem -- Ms. Favorit, I'll begin with you -- that the challenge

5    is to the items seized at the residence pursuant to the

6    warrant, so you may want to address -- the parties may want to

7    address tomorrow is this item one of two perhaps hidden cameras

8    or such devices were seized as part of the warrant so the Court

9    knows, and I would expect the parties to talk about that in

10   advance to see if there's an agreement, because you're looking

11   presumably at the same reports.

12          Outside of that one item, Ms. Favorit, any concerns?

13          MS. FAVORIT:  Not at this time, Your Honor.  I will

14   review the evidence that was obtained so I have a better

15   response for Your Honor tomorrow.

16          THE COURT:  Okay.  And if you would talk with

17   Mr. Centrone, maybe it makes sense -- and we'll open the doors

18   here -- are we starting at 9:00?

19          MR. CENTRONE:  Yes, sir.  Yes, Your Honor.

20          THE COURT:  Okay.  We'll open the doors at 8:30 so

21   you can get situated and talk, if you wish, which it appears

22   that you would be well-served to do.

23          The Court had asked for supplemental briefing on the

24   standard for a state actor.  Mr. Centrone you had the

25   *Washington* case, which is a 1983 matter.  The Court has

1    provided the parties with other cases, or at least these cases

2    have come to light, *Steiger* or *Steiger*, and *Propst* or *Propst*,

3    Steiger being 318 F.3d 1039 and Propst being 369 F.Appendix 42.

4           Ms. Favorit, have you been able to develop case law?

5    Because I don't know that the Court received the type of

6    submissions it was looking for on the standard for state actor.

7    There will be an opportunity, as I've indicated, likely, to

8    brief this after the fact, but in terms of tailoring evidence

9    or proof tomorrow, any thoughts there?

10          MS. FAVORIT:  I'll have to look into that and compare

11   my supplemental briefing with -- so you're looking for

12   something in response to standard for state actor?

13          THE COURT:  Yes.

14          MS. FAVORIT:  Okay.

15          THE COURT:  And I think there's some cases that have

16   been cited here throughout the course of the proceedings, I'll

17   have to go back and look at your supplemental submissions again

18   myself, but I just want to make sure that the parties have

19   provided the Court with whatever their best effort is in terms

20   of the applicable standard, for a number of reasons.  It

21   obviously puts the Court in the best position to make an

22   informed decision on the matter, but also obviously assist the

23   parties in making an informed presentation of the requisite

24   evidence that would apply.

25          So you may want to address that before we kick off

1  tomorrow, but --

2          MS. FAVORIT:  Yes, Your Honor.

3          THE COURT:  Okay.  Mr. Centrone, anything you wish to

4  add?

5          MR. CENTRONE:  No, Your Honor.  My -- my supplemental

6  brief did address the *Steiger* and *Propst* cases, and --

7          THE COURT:  That's what I recall.

8          MR. CENTRONE:  And why I don't -- they do lay out a

9  standard, although, to be honest, there's not much analysis to

10 it in those cases, so I feel comfortable with the briefing as

11 it stands right now, but obviously we'll address it once all

12 the evidence is in.

13         THE COURT:  Have you been able to find any other

14 authority?

15         MR. CENTRONE:  I did cite a case, *Burgos Montes*, in

16 my -- in my supplemental brief that I think factually is -- is

17 more akin to this case because it -- you know, the *Steiger* case

18 was an anonymous foreign hacker who refused to cooperate with

19 law enforcement after essentially providing an anonymous tip;

20 and then Propst was a bail bondsman who was led into a hotel

21 room by a security guard who happened to be an off-duty police

22 officer and made the argument that because he was an off-duty

23 police officer, therefore it turned into a state act.  Both

24 those were rejected in that case.

25         The *Burgos Montes* case is much more interesting

1    because that involved an informant who had been specifically

2    instructed by the DEA to not collect physical evidence when it

3    knew that that informant was going to be living with the

4    target.  Initially -- well, to back up, the informant did end

5    up obtaining physical evidence against the DEA's wishes, the

6    DEA said, hey, don't do that anymore, which he did it again,

7    and kept living in the house with the target.

8              Initially the magistrate denied the motion to

9    suppress, but it was overruled by the District Court, and

10   I think that the key takeaway from that case is where the

11   Government has -- has effectively engagement with both -- the

12   phrase they use is constant and ample opportunity to obtain

13   physical evidence, it can't just stick its head in the sand and

14   say, well, we didn't -- as the Government did there, well, we

15   didn't instigate her -- this informant doing that, we didn't

16   ask her to do that, but it knew it was happening, and the --

17   and the evidence was suppressed.

18             So I think that's a factually closer analogy to what

19   we're dealing with here than the facts of either the *Steiger* or

20   *Propst* case, although I believe they all lay out the standards

21   very much in the same way.

22             THE COURT:  Okay.  Anything you wish to add,

23   Ms. Favorit, at this point?

24             MS. FAVORIT:  Not at this point, Your Honor.

25             THE COURT:  Okay.  There's also been a number of

1    items by way of affidavits that have been tendered on behalf

2    of, among other entities, Yahoo and NCMEC.

3          Ms. Favorit, do you intend to call any witnesses from

4    either of those entities?

5          MS. FAVORIT:  Your Honor, at this time we haven't

6    intended to call witnesses from those agencies until the burden

7    has been established other than just mere allegations as to why

8    it should be suppressed at this point.

9          THE COURT:  Well, this -- this is the issue though.

10   Tomorrow is an evidentiary hearing, and the Court doesn't want

11   to engage in a piecemeal fact finding exercise, so one of the

12   reasons I scheduled this, initially, you know, a week out or

13   more was to make sure that we're not going to proceed in a

14   piecemeal fashion, so --

15         MS. FAVORIT:  Your Honor, my understanding is they'd

16   be the exact same witnesses that I would be Crossing if

17   defendant was to put on witnesses from those companies, and if

18   he's able to establish a burden for a motion to suppress then

19   I'd be able to call them to establish any facts that I would

20   need to rebut that burden that was established.

21         THE COURT:  Mr. Centrone, then I'll -- the suggestion

22   here is that you're going to call Yahoo and NCMEC witnesses?

23         MR. CENTRONE:  I am, and they've been subpoenaed, and

24   I'll circle back to that in a second, but I think one of the

25   most factually unknown issues that we have with respect to this

1    motion is with respect to the scope of the private search, and

2    I want to clarify that that's the Government's burden, that's

3    not my burden.

4            I've subpoenaed NCMEC and I've heard from NCMEC that

5    they were planning to be here.  Ms. Favorit and I were talking

6    before court this morning, Your Honor, and Yahoo has also been

7    subpoenaed, they've been served since August 26.  I inquired as

8    to whether Ms. Favorit had heard from them, because I had not,

9    and she said that they are taking the position they have not

10   been subpoenaed.  I'm going to be filing the returns of service

11   when I -- when I get back to the office.  I have them here.

12           I also would not prefer to engage in piecemeal

13   fact finding if at all possible, but in terms of the burden

14   here, I think I -- I have to take the position that if they

15   don't -- if they don't meet their burden through their own

16   witnesses, with respect especially to the scope of a private

17   search and how that transpired, then I'll probably be objecting

18   to a continued hearing to give them more opportunity to do that

19   when they haven't done it so far.

20           THE COURT:  I think the long and the short of it is,

21   this is to both parties, you should be expecting to proceed

22   fully on these issues and not count on the Court deeming one

23   side or the other to have a particular burden.  The Court

24   hasn't decided that, and again, I do not want to have to delay

25   the case further for another hearing and the parties should not

1    expect that the Court is going to do that.

2              I'll fast forward in terms of the points, just to

3    cover another matter.

4              On the Franks hearing, I am well-aware that there's

5    this threshold showing that has to be made.  It's an open

6    question as to whether that will be satisfied.  That said,

7    Ms. Favorit, there is a number of cases, because I've dealt

8    with this issue in the past, where Courts have just proceeded

9    on the entirety of the Franks inquiry with the idea that once

10   all the evidence is before the Court it will deal with the

11   threshold issue of whether there's been a sufficient showing,

12   and then it has the benefit of the testimony -- if it were to

13   find that the showing has been satisfied, it has the testimony

14   in evidence to address that secondary issue.

15             So in putting together a report and recommendation

16   for the District Judge, that's ordinarily how the Court would

17   proceed and has proceeded in the past, so everything is before

18   the Court on the Franks hearing.

19             So your thoughts?

20             MS. FAVORIT:  Your Honor, the Government wouldn't put

21   a witness on the stand for the defense to have the opportunity

22   to cross-examine our lead agent for our trial to establish if

23   he has a threshold, mostly because we don't believe it will be

24   met, especially with the facts before Your Honor.  This is not

25   something we'd be willing to give the opportunity to

1    cross-examine a witness without -- with --

2         THE COURT:  Let me just have you pause for a moment.

3         The concern the Court has is when the Government

4    tells the Court that it's not willing to do something, that's

5    concerning, so -- the reason I say that is the Court has to be

6    concerned with conserving its own resources, judicial

7    resources, so, Ms. Favorit, a number of courts -- and this has

8    occurred to me when I used to be in your shoes, that I would

9    just end up putting on proof on something because it would have

10   to be covered, so that's the way the Court ordinarily would

11   proceed.

12        The examination of a witness though is limited to the

13   issue at hand, so I would not envision that the Court would

14   allow -- we'll have to see how it goes, but I would not allow a

15   broad deposition of a witness, it's targeted towards the

16   particular issues that are before the Court.

17        What I don't want to do, if the burden is met, is

18   come back.  So I understand, like any litigant, that you want

19   to protect your witness as best as possible, but you understand

20   the Court's concern that it doesn't want to come back and

21   have -- after issuing a report and recommendation, sending it

22   up to the District Judge, and the District Judge saying,

23   you know, I think the burden has been met, have another

24   hearing, and now we're six months later or three months later,

25   just strikes me as being inefficient.

1          I fully appreciate the fact that there is a burden to

2    be met, but putting an agent on the stand to just -- to deal

3    with that just strikes me as not as large a lift as you're

4    suggesting.  Am I missing something?

5          MS. FAVORIT:  No, Your Honor, and I shouldn't have

6    said "isn't willing to," that is not how I should speak to the

7    Court.  I apologize for that statement.

8          THE COURT:  I understand.  I'm not taking great

9    umbrage at anything.  I appreciate the concern and I appreciate

10   the fact, as I said, that there's a burden, but what I don't

11   want to have happen is once everything is briefed and the Court

12   decides, well, either there's an open question and I want to

13   make sure that the presiding District Judge has it before him,

14   the issue, to call back the parties.  That strikes me as being

15   very inefficient.  So it very well may be that the burden is

16   not met, but --

17         MS. FAVORIT:  I understand, Your Honor.  I will

18   consult with my co-counsel and my supervisors at my office to

19   decide how we will proceed with that concern that Your Honor

20   has.

21         THE COURT:  Okay.  And one way to address it, and I

22   can't make preliminary rulings and I won't, because that's not

23   within my purview of making a report and recommendation, but,

24   Mr. Centrone, there is a burden here, and I've dealt with this

25   issue in other, actually, cases of this type -- I believe I had

1    one, Ms. Favorit, with one of your colleagues about a year ago,

2    where we -- if I'm not mistaken, we went into both elements of

3    the Franks hearing.  I characterize it as both elements.  It's

4    just -- assuming the showing had been made.

5             Mr. Centrone?

6             MR. CENTRONE:  Thank you, Judge.  And I've -- I've

7    handled the -- the issue, exactly what you're describing, in

8    the past.  Frankly, it just wasn't an issue.  I certainly don't

9    intend for my line of questioning to turn into a deposition,

10   and I've already got a draft and it's focused on the issues at

11   hand.

12            In full transparency, I have not subpoenaed

13   Detective Keller myself because I assumed the Government would

14   be producing him, kind of in the way that it does.  He's the

15   case agent.  He's the lead law enforcement officer.  That's --

16   he was present at the last -- at the last hearing as well.

17            If -- if the Government is not going to produce --

18   produce him, then -- then I need to ask for a continuance to

19   subpoena him myself, but if the Government intends to produce

20   him, Detective Keller, then I understand Your Honor's point and

21   am fully prepared to address both the threshold issue and the

22   ultimate issue by way of the final briefs after the -- after

23   the hearing.

24            THE COURT:  Ms. Favorit, this is an issue that has

25   long been before the Court, well before my time on the bench.

1    I would expect the agent to be here.  I don't recall situations

2    where a defense attorney has been required to formally subpoena

3    a witness or abide by the Touhy regulations.

4              Any objections to that?

5              MS. KING:  Your Honor, if I may, Abigail King, for

6    the record.

7              In preparing for the potential Franks argument, we

8    have had discussions with higher-ups in the office.  It was

9    indicated to us that we would be expected to go through the

10   Touhy regulations, that the witness Detective Keller had not

11   been subpoenaed, it was not for us to produce him.  That being

12   said, obviously we have no intention of obstructing or not

13   providing the witness to the Court, it just will be an

14   additional conversation that we need to have with higher-ups in

15   the office based on the understanding that the Touhy

16   regulations haven't been triggered because Detective Keller

17   hadn't been subpoenaed.

18             THE COURT:  I can tell you in 15 plus years at a

19   U.S. Attorney's Office I'm well-aware of the Touhy regulations.

20   I don't recall them ever being invoked for any proceeding,

21   so --

22             MS. KING:  It is just --

23             THE COURT:  Who is the supervisor on the case?

24             MS. KING:  Ms. Harris.

25             THE COURT:  Okay.

1          MS. KING:  We will have that conversation.

2          THE COURT:  I'd be curious to know if you'll cite

3    another case in this courthouse where the Touhy regulations

4    have been invoked for a suppression hearing on the lead witness

5    or the lead agent on the case.

6          I'm not interested in this being more than it is,

7    this is a very straightforward suppression hearing, it doesn't

8    have to be complicated by the Touhy regulations or by something

9    being overly burdened, but the Court is not interested in

10   setting any kind of unique precedent here, whether it's

11   relative to how a witness is to be brought into court who is

12   the lead agent on the case or on the Franks issue.  I'm just

13   trying to conserve resources, so --

14         MS. KING:  The Government does not anticipate it

15   being an issue, that is just where we stand right now with

16   information from higher-ups, so we will obviously have an

17   answer for tomorrow and I don't think either of us anticipate

18   that being a problem.

19         THE COURT:  If it is then the Court may continue the

20   hearing and I'll hear argument on it tomorrow, so you're just

21   looking at postponing it further, potentially, for what

22   ordinarily is a formal -- formality.

23         I've worked with the Touhy regulations on the civil

24   and criminal side, and while they're often invoked by the

25   department on the civil side when it deals with somebody who is

1  in a high place of authority within the Executive Branch, in my

2  time in this courthouse and in another I can't recall a single

3  instance, maybe I'm missing something, where the Touhy

4  regulations were invoked.  So I would expect you to have the

5  lead agent here anyway.  A lead agent is typically at every

6  hearing, if tradition tells us anything, so I would expect that

7  here, and I'll hear argument on it tomorrow, but I would

8  encourage the parties to not make more of a simple

9  straightforward suppression hearing on a child pornography case

10 and force the parties and the Courts to jump through a number

11 of hoops just to get to the same end point, so --

12           MS. KING:  Yes, Your Honor.

13           THE COURT:  Okay.  Mr. Centrone, anything you wish to

14 add on that?

15           MR. CENTRONE:  Just for the record, in my 16 plus

16 years of Federal criminal defense I've never had to subpoena a

17 law enforcement agent.  It's always been a given.  Frankly,

18 I've never given it a whole lot of thought.  And, number two, I

19 would expect the Government would want him here anyway, because

20 I suspect they would -- they'd be using him to bolster their

21 argument against the private search arguments, but I also do

22 not want to make more of this than it is.  I'm prepared to go

23 forward, if Detective Keller is here tomorrow, on those issues.

24           THE COURT:  Okay.  Those appear to be the matters

25 that the Court had identified, Ms. Favorit.  Anything else?

1    You have a concerned look on your face.

2              MS. FAVORIT:  I'm sorry, I don't mean to look

3    concerned.  You're smiling and I was like, maybe I'm missing

4    something.

5              THE COURT:  I'm glad we had the hearing, as I always

6    am whenever I do this, because there tend to be some issues

7    that are worthy of discussion.

8              MS. FAVORIT:  Yes.

9              The last thing on the Franks hearing, and I know this

10   is Ms. King's portion, however, it wasn't my understanding that

11   the evidentiary hearing had been granted for that portion.

12   I know that the burden had to be established to grant the

13   evidentiary hearing, and the defendants are supposed to provide

14   sworn affidavits to establish that burden to even get a

15   hearing, so I think us walking into this for the Detective

16   Keller portion, I -- it was not my understanding that the

17   Franks hearing had been granted, and if it was, I apologize,

18   Your Honor, for misunderstanding, but that was my thought, that

19   they hadn't established to even get a hearing on the Franks

20   issue.

21             THE COURT:  Mr. Centrone?

22             MR. CENTRONE:  And the way Your Honor described

23   earlier, that's how I've always done it on both issues, both

24   the threshold and the ultimate issue.  I'll just say that I'm

25   prepared to go forward on all issues tomorrow, and Your Honor

1    can decide after the fact what the significance of the evidence

2    is.

3            THE COURT:  So, Ms. Favorit, let me come back to you.

4            I'd like to go back and look at the Court's orders,

5    and if the Court wasn't sufficiently clear on the matter,

6    I can't speak to that now, but I'm raising the issue.  Now that

7    I've highlighted the issue, are you looking for a continuance?

8    That would be one way to address it.

9            MS. FAVORIT:  May I have a moment, Your Honor?

10           THE COURT:  Absolutely.

11           MS. FAVORIT:  Thank you.

12           Your Honor, if I may.

13           THE COURT:  Absolutely.

14           MS. FAVORIT:  Just referring to the original

15   United States' response in opposition to the defendant's motion

16   to suppress, just for clarity purposes, I know when you look at

17   the Franks elements to establish the requirement for a hearing,

18   I think what I need to know is is that something we will

19   address tomorrow, if a Franks hearing will be granted, or if

20   that's being -- that has already been established.

21           On page 13 of doc 48, which may not be helpful but I

22   could read it:  If a defendant satisfies --

23           THE COURT:  I do know -- I've written on this matter

24   and litigated it previously, so I'm well-aware of the standard.

25           As I mentioned to you earlier, I fully appreciate

1    that there's a threshold showing that needs to be made.  The

2    question I have in suppression hearings like this and I've

3    dealt with in the past is this matter is before the Court, and

4    so I understand that in the ordinary course one could look at

5    it if you were just having a Franks hearing request and you

6    didn't have anything else, here we do, we have witnesses coming

7    in, we have -- potentially there could be other things that

8    your agent could speak to, but what I don't want, just to

9    reiterate, knowing the standard and knowing the threshold

10   showing that has to be made, is to come back.

11        So I appreciate the Government's desire to hold to

12   the standard which requires a threshold showing, and I also

13   understand the Government's desire not to have its agent

14   testifying if the standard is not met, but just to play this

15   out, if you would, it ends up being a fairly elongated process,

16   and you're imposing, given this particular case, a lot on -- a

17   fair amount on the Judiciary, right, because a magistrate judge

18   has to review it, theoretically, under your thinking, because I

19   can't make a dispositive ruling, it has to go up to the

20   District Judge, then come back down.  You can understand the

21   desire not to have two different judges look at this issue

22   twice.

23        So that's why there is case authority where judges

24   have scheduled a Franks hearing and -- which don't come up

25   often, there aren't that many situations where you have a

1  Franks hearing and you don't have this particular circumstance,

2  so in an effort to make clear the particular circumstances here

3  as opposed to maybe your run-of-the-mill case if there's a

4  Franks challenge, the Court is going to issue a report and

5  recommendation one way or the other, on a broad array of

6  issues, to include this one, so I'm trying to do it in the most

7  efficient way possible, with the understanding, without a

8  promise attached to it of any kind, that the issue is limited,

9  I think, on the Franks challenge if the agent were to testify.

10 It's not a wide-ranging deposition about all matters having to

11 do with the search, for example.

12        Mr. Centrone, I'll -- just to make sure, I don't see

13 anything, at least off the top of my head, that I can think of

14 that would entail inquiry of the agent as to the actual search

15 as it relates to this Franks challenge.

16        MR. CENTRONE:  Neither do I, Your Honor, and that is

17 not where I intend my questioning to go.

18        THE COURT:  Wouldn't it be limited to events

19 involving the agent that preceded or led up to the submission

20 of the warrant?

21        MR. CENTRONE:  That's -- that's going to be the vast

22 majority of it, yes, Your Honor.  Now, that covers both -- and

23 I think there's some overlap here -- the Franks issue, but also

24 the private search issue in terms of what was done and

25 Detective Keller's role in that.

1           THE COURT:  And you're envisioning calling the agent

2      on the private search issue?

3           MR. CENTRONE:  Like I said earlier, I expected the

4      Government would, since it's their burden.  I was -- I was

5      expecting to cross-examine Detective Keller on those issues.

6           THE COURT:  Ms. Favorit, did you envision putting the

7      agent on, the lead agent here, on the private search issue?

8           MS. FAVORIT:  I didn't envision that, Your Honor.

9      That wasn't part of my preparation for the hearing, mostly

10     because I didn't believe any burden for the motion to suppress

11     had been met, and so I didn't believe that I had any reason to

12     put on a witness to establish for those limited purposes.

13          THE COURT:  Mr. Centrone?

14          MR. CENTRONE:  I -- I --

15          THE COURT:  Let me just make it simple, without

16     putting the Court in the position of deciding burdens, because

17     it's not prepared to do so, this is simply a scheduling

18     conference of sorts.

19          It sounds to me that you intend to call the lead

20     agent.

21          MR. CENTRONE:  I'm -- I'm ready to go forward

22     tomorrow on all issues, including issues that have to do with

23     Detective Keller.  If the Government needs more time because

24     they --

25          THE COURT:  Well, if the Government -- let me just

```
 1   say this, just to keep it perhaps focused on this particular
 2   issue.  The Government is not going to call the lead agent on
 3   the private search issue, so there's no cross-examination to be
 4   had.
 5              MR. CENTRONE:  Uh-huh.
 6              THE COURT:  Are you then intending to call the lead
 7   agent on that issue?
 8              MR. CENTRONE:  Yes.  Yes, I'd still have questions
 9   for the lead agent.
10              THE COURT:  Ms. Favorit?
11              In other words, what's being represented is that if
12   you're not going to call the lead agent, Mr. Centrone will.
13              MS. FAVORIT:  I understand that, Your Honor.  We will
14   make sure that he's present, and again, we will discuss with
15   our office about judicial efficiency for the hearing in our
16   preparation.  We don't have a reason to move to continue at
17   this moment.  We can be prepared on any of the issues that
18   are -- have been brought up this morning.  I don't think that
19   will be a problem.
20              THE COURT:  Okay.  So just to be clear, I would have
21   anticipated the agent being here irrespective of any of these
22   issues, but perhaps I was being too presumptuous, but the lead
23   agent will be here?
24              MS. FAVORIT:  I will make sure he is here tomorrow,
25   Your Honor.
```

1         THE COURT:  Okay.  And will be -- will he be prepared

2    to testify?

3         MS. FAVORIT:  I believe that he will be, Your Honor,

4    after discussing with my office today.  I'm not trying to be

5    difficult.  I'm trying to be as honest as possible if our

6    situation -- our game plan is certainly changing for tomorrow,

7    based on the discussions, and I understand the need for

8    judicial efficiency, so we will do what we can to make sure we

9    abide by that.

10        THE COURT:  If the -- if the Government needs a

11   continuance, it can certainly request one, but rather than

12   getting to the 12th hour for that, I would suggest --

13        MR. CENTRONE:  And -- and, Judge --

14        THE COURT:  Mr. Centrone?

15        MR. CENTRONE:  Thank you.

16        I would not -- out of mere professional courtesy,

17   I would be no -- I would have no opposition to a continuance.

18   The only issue is NCMEC is -- someone from NCMEC is flying down

19   today.

20        THE COURT:  That's exactly what I was thinking about.

21   So --

22        MR. CENTRONE:  So the sooner -- the sooner we know

23   this, the better.  I'd want to be able to give them as much

24   notice as possible.

25        THE COURT:  Let's do this.  We'll go ahead with the

1  hearing tomorrow as scheduled, and if there's a desire to

2  continue the hearing after that, we can address it at that

3  point.

4              Fair enough, Ms. Favorit?

5              MS. FAVORIT:  Yes.  I do wonder -- it seems there's

6  still an issue of the Yahoo representative.  I spoke with them

7  on Friday to see if they had received a defense subpoena, in

8  preparation for the hearing, and they had not, so I do not

9  believe as of Friday, you know, things change over the weekend,

10 anything had been made for them to be present for tomorrow's

11 hearing, so I spoke with defense prior to this hearing and he

12 said that he had served them, and, of course, I am not Yahoo,

13 I don't know how their service works, I was only representing,

14 you know, what the witness had told me.  So I would like to

15 check in with Yahoo to see if they are sending a representative

16 tomorrow, because if they -- if something happened with the

17 subpoena or the service, you know, we could be at risk of not

18 having a witness for Yahoo for the defense tomorrow.

19             THE COURT:  Well, it's the defense witness, it sounds

20 like, right?

21             Mr. Centrone, you're the only one that subpoenaed --

22 Ms. Favorit, have you subpoenaed Yahoo?

23             MS. FAVORIT:  I did not, Your Honor.

24             THE COURT:  Okay.

25             MR. CENTRONE:  Correct, Your Honor.  As I indicated

1   earlier, they were served.  They were served on August 26th.

2   I served both a corporate representative and the unidentified

3   person involved in this particular cyber tap.

4           Again, it's my position, and you don't need to decide

5   this today, but establishing the scope of a private search is

6   the Government's burden, so if they're not here, again, I'll --

7   I'll likely have to object to continued hearings.

8           THE COURT:  So two observations to both sides on the

9   Yahoo witness, neither of whom -- neither party has Yahoo as

10  its client, so it's a third-party, but my thought for Yahoo is

11  if Mr. Centrone is correct and the Yahoo witness has been

12  validly subpoenaed and doesn't show up tomorrow, now it's a

13  matter before the Court that probably -- and the Court would

14  fully hear from Yahoo on the matter, might end up, depending on

15  the facts and information put before the Court, end up adverse

16  to Yahoo in some respect, and then, Ms. Favorit, and to

17  Mr. Centrone, as to who you call at these hearings, it's your

18  case, not the other side's, and it's certainly not the Court's

19  case, but once this hearing closes with this issue of the

20  Franks matter to be resolved, then the parties will be asked if

21  they rest, and if they don't rest the Court will be curious as

22  to why they're not resting.  I don't intend to have multiple

23  hearings on what ought to be a relatively straightforward

24  suppression hearing with some interesting issues having to do

25  with state actors and expectations of privacy.

```
 1            So if you don't put on evidence on something and the

 2   Court, after researching the matter, deems that one side or the

 3   other bears a burden that they haven't met, then that would

 4   seem to me, unless I'm missing something, the end of it, the

 5   party would be deemed to perhaps have waived on the matter.

 6            So, Ms. Favorit, I would say to both parties to

 7   exercise due caution here about how they proceed because of the

 8   possible consequences, and that goes to both sides.  If one

 9   side or the other assumes there's a burden, there's no ruling

10   made by the Court on any of these issues, so I don't know why

11   the Court would be reopening the hearing if you get an adverse

12   ruling.  That is not how the Court intends to proceed.

13            This is an issue that I've dealt with in the past

14   with respect to hearings, evidentiary hearings, and I've done

15   in the past to the party -- one party's detriment, they had a

16   misunderstanding and the proof closed and an order was issued

17   that they were precluded from tendering any further evidence

18   and that was the end of the matter.

19            I'm not trying to be overly Draconian with the

20   parties, but this is not supposed to be some extended

21   proceeding that goes on as issues are fleshed out and then

22   parties are -- the matter is reopened or continued so you can

23   address the next issue and the next issue and the next issue.

24            Ms. Favorit, any reason to think that the Court is

25   missing something here?
```

```
 1              MS. FAVORIT:  No, Your Honor.  I do have concerns
 2     about preparation for tomorrow at this point, mostly because,
 3     you know, of course, we hoped that this hearing would have been
 4     last week so we'd have a couple days to prepare.  I don't want
 5     to put the NCMEC witness out if they are flying in today, but
 6     it seems like with all of these issues it may be in the
 7     Government's best interest to move to continue the hearing to
 8     have a few more days to prepare in case we need to track down
 9     the Yahoo witness, to see about their service, the fact that
10     the second warrant is also included in this motion to suppress,
11     the one that was for the Yahoo company, and then --
12              THE COURT:  Let me just say on these issues -- I just
13     want to make sure, the reason I raised these issues is to see
14     if there's any disagreement.
15              So, first of all, the Court is aware going into the
16     hearing what's at issue, but if one side or the other disagrees
17     with -- for example, that the second warrant is part of the
18     motion, that's why I ask any concerns or objections by either
19     side as to representations that are being made here.
20              So I appreciate what you're saying.  Let me just see
21     if I can make this easier on both sides.
22              Let's go ahead with the hearing tomorrow as to the
23     witnesses that have been subpoenaed, that includes Yahoo when
24     Yahoo is here, apparently NCMEC, and the Court will take
25     evidence tomorrow, and then we'll talk about continuance, and
```

```
 1   we can -- I don't want this to be overly complicated, so it
 2   seems to me that rather than put these witnesses out and create
 3   more confusion and have Mr. Centrone have to resubpoena them,
 4   that we simply go forward on what we have and then set the
 5   matter for another day to finish.
 6            Ms. Favorit, any reason to think that wouldn't be
 7   appropriate?
 8            MS. FAVORIT:  No, Your Honor.
 9            THE COURT:  Okay.  Mr. Centrone?
10            MR. CENTRONE:  No.  Just to clarify, that would also
11   include the lead case agent tomorrow as well, based on our
12   earlier discussion, correct, having him here tomorrow?
13            THE COURT:  Ms. Favorit?
14            MS. FAVORIT:  Just to reiterate, we haven't,
15   you know, had an opportunity to discuss with our office about
16   any change in circumstances with allowing him to be called
17   without having a subpoena or notice; however, I will make him
18   be present.
19            THE COURT:  I'll hear argument on that tomorrow.
20   It seems to me that's a matter that can be readily addressed.
21   I would be surprised if the Government is insisting on
22   compliance with the Touhy regulations, if they apply, we
23   haven't even talked about that, and are asking for a subpoena.
24   I would think that that would be an anomaly, if it is, but I'll
25   wait to hear from the Government as to why -- if this is an
```

1    anomalous situation, why they're doing something different,

2    that would be curious, because it's imposing on the Court, but

3    I'll wait until tomorrow.

4         So, Mr. Centrone, you and Ms. Favorit can communicate

5    about these matters, and if Ms. Favorit can get an answer to

6    you then about the lead agent being here and you can proceed

7    with the lead agent on an issue that we can dispose of and

8    Ms. Favorit has indicated that some of the things that have

9    been mentioned here have been other than what she anticipated,

10   so in fairness to the Government, we can come back on another

11   day, but at least we would be doing this in one hearing,

12   admittedly taking place over a couple of days, but any reason

13   to think that wouldn't be appropriate?

14        MR. CENTRONE:  No, Your Honor.  I understand that

15   sometimes these things you have to see how they play out, and

16   that's not a problem.  I do want to clarify that page 18 of my

17   motion to suppress does say the warrant applications for both

18   Mr. Williamson's residence and Yahoo contain the same defects,

19   so it's -- I -- that's what I was expecting to go forward on,

20   for the record, but, again, I understand these things happen.

21        So my suggestion is the same as Your Honor's, let's

22   try to cover as much ground as we possibly can tomorrow and

23   then address what's left and have it go forward.

24        THE COURT:  I'm on duty next week, so it would be

25   challenging to do it the next week.  I possibly could,

1    depending on how long it would be, which may push it into the

2    following week, and then we have the issue of the transcript

3    and all that, but you might want to talk to your office about

4    what you can do in that regard, Ms. Favorit, getting the

5    transcript quicker.  I understand budgets are tight though, and

6    I believe when these issues have come up in the past I've

7    gotten various answers, they always haven't, I don't believe,

8    been the same, but I'll wait to hear from you.

9            So we've been going about an hour.  Ms. Favorit,

10   anything further from the Government?

11           MS. FAVORIT:  No, Your Honor.

12           THE COURT:  Thank you.

13           Mr. Centrone, anything further from the defense?

14           MR. CENTRONE:  No, Your Honor.  Thank you.

15           THE COURT:  All right.  We'll be in recess until

16   tomorrow morning.  Thank you.

17                      - - - - -

18           (Proceedings concluded at 12:02 p.m.)

19                      - - - - -

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3          This is to certify that the foregoing transcript of

4    proceedings taken in a miscellaneous pre-hearing in the United

5    States District Court is a true and accurate transcript of the

6    proceedings taken by me in machine shorthand from a digital

7    audio recording and transcribed by computer under my

8    supervision, this the 13th day of August, 2024.

9

10

11                                    /S/ DAVID J. COLLIER

12

13                            DAVID J. COLLIER

14                            OFFICIAL COURT REPORTER

15

16

17

18

19

20

21

22

23

24

25