```
 1                    UNITED STATES DISTRICT COURT
                      MIDDLE DISTRICT OF FLORIDA
 2                         TAMPA DIVISION

 3   UNITED STATES OF AMERICA,   )
                                 )   8:21-cr-355-WFJ-CPT
 4           PLAINTIFF,          )   Tampa
                                 )   March 13, 2024
 5           v.                  )   9:00 a.m.
                                 )
 6   GREGORY ALLEN WILLIAMSON,   )
                                 )
 7           DEFENDANT.          )

 8                             DAY 3
                      TRANSCRIPT OF JURY TRIAL
 9           BEFORE THE HONORABLE WILLIAM F. JUNG
                   UNITED STATES DISTRICT JUDGE
10
     APPEARANCES:
11
     For the Government:
12       MS. ERIN CLAIRE FAVORIT
         MS. LINDSEY NICOLE SCHMIDT
13       United States Attorney's Office
         Suite 3200
14       400 N. Tampa Street
         Tampa, FL 33602-4798
15
     For the Defendant:
16       MR. BJORN ERIK BRUNVAND
         MS. WILLENGY RAMOS-WICKS
17       Bjorn E. Brunvand, PA
         615 Turner Street
18       Clearwater, FL 33756

19


20


21

     Court Reporter:          Tracey Aurelio, CRR, RMR, RDR
22                            Federal Official Court Reporter
                              801 N. Florida Avenue, 15th Floor
23                            Tampa, Florida 33602
                              (813) 301-5448
24
             Proceedings recorded by mechanical stenography,
25   transcript produced by computer.
```

1                    I N D E X

2   Closing Argument by Ms. Favorit                    4
    Closing Argument by Mr. Brunvand                  20
3   Rebuttal Closing by Ms. Favorit                   25

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1 _____

2      (Proceedings commenced at 9:00 a.m.)

3         THE COURT:  Everyone is here.  Does the defense have

4 a case, Counsel?

5         MR. BRUNVAND:  I was just confirming with my client.

6 Sorry.

7         We are going to rest, Your Honor.

8         THE COURT:  Do you want me to announce rest or would

9 you like to?

10        MR. BRUNVAND:  I can announce it, Your Honor.

11        THE COURT:  Does anybody have any more?  I think we

12 did what we said on the jury instructions.  Any issues on

13 that?

14        Very well.  Let's call them in.

15        MS. FAVORIT:  Your Honor, do you read the jury

16 instructions before closing?

17        THE COURT:  After.  But you can quote them, you can

18 shine them up on the machine, you can do whatever you want.

19        MS. FAVORIT:  Thank you.  I just wanted to make sure

20 we did the defendant testifying or not testifying and got

21 those accurate.

22        THE COURT:  I will make sure I correct that.

23        MS. FAVORIT:  Thank you.

24     (The jury returned to the courtroom:)

25        THE COURT:  Thank you, ladies and gentlemen.  Good

1    morning.

2            Mr. Brunvand, have you an announcement or statement?

3            MR. BRUNVAND:  Yes, Your Honor.  The defense would

4    rest.

5            THE COURT:  Very well.  The defense has rested.  So

6    we are going to go into closings.  And closings are called

7    arguments.  So that means the lawyers are allowed to argue.  I

8    call that waving your finger or whatever.

9            Since the government always bears the burden, they

10   are entitled under the rules to a second closing or a brief or

11   rebuttal argument if they choose to make it.

12           At this time, I believe it's Ms. Favorit, we will

13   recognize you for the government's first closing.  Thank you.

14           MS. FAVORIT:  Thank you, Your Honor.

15                      CLOSING ARGUMENT

16                 COUNSEL FOR THE GOVERNMENT

17           MS. FAVORIT:  These are the outward appearances of

18   Greg Williamson.  He takes Deea in at nine years old.  He's a

19   loving stepfather.  He is the sole provider for this family,

20   and he is a trusted father figure to Deea.

21           Behind closed doors we have secrets, secret video

22   camera, secret emails, and a secret collection of child

23   pornography.  Behind closed doors, he is grooming and enticing

24   his 12-year-old stepdaughter.  He is harassing her with

25   hundreds of emails, and he is sexually abusing her.

1          Deea's reality is very different from these outward

2    appearances.  She moved here at just nine years old.  She did

3    not even speak English.  She was a great candidate for

4    isolation and grooming by Greg Williamson.  You heard from

5    Deea.  She trusted him.  Her mom was busy with three small

6    children.  And the defendant began to spend more and more time

7    alone with her, as his responsibilities for her included

8    taking her to school, picking her up from school.  He began

9    this grooming by purchasing anything that Deea wanted.  All

10   she had to do was go ask him for it.  She had her own room,

11   her own cell phone, but he controlled things.  He controlled

12   the Wi-Fi.

13          He introduced sexual concepts to her from as young as

14   10 years old.  He was gradual.  He introduced these concepts

15   to her that she wasn't even aware of yet.  He started to hug

16   her inappropriately which morphed into more and more touching,

17   started over the clothing on her vagina, eventually he goes

18   under the clothing, moves from rubbing to penetrating her

19   vagina with his fingers and ultimately oral sex.

20          The defendant kissed her, inserted his fingers,

21   rubbed her vagina, touched her breasts, touched her butt.  And

22   when she was only 12, you heard about the bedroom incident.

23          There were hundreds of emails sent directly to Deea.

24   These came from multiple different email addresses which all

25   relate back to the defendant.  She trusted him.  She didn't

1  know who this email person was, and she was frightened.  They

2  were harassing her and scaring her, threatening to come see

3  her, asking her to provide photos or videos of her touching

4  herself.

5          Because she's scared, she goes to that trusted father

6  figure.  And instead of assisting her, he says just block the

7  email.  But lo and behold, they keep coming, because in truth,

8  that person was Gregory Williamson.  He would attach explicit

9  images and videos of child pornography and other pornographic

10 images.

11         And to go along with those gifts, he gifted her two

12 USB chargers because she had asked for a charger.  And instead

13 of them being just normal chargers, they're secret cameras.

14 It was easy for her to use.  She put two in her room.  You saw

15 her draw the picture of where they were located, but this is

16 also where her privacy and dignity were violated.  Her breasts

17 were exposed.  Her butt was exposed, and her vagina was

18 exposed.  Not only was she violated in this way, the defendant

19 saved these for his personal use on his Samsung Galaxy.  He

20 had a secret collection of child pornography of Deea.

21         Today we have charged Greg Williamson with eight

22 counts, and the judge is going to read all of the law to you.

23 So I wanted to talk briefly about those charges and what facts

24 we have here.

25         Before we get into those charges, how do we know that

1    this Vlad Vlad person is Greg Williamson?  We know this

2    through testimony and numerous exhibits including the forensic

3    evidence.  You will be instructed that you can use reasoning

4    and common sense to make deductions and reach conclusions.

5    These are all different points as to how we know

6    Vladlover50@Yahoo.com is Greg Williamson.  The IP address that

7    you heard records the address from the Internet source was

8    2575 Rolling Road.  That's the North Port, Florida, home where

9    the defendant and Deea lived.  You are going to hear -- or you

10   did hear that the recovery phone number from the Yahoo account

11   was previously assigned to Greg Williamson based on the

12   forensic evidence from the Samsung Galaxy.  We saw emails, for

13   example, the trucking emails where every once in a while Greg

14   Williamson would slip up, and in this case he sent some emails

15   angrily to someone who worked in the trucking business.  And

16   who works in the trucking business?  Greg Williamson.

17           You also heard Deea's testimony.  She was able to

18   tell you about what's going on behind the scenes, but she also

19   said eventually she did figure out and was shocked to see that

20   Vladlover50 email on his computer.  We also have some user

21   attribution.  There are things on the Yahoo account that other

22   people in this home would not be doing.  For example, in

23   Exhibit 1.18 is where he is seeking a young Asian on

24   Craigslist and replies to her.

25           We also heard evidence of the Gateway computer, which

again is his work computer that is in that office has evidence

of Vladlover50@Yahoo.com, and finally the context of these

emails.  The context include step-dads with stepdaughters,

Russian teens.  These are things that match the relationship

between Deea and Greg Williamson and his desire as to what he

wanted to happen.

      The first thing we have charged Greg Williamson with

is enticement.  You're going to hear the different ways that

we are required to prove enticement.  The judge will instruct

you that we have to prove elements.  So there are different

elements for each criminal charge.  So the first count is

called enticement, but the United States is required to prove,

one, that the defendant knowingly persuaded, induced, enticed,

or coerced, or attempted to persuade, induce, entice, or

coerce Deea to engage in sexual activity.  And "induce" simply

means to stimulate the occurrence of or to cause.

      So what methods of enticement do we have in this

case?  These are all the different senders of emails and all

the recipients.  From the Yahoo account, we have the sender of

Vladlover50, and the recipients are Deea's iCloud and two

different of her gmails.  We have evidence on the Samsung

Galaxy cell phone.  We have the dispatch email and the Ryan

email, which the recipients of those emails from those two,

again Deea's iCloud and one of Deea's gmails.  On the Gateway

computer, there are Vladlover50@Yahoo.com,

1   vladlover40@Yahoo.com, and Williamson_Gregory@Hotmail.com all

2   sending emails to Deea's two different gmails.  And in the

3   victim's iPhone, we have evidence that she did block

4   Vladlover40 on her phone.

5         This is a clippit of Exhibit 1.6A.  At this time,

6   Deea is 12 years old.  And the emails come from Vladlover.

7   The subject was, "Popping your cherry.  Would love so much to

8   pop your cherry and watch you have your first orgasm."  And

9   then we see the series of emails that was sent before and

10  after, all from the Vladlover search warrant.  And these are

11  the countless images of pornography photos and child

12  pornography that were attached to these emails.  And this

13  particular one, all of these photos were attached to this one

14  email.  He's doing this to entice her to engage in sexual

15  activity with her.  This is how the grooming happens.  He's

16  introducing the sexually explicit conduct showing her what it

17  looks like and verbalizing via this email what he wants to do.

18        The second element of enticement is that the

19  defendant used a cell phone or computer on the Internet to do

20  so.  We talked about the Gateway, the Samsung.  You need

21  Internet to send these emails and photos and videos.  And each

22  of these were made by manufacturers outside of the United

23  States.

24        This is another example from the Vladlover account.

25  This was an email sent to Deea from Vladlover.  "Watch the end

of this.  I want to cum all over your pussy like this while
making love."  And he has a hyperlink for tasty looking
Russian teen gets creamed after anal.  He's trying to entice
her into sexual activity.  We see the clips of emails before
and after he makes that statement, "Again making me cum.  I
love you."  And right after that is that young Asian girl.
That is not spam.  Those are sent not within seconds of each
other.  Those are sent specifically to Deea, specifically to
Craigslist.  This is not a spoof account that is accidently
attaching child pornography to emails to send out.

        Here is another email to Deea from Vlad Vlad.  "I
love you.  I want to make you pregnant," and he attaches a
picture of a pregnant child.  That is trying to entice her to
engage in sexual activity.

        The third element for enticement is to prove that
Deea was less than 18.  That's easy.  All of these emails
she's clearly under 18.  Another example, we have Vladlover to
Deea.  "Why are you mad at me, sweetness?  I'm so horny for
you right now.  I want to lick your wetness until you cum on
my face and fill your pussy up with my cum."

        The defendant communicated with Deea via email.  He
wasn't just Vladlover.  He clearly would speak to her via
email.  If you recall the exhibits where she had a selfie that
he had found, he emailed her, your mother's going to see this,
or don't let your mother see it.  So this is a form of how he

1  communicates with Deea.  And if you read the context and the

2  emails and then you read his work emails, this is the same

3  person.  He has the same tone.  He swears.  It's very similar.

4  So this is not a spam account.  This isn't somebody else

5  jumping on his work email real quick and then, okay, let's

6  jump on and send Deea pornographic images.

7          Element four is that one or more individuals engaging

8  in the sexual activity could have been charged with a criminal

9  offense under the law of Florida.  You are going to see -- I

10 will show you some Florida law and what this qualifies for,

11 but this is also super simple.  An adult cannot have sexual

12 activity with a minor in the State of Florida.  And we'll go

13 through those.

14         Another example, this is that work email we talked

15 about to Edward Miller.  And it's a shipping logistic.  And

16 you read the signature before.  It clearly had to do with

17 dispatching trucks.  And he emails him and says, "Eddy, Eddy,

18 Eddy, you are just a fat, old, delusional fuck that has no

19 idea what he is doing.  Your cancellations speak volumes."

20 That sounds like maybe an aggrieved person who is mad at this

21 individual.  Maybe he's competition.  We don't know, but this

22 is clearly Greg Williamson behind the Vladlover account.

23         Again, Deea is 12 years old.  "Subject:  Cream.  I so

24 much want to suck on your gorgeous tits while cumming all over

25 your sweet pussy."

1          Exhibit 6.7 was significant.  Deea said that Greg

2    Williamson started to email her in this way kind of after they

3    broke the ice of the sexual activity.  She had pushed him off.

4    She clearly did not want to do it but, one, she didn't really

5    know it was wrong until later; and, two, she just knew it felt

6    uncomfortable, but this is her trusted father figure and she

7    was afraid of him.  If you consider her family dynamic, her

8    mother, not born in the country.  She was not born in the

9    country, but her three little siblings were citizens of the

10   United States.  And the defendant had threatened her that

11   she'll go back to her home country, which, mind you, she has

12   never been back, and her siblings will stay and he'll keep her

13   siblings.  A 12-year-old child hearing that, that is

14   frightening, isolating, and part of the grooming.

15          This email corroborates Deea's testimony about the

16   sexual activity.  This is sent from dispatch.  This is his

17   work email.  And it wouldn't make a lot of sense for a spam

18   account or somebody else in the home who does not know about

19   the sexual activity to maybe break into his email and send

20   this.  It also says, "Sent from my Galaxy Note 8."  Who has

21   that?  Deea had an iPhone.  The defendant had a Samsung Galaxy

22   8.  Of course, you can type that in yourself.  Of course, you

23   could delete that if you wanted to and make it look like it

24   came from somewhere else, but that's not where this came from.

25   This came from his Samsung Galaxy.  So, you know, we're using

1  common sense.  This is about reasonable doubt, and it says

2  sent from his phone.  "So just because you wanted to be a big

3  girl a few months back does not make me a pervert."  And

4  remember, she had called him a pedophile.  "If that was the

5  case, then why did you come back for more and more and make me

6  go outside with you and finger your pussy until you finally

7  did cum?"  That context makes sense.  Those are the things he

8  is verbalizing to her after he gets some sexual activity from

9  her.  You wanted it.  You didn't stop it.  You came outside.

10 You didn't close the patio door.  This is kind of how he's

11 manipulating her into thinking it's her fault, she put herself

12 in that situation.  "Or you forget about that?  I regret the

13 little affair we did have as I thought you were a little more

14 mature than what you really are."  Why is he talking about

15 maturity?  Because she is a child.  "Shame on me.  Since you

16 really aren't a virgin anymore, other than you have not had a

17 penis inside you, just make sure to find the one that will

18 satisfy your desires when you finally do.  Perhaps you should

19 wait until you are married?"

20         These are the State of Florida crimes.  Like I said,

21 you can't have sexual activity with a minor in the State of

22 Florida, but you'll have an opportunity to read these.  Just

23 keep in mind the government must prove that the sexual

24 activity in the State of Florida could have been charged.  So

25 it's not he could have been, you know -- we're not doing

1  beyond a reasonable doubt as to every single state case.  We

2  are doing what he's charged with today, but he could have been

3  charged with these crimes.

4          Williamson persuaded, induced, or coerced Deea to

5  engage in that sexual activity.  Again, "Sent from my Galaxy

6  Note 8."  This came from the Samsung, his dispatch email.

7  That's his work email.  And we have, "I want to sleep with

8  you.  Would love for you to cum all over my dick, muah.  Love

9  you, Deea."

10         She has a very unique name.  When I read her name I

11 kept pronouncing it "Dia" before I was able to meet her

12 because that's how it reads.  The person writing this knows

13 Deea, knows how to spell her name.  That is very significant.

14 This isn't someone in another country spamming him, breaking

15 in who just happens to know how to spell Deea's name.  And

16 again, he got careless.  This email is from

17 GregWilliamson@hotmail.com to Deea.  "Pay close attention."

18 It is a porn link, and his signature line, Greg Williamson.

19         If we are to imagine that somebody else is doing it,

20 they would have had to have broken into all of this guy's

21 email accounts, known who the victim was.  That would ask a

22 lot, okay.

23         The next couple counts are the production and

24 attempted production of child pornography.  This is Count 2,

25 3, and 4.  Just so we know we are on the same page, I'm going

to show you very small exhibits of the child pornography that

represent these counts.  So we have Exhibits 7, 7.1, and 7.2.

These represent counts 2, 3, and 4.

So I'm going to go ahead and show you -- this is that

first image.  This is Deea where her breasts are exposed in

her private bedroom.

The next count, this is a shot of just her genital

area or her vagina.  And the last one in the series is again a

private room, and this is her butt.

We have to prove three elements to prove production.

There are a lot of words, but I'm going to explain it.  And

again, the judge will instruct you on the law.  Must be an

actual minor, done.  It's Deea.  We know what her age was.

Two, the defendant attempted to and did employ, use,

persuade, induce, entice -- kind of that same language from

enticement -- or coerce the minor to engage in sexually

explicit conduct for the purpose of producing a visual

depiction of that conduct.  That is his placement of those

cameras in her private room where she changed.  We heard from

Deea that one of the plugs -- because that's where the plug

was -- was right by the dresser where she was getting naked,

and that is what happened.  They were placed, and he put her

in a position where he could get those images.

Number three, the defendant knew or had a reason to

know that the visual depiction would be transported or

transmitted using any means and facility of interstate or
foreign commerce.  And A, B, C, and D are all different ways
to prove the interstate or foreign commerce.  Here we have the
Internet in use, and we have the device, the USB charger in
use, and we have the Samsung Galaxy where they are discovered.
You heard that those devices were not manufactured in the
United States.  So it must go through foreign or interstate
commerce to be created.  They are created in other countries.
They end up here, and then the Internet is used.  The device
gives off a signal which connects to his cell phone, and we
heard about that connection, and there's evidence of that
forensically, and it has to go through the Internet, which is
a facility of interstate or foreign commerce.

Okay.  I have a definition of Internet or foreign
commerce.  You'll get that if that's confusing.  It's not
necessary for the government to prove that the defendant knew
it would go through interstate commerce, but let's get to the
important part, which is the producing.  It means producing,
direction, manufacturing, issuing, publishing or advertising.
These images only exist because the defendant created them.

So what is sexually explicit conduct?  So this is
about what makes these images of Deea child pornography.  So
there's several ways you can prove that, but because we do not
have sexual intercourse, bestiality, or anything like that in
those images, we're going to talk about lascivious exhibition

1  because that's what this qualifies under.

2         You'll see factors to consider as to whether you

3  believe those images are lascivious exhibition.  Indecent

4  exposure of genitals or pubic area usually to incite lust.  I

5  mean, it's very clear here when you see it's a shot of her

6  vagina.  It's clipped where that is the focus.  The breasts

7  are the focus, and the butt are the focus.  That's the focal

8  point of these photos, and that's how they were saved.  So

9  you'll have those factors to consider in context, in setting

10  so you can consider the overall content of the material,

11  whether the focal point is that genital area or buttocks or

12  breasts, whether the setting appears to be sexually inviting.

13  It's her bedroom.  She was alone in her bedroom.  She was

14  changing.  Whether the minor appears to be displaying

15  unnatural or inappropriate attire.  She has no attire on.

16  Whether she's partially clothed or nude.  Whether it appears

17  to convey sexual coyness, and whether the depiction appears to

18  have been designed to elicit a sexual response in the viewer.

19         Based on all the contents of the case, we know why

20  he's saving these photos.  He's got child pornography.  He's

21  emailing child pornography.  And lo and behold, the person

22  that he wants to do these things with he has naked images of.

23  So you can use all of that in your consideration.

24         She's nude.  Her vagina, butt, and breasts are

25  exposed to the camera.  They are taken in secret.  They are in

 1  her private bedroom where she is known to change.  And the

 2  focal point is her exposed genitals, breasts, and butt.  They

 3  are clearly meant to incite lust.  Again, the overall context,

 4  and his email showing the secret camera and his desire for

 5  sexual activity with her.

 6        Remember, we had evidence of the applications having

 7  been previously downloaded on the defendant's phone.  He sent

 8  these photos of her to himself months after they're taken.  So

 9  in Exhibit 6.6, the photo was recorded May 21 of 2020 and

10  dispatched to dispatch, sent that email January 14, 2021.  So

11  that's very close in time to that search warrant, and that's

12  well after it was taken.  And dispatch to dispatch, again who

13  else would be doing this but the defendant who has all of the

14  evidence of the secret cameras, the one that gifted it to her,

15  and he is sending them to himself probably to save them in

16  some manner.

17        The next counts are 5, 6, and 7.  That's distribution

18  of child pornography.  We have five elements to prove.  So

19  before I get to that, I just want to show you which images are

20  the distribution counts.  This is Exhibit 2, 3, and 4.  So

21  each of these represents one of those distribution.  I'm going

22  to show you the emails after this, but these are the images

23  that are attached to the next three emails that you see.

24        So this is Count 2.  We have someone who is clearly

25  under the age of 18.  This is the next one.  Again, this looks

1  like a child covered in semen.  And four, this is an erect

2  penis with semen clearly on a child's vagina.  Again, you will

3  see the law on what constitutes distribution of the child

4  pornography, but specifically these are about Greg Williamson

5  sending Deea emails with these attached.  So he has sent them

6  through the Yahoo account to Deea.  We have to prove that he

7  sent it, that he distributed it.  He knowingly distributed

8  that.  Obviously he intends to send this email.  It was

9  distributed through facility of interstate commerce.  Again,

10  that's the Internet.  We heard Yahoo say you need the Internet

11  to send an email.

12       Producing a visual depiction that involved a minor.

13  You can see that they're minors.  And sexually explicit

14  conduct, that's clear.  Again, producing it involved that

15  minor in sexually explicit conduct, and it is of that minor in

16  sexually explicit conduct.  And at least one performer was a

17  minor and knew that the depiction showed that minor.  If you

18  look at those, they're children.  So the defendant knew that

19  before he sent this child pornography.  And you'll notice -- I

20  think -- you'll get the definition of what distributed means,

21  but the requirement here is that he sent it.

22       So representing Count 5 is the email that he

23  attached, Vlad to Deea.  "This is how you would make me cum

24  all over you."  And Deea is 12 years old when he sent this.

25  That represents Count 5, and that's the image I showed you.

1          The next is representing Count 6, and, "Would love to

2   rub yourself until you become incredibly wet and horny and

3   inserted my prick into your sweet, wet pussy.  Would love to

4   make love to you for hours.  To Deea from Vladlover," which we

5   know.

6          Again, Count 7 is another email.  "I want to cum all

7   over your pussy like this," to Deea.

8          The last count is possession of child pornography.

9   And this represents all the other children.  So not the Deea

10  pictures; all the child pornography that we looked at from the

11  search warrant.  So the day was January 21, 2021.  The

12  defendant was responsible for these other children's photos.

13  He had them on his work computer.  You saw that there was a

14  baby with an erect penis.  Clearly child pornography.  I won't

15  go into the definition.  You'll see possession.  It's similar

16  to all the other things.

17         I'm running out of time.  But read the law, and we're

18  confident that after doing so, with all of the evidence, we

19  ask that you find him guilty on all counts.

20         THE COURT:  All right.  Thank you, Counsel.

21         We would be glad to hear from the defense and their

22  closing.

23                    CLOSING ARGUMENT

24                  COUNSEL FOR THE DEFENSE

25         MR. BRUNVAND:  Good morning.

1          Gregory Williamson, when we started this trial, sat

2     before you an innocent man, and each and every one of you

3     recognized that that was the case.  You agree that despite the

4     fact that these are terrible allegations, despite the fact

5     that this is something that we all find offensive, as the

6     Court indicated in jury selection, it is not about whether or

7     not it's offensive.  It's about whether or not the government

8     has proven their case beyond and to the exclusion of every

9     reasonable doubt.  And I'm going to respectfully suggest to

10    you that despite the fact that a lot of horrific evidence, a

11    lot of horrific images, a lot of disturbing conduct that

12    purportedly was committed by my client has been put before

13    you, the government has failed in their task of proving their

14    case beyond a reasonable doubt.  Why?

15          The reason they have failed is that, first of all,

16    Deea's mother, Aliona Williamson, lived in that home during

17    the time period that these purported emails and images are

18    being sent to the daughter.  Now, you might say to yourself

19    why in the world would the mother send these type of emails.

20    Why in the world would the mother draft these type of emails.

21    And I will suggest to you that there is a valid reason.  There

22    is a reasonable reason as to why the mother would do it.  What

23    is that reason?

24          The reason is, as Deea said, there were times when

25    things were bad, when her stepfather Gregory Williamson would

```
 1  say to her and to the mother that I'm sending you back to
 2  Moldova.  You and your mom are going back to Moldova, and your
 3  siblings will stay here with me.  That was a genuine fear.
 4  The government has acknowledged that was a genuine fear in
 5  Deea.
 6          So the question is, is it reasonable that the mother
 7  Aliona Williamson and Deea had a plan, had an insurance plan
 8  that they put into place that would allow them, should that
 9  ever come to fruition, to have an upper card where they can in
10  fact lodge these type of allegations against Mr. Williamson.
11  That is a reasonable doubt, members of the jury.
12          And I would suggest to you that regardless of how
13  long the government is up there, regardless of what they say,
14  they cannot overcome that.  They cannot overcome the fact that
15  there is zero evidence, zero evidence that Aliona Williamson,
16  the mother, did not have access to my client's computer, did
17  not have access to his cell phone, did not have access to his
18  emails.  Have I proven that that's what happened?  Absolutely
19  not.  But what makes it difficult for you as jurors are these
20  type of cases.  What makes it difficult is the fact that you
21  are probably angry.  You are upset about what you saw, what
22  you had to look at on that screen.  You are upset about the
23  conduct that you heard about, and that makes it so much more
24  difficult for you as jurors to hold the government to their
25  burden.  But it's in cases like this where you truly, truly
```

1   have to keep that in mind, where you truly have to ask

2   yourself in deliberating is that reasonable?  Is it reasonable

3   that this was a setup?  Could that be true?  And I would

4   respectfully suggest to you that it could be.

5        We heard from the agents.  I talked about compromised

6   emails.  We talked about other people being able to access

7   emails.  We know with certainty that there is no evidence, no

8   evidence that Aliona Williamson did not have access to all

9   those things.  And there is no evidence that Vlad that's

10  referenced in the email is not relating to the mother's former

11  boyfriend rather than Vlad, the author, that you heard about

12  from Officer Keller.

13       What else do we need to consider in evaluating this?

14  Well, I'm going to suggest that there's a few things that you

15  have to consider as you evaluate all the evidence.  And one of

16  those things is that Deea Apostol, when she testified before

17  you, you know with certainty that at some point in this

18  investigation or from that witness stand she lied.  How do you

19  know that?  Well, because you know that when she spoke with

20  Detective Keller, Officer Keller when he was at the scene

21  conducting the search warrant, she indicated that Gregory

22  Williamson never touched her.  Asked several times.  Never

23  touched her in an offensive or sexual manner.  On the witness

24  stand she said the opposite.  So we know with certainty she

25  either lied then or lied now.  There's no way for us to know

1  which time she lied, but we know she lied.

2  There is -- what I would refer to, because, you know,

3  Google Earth is an amazing thing.  You know, you can go back

4  in time and look at a particular spot, and you can actually

5  see what it looked like in maybe 2019, 2017 or what have you.

6  But we can't rewind and go back and see what actually happened

7  during the time period of these offenses, right?  We can't do

8  it.

9  So what do we have to do?  We have to hold the

10  government to their burden, okay, strictly despite the fact

11  that you may not like it, because we have agreed to this for

12  over 200 years to make sure, as some of your fellow jurors

13  said in jury selection, to make sure that innocent individuals

14  are not falsely and erroneously convicted and sentenced to

15  prison.  If there is an unanswered question, if there is a

16  question that the government has not been able to show you,

17  then the verdict can only be not guilty as to each and every

18  count.

19  I would suggest to you, I believe it's Exhibit 5.4 is

20  what I would refer to as a possible snapshot of innocence.

21  And why do I say that?  Exhibit 5.4, I believe, is a photo of

22  Deea doing a selfie in front of the mirror wearing what

23  appears to be maybe risque lingerie.  And there is a message

24  in an email from Greg Williamson.  And it basically says

25  something to the effect -- you rely on your own notes and

1  memory and look at the exhibits -- but something to the effect

2  of, I don't know what you're doing, but you better stop before

3  your mother finds out.

4         Members of the jury, in the information that's in the

5  evidence as to emails and communications from the phone, from

6  the computer, from the hard drives, there are messages on

7  there that are from Gregory Williamson, but there are also

8  messages that are not from Gregory Williamson, although it

9  appears that they came from Gregory Williamson.  And the

10  problem is there is no evidence, no evidence that Mom did not

11  have access to that information.  And there is no evidence

12  that she did not create these false allegations against my

13  client in order to have insurance should she one day be faced

14  with the potential of being sent back to Moldova.

15         Members of the jury, we appreciate your time.  And

16  when you've heard all the evidence, we ask that you go back

17  and deliberate and that you find Gregory Williamson not guilty

18  of each and every count.

19         Thank you, members of the jury.

20         THE COURT:  All right.  Thank you, sir.

21         All right.  So the government is entitled to what's

22  called a rebuttal close.  We'll hear that now.

23                    CLOSING ARGUMENT

24               COUNSEL FOR THE GOVERNMENT

25         MS. FAVORIT:  The question is, what is the reasonable

doubt in this case?  We have evidence from the Seagate hard
drive which is found in the defendant's bedroom in a drawer
from an old computer.  Within that hard drive there was child
pornography, only a couple images, but the date of that child
pornography is significant.  2014 is the date from one of
those images of child pornography.  Deea did not come to the
United States until 2016.  This is forensically marked
preceding her arrival by two years.  Is it the mom doing all
this?  Is it this former boyfriend doing this?  It's not.  You
know, the defense said it could be true.  Sure.  Anything is
possible, but that is not the standard of proof.  It's
reasonable doubt.  You get to use your common sense.  You get
to look at all the evidence in the case, and you decide what
is reasonable.

A reasonable doubt is a real doubt, based on your
reason, common sense after you've carefully considered the
evidence.  Those emails have context, and Deea shared the
context of the emails.  Deea did not tell you that her mother
had sexually abused her.  Deea did not tell you that the
mother was emailing her.  She told you it's the defendant.
And when you read those emails, it matches up with what Deea
told you.

You will be instructed on how to determine witness
credibility.  So let's use Deea for this.  Did she impress you
as one who was telling the truth?  And these are all just

1  factors to consider whether or not you believe a witness.

2  Does she have a personal interest in the outcome of the case?

3  Is there any particular reason not to tell the truth?

4       Here is what I really want to focus on.  Did the

5  witness's testimony differ from other testimony or evidence?

6  Her testimony corroborates the evidence we found in this case.

7  Now, this case did not start from Deea.  She did not call the

8  police.  She did not tell her mom.  She didn't tell anybody

9  what was going on.  Yahoo flagged these emails.  If this was a

10  plot by Deea or her mother to stay in a country, well, that

11  was really lucky, wasn't it, that Yahoo happened to flag it

12  and start the entire investigation.

13       Why not make the story better?  She was forthcoming

14  in her testimony and how?  I would ask her, during this

15  incident did he kiss you?  What was her answer?  No.  She was

16  correcting me when I would say, okay, did something happen

17  outside, and she would say that was the one that happened

18  outside because she was getting it right because it's the

19  truth.  She didn't make it any better.  She could have said it

20  was worse than it was.  But really what incentive did this

21  child have at this point?  He has been out of her home since

22  the search warrant, like she told you.  That was three years

23  ago.  Why would she come in now to tell you, oh, he sexually

24  abused me?  It just doesn't make sense.  It really doesn't.

25  And again, her testimony is corroborated with the forensic

 1    evidence.  What personal interest does she gain?  This was her

 2    father figure.  She trusted him, and she lost that.

 3          Just to quickly address a couple things that were

 4    stated.  I think I got the search warrant date wrong.  So I

 5    think it might be the 27th, not the 21st.  So obviously rely

 6    on the evidence in the case.

 7          That picture, that Deea selfie that was emailed out,

 8    his response, like, stop before your mother finds out, that

 9    was a jealous man.  That was a man who saw this picture of

10    her, which is not risque lingerie, it's pajamas.  That was a

11    jealous man saying, hey, I seen you because that's what he

12    wanted from her.

13          Deea did not lie.  She told you she was not ready to

14    talk about what happened.  This happened to her when she was

15    12, 13, 14.  This was her childhood.  This happened to her

16    before her brain is developed, and she didn't tell anybody

17    what happened.  That is normal.

18          You are going to get a verdict form from the judge.

19          Can I use the overhead really quickly?

20          This is what that verdict form will look like.  And

21    you will have the option for each count.  So like the first

22    one is that enticement count we talked about.  And you will

23    have all eight counts listed like this.  So we are asking you

24    to find him guilty on every single one all the way down,

25    ending Count 8.

1          The only thing I didn't mention with Count 8 is a

2    prepubescent minor is listed, and that's a child less than 12.

3    So you saw that's the infant or baby that you saw.  So that

4    qualifies.

5          What is reasonable?  You get to make that decision.

6    Based on all the evidence and the testimony, we ask that you

7    find Greg Williamson guilty.

8          Thank you.

9          THE COURT:  All right.  Thank you.

10         Ladies and gentlemen.  It is my duty to instruct you

11   on the rules of law you must use in deciding the case.  And we

12   have these typed.  I'm going to give you a typed copy.  If you

13   want us to Xerox multiple copies, of course we will.  And for

14   the record, since the copy was typed, so for counsel's

15   information I corrected -- I'm stating this for the record --

16   page 2, page 6, the second paragraph, and the last two

17   paragraphs were removed on page 25.  So you'll see there is no

18   page 25.  It didn't apply to this matter.

19         So after I have completed these instructions, you

20   will go in the jury room and begin your deliberations.

21         You must decide whether the government has proven the

22   specific facts necessary to find the defendant guilty beyond a

23   reasonable doubt.

24         Your decision must be based only on the evidence

25   presented during the trial.  You must not be influenced in any

way by either sympathy for or prejudice against the defendant
or the government.

You must follow the law as I explain it -- even if
you do not agree with the law -- and you must follow all my
instructions on the law.  You must not single out or disregard
any of the Court's instructions on the law.

The indictment is a formal charge against a defendant
but it is not evidence of guilty.  The law presumes every
defendant is innocent.  The defendant does not have to prove
his innocence or produce any evidence at all.  A defendant
does not have to testify, and if the defendant chose not to
testify, you cannot consider that in any way while making your
decision.  The government must prove guilt beyond a reasonable
doubt.  If it fails to do so, you must find the defendant not
guilty.

The government's burden of proof is heavy, but it
doesn't have to prove a defendant's guilt beyond all possible
doubt.  The government's proof only has to exclude any
reasonable doubt concerning the defendant's guilt.

A reasonable doubt is a real doubt, based on your
reason and common sense after you've carefully and impartially
considered all the evidence in the case.

Proof beyond a reasonable doubt is proof so
convincing that you would be willing to rely and act on it
without hesitation in the most important of your own affairs.

If you are convinced that the defendant has been proved guilty
beyond a reasonable doubt, say so.  If you are not convinced,
say so.

As I said before, you must consider only the evidence
I have admitted in the case.  Evidence includes the testimony
of witnesses and exhibits admitted, but anything the lawyers
say is not evidence and isn't binding on you.

You shouldn't assume anything I've said that I have
any opinion about any factual issue in this case.  Except for
my instructions to you on the law here, you should disregard
anything I may have said during the trial in arriving at your
own decision of the facts.

Your own recollection and interpretation of the
evidence is what matters.

In considering the evidence, you may use reasoning
and common sense to make deductions and reach conclusions.
You shouldn't be concerned about whether the evidence is
direct or circumstantial.

Direct evidence is the testimony of a person who
asserts that he or she has actual knowledge of a fact, such as
an eyewitness.

Circumstantial evidence is proof of a chain of facts
and circumstances that tend to prove or disprove a fact.
There's no legal difference in the weight you may give to
either direct or circumstantial evidence.

1          When I say you must consider all the evidence, I

2    don't mean that you must accept all the evidence as true or

3    accurate.  You should decide whether you believe what each

4    witness had to say and how important that testimony was.  In

5    making that decision you may believe or disbelieve any witness

6    in whole or in part.  The number of witnesses testifying

7    concerning a particular point doesn't necessarily matter.

8          To decide whether you believe any witness, I suggest

9    that you ask yourself a few questions:

10         Did the witness impress you as one who was telling

11   the truth?

12         Did the witness have any particular reason not to

13   tell the truth?

14         Did the witness have a personal income in the outcome

15   of the case?

16         Did the witness seem to have a good memory?

17         Did the witness have the opportunity and ability to

18   accurately observe the things he or she testified about?

19         Did the witness appear to understand the questions

20   clearly and answer them directly?

21         Did the witness's testimony differ from any other

22   testimony or other evidence?

23         You should ask yourself whether there was evidence

24   that a witness testified falsely about an important fact.  And

25   ask whether there was evidence that at some other time a

1  witness said or did something, or didn't say or do something,

2  that was different from the testimony the witness gave during

3  this trial.

4         But keep in mind that a simple mistake doesn't mean a

5  witness wasn't telling the truth as he or she remembers it.

6  People naturally tend to forget some things or remember them

7  inaccurately.  So if a witness misstated something, you must

8  decide whether it was because of an innocent lapse in memory

9  or an intentional deception.  The significance of your

10 decision may depend on whether the misstatement is about an

11 important fact or an unimportant detail.

12        When scientific, technical or other specialized

13 knowledge might be helpful, a person who has special training

14 or experience in that field is allowed to state an opinion

15 about the matter.

16        But that doesn't mean you must accept the witness's

17 opinion.  As with any other witness's testimony, you must

18 decide for yourself whether to rely on the opinion.

19        In these charges, the Court has reviewed the

20 pertinent parts of the federal and state statutes or laws that

21 are alleged to have been violated.  Where a statute specifies

22 several ways in which an offense may be committed, the

23 indictment may allege the several ways in a conjunctive by

24 using the word "and;" therefore, if only one of the

25 alternatives is proved beyond a reasonable doubt, that is

1  sufficient for a conviction, so long as the jury agrees

2  unanimously as to at least one of the alternatives.

3      The indictment charges eight separate crimes or

4  counts against the defendant.  Each count has a number.

5  You'll be given a copy of the indictment to refer to during

6  your deliberations.

7      Count 1 charges the defendant knowingly persuaded,

8  induced, enticed, or coerced an individual under the age of 18

9  to engage in sexual activity and attempted to knowingly

10 persuade, induce, entice, or coerce an individual under the

11 age of 18 to engage in sexual activity.

12     Counts 2, 3, and 4 charge the defendant did attempt

13 to and did employ, use, persuade, induce, entice, and coerce a

14 minor to engage in any sexually explicit conduct for the

15 purpose of producing a visual depiction of such conduct,

16 knowing and having reason to know that such visual depiction

17 would be transported and transmitted using any means and

18 facility of interstate and foreign commerce.

19     Counts 5, 6, and 7 charge that the defendant did

20 knowingly distribute a visual depiction of a minor engaged in

21 any sexually explicit conduct using any means and facility of

22 interstate and foreign commerce and that has been shipped and

23 transported in and affecting interstate and foreign commerce.

24     Count 8 charges that the defendant did knowingly

25 possess a matter which contained a visual depiction of a minor

1  engaged in any sexually explicit conduct that had been shipped

2  or transported using any means and facility of interstate and

3  foreign commerce.

4         Here's the instruction on Count 1, "Coercion and

5  Enticement of a Minor to Engage in Sexual Activity."  It is a

6  federal crime for anyone using means of interstate commerce,

7  including transmissions by cell phone or by computer on the

8  Internet, to persuade, induce, entice, or coerce, or attempt

9  to persuade, induce, entice, or coerce anyone under 18 years

10  old to engage in any sexual activity for which any person

11  could be charged with a criminal offense.

12         The defendant can be found guilty of this crime only

13  if the following facts are proved beyond a reasonable doubt:

14         1.  The defendant knowingly persuaded, induced,

15  enticed, or coerced, or attempted to persuade, induce, entice,

16  or coerce D.A. -- that was the child, the young lady Deea --

17  to engage in sexual activity as charged.

18         2.  The defendant used a cell phone or a computer on

19  the Internet to do so.

20         3.  When the defendant did these acts, D.A. was less

21  than 18 years old; and

22         4.  One or more of the individuals engaging in the

23  sexual activity could have been charged with a sexual offense

24  under the laws of Florida.

25         So the government must prove that one or more of the

1    individuals engaging in the sexual activity could have been

2    charged with a criminal offense under the laws of Florida.

3            As a matter of law, the following acts are crimes

4    under Florida law:  Lewd or lascivious battery, in violation

5    of Florida Statute Section 800.04(4)(a)1 and 2; sexual battery

6    upon a child (12 years or older but younger than 18 years) by

7    a person with familial or custodial authority, in violation of

8    Florida Statutes 794.011(8)(b).

9            Pursuant to Florida Statute 800.04(4)(a)1, an

10   individual commits lewd or lascivious battery by engaging in

11   sexual activity with a person 12 years of age or older but

12   less than 16 years of age.

13           Pursuant to Florida Statute 800.04(4)(a)2, an

14   individual commits lewd or lascivious battery by encouraging,

15   forcing, or enticing any person less than 16 years of age to

16   engage in sadomasochistic abuse, sexual bestiality,

17   prostitution, or any other act involving sexual activity.

18           Sexual activity means the oral, anal, or female

19   genital penetration by, or union with, the sexual organ of

20   another or the anal or female genital penetration of another

21   by any other object; however, sexual activity does not include

22   an act done for bona fide medical purpose.

23           Pursuant to Florida Statute 794.011(8)(b), an

24   individual who is in a position of familial or custodial

25   authority to a person less than 18 years of age commits a

1  sexual battery if that individual engages in any act with that

2  person while the person is 12 years of age or older but

3  younger than 18 years of age which constitute sexual battery.

4       Sexual battery means oral, anal, or female genital

5  penetration by, or union with, the sexual organ of another or

6  the anal or female genital penetration by any other object;

7  however, sexual battery does not include an act done for bona

8  fide medical purposes.

9       As used in this instruction, the word "induce" means

10  to stimulate the occurrence of or to cause.

11       A cell phone or the Internet is a facility of

12  interstate commerce.

13       Counts 2, 3, and 4 are the elements that I read now,

14  and that's entitled "Sexual Exploitation of Children,

15  Producing Child Pornography."

16       It is a federal crime for any person to employ, use,

17  persuade, induce, entice, or coerce a minor to engage in

18  sexually explicit conduct for the purpose of producing a

19  visual depiction of the conduct, or attempt to employ, use,

20  persuade, induce, entice, or coerce a minor to engage in

21  sexually explicit conduct for the purpose of producing a

22  visual depiction of the conduct if the person knows or has

23  reason to know that the visual depiction will be transmitted

24  using any means and facility of interstate or foreign

25  commerce, or the person knows or has reason to know that the

visual depiction will be transported and transmitted in and
affecting interstate and foreign commerce, or the visual
depiction was produced and transmitted using materials that
had been mailed, shipped, or transported in and affecting
interstate and foreign commerce by any means, including by
computer, or the visual depiction was actually transported and
transmitted using any means and facility of interstate and
foreign commerce, or the visual depiction was actually
transported and transmitted in and affecting interstate and
foreign commerce.

The defendant can be found guilty of this crime --
and this is again 2, 3, and 4 -- only if the following facts
are proved beyond a reasonable doubt:

1.  An actual minor, that is, a real person who was
less than 18 years old was depicted;

2.  The defendant attempted to and did employ, use,
persuade, induce, entice, or coerce the minor to engage in
sexually explicit conduct for the purpose of producing a
visual depiction of the conduct, and;

3.  Either (a), the defendant knew or had reason to
know that the visual depiction, e.g., digital image would be
transported or transmitted using any means or facility of
interstate or foreign commerce; (b) the defendant knew or had
reason to know the visual depiction, e.g., digital image would
be transported or transmitted in or affecting interstate or

1  foreign commerce; (c) the defendant knew or had reason to know

2  the visual depiction was produced or transmitted using

3  materials that had been mailed, shipped, or transported in or

4  affecting interstate or foreign commerce by any means,

5  including computer; or (d) the defendant knew or had reason to

6  know the visual depiction was actually transported or

7  transmitted in or affecting interstate or foreign commerce.

8          The term "interstate or foreign commerce" means the

9  movement of a person or property from one state to another or

10 from one state to another country.  The term "State" includes

11 a state of the United States, the District of Colombia, and

12 any commonwealth, territory, or possession of the United

13 States.  It is not necessary for the government to prove the

14 defendant knew that the visual depiction of the materials used

15 to produce the visual depiction had moved in interstate or

16 foreign commerce.

17         The term "minor" means any person who is less than 18

18 years old.  The term "producing" means producing, directing,

19 manufacturing, issuing, publishing, or advertising.

20         The term "computer" means any electronic, magnetic,

21 optical, electrochemical, or other high-speed data processing

22 device performing logical, arithmetic, or storage functions,

23 and includes any data storage facility or communications

24 facility directly related to or operating in conjunction with

25 that device, but that term does not include an automated

typewriter or typesetter, a portable handheld calculator, or

similar devices that are limited in function to only word

processing or mathematical calculations.

The term "visual depiction" includes data stored on a

computer disk or by any other electronic means that can be

converted to a visual image.

The term "sexually explicit conduct" means actual or

simulated:

Sexual intercourse, including genital-genital,

oral-genital, anal-genital, or oral-anal, whether between

persons of the same or opposite sex; bestiality; masturbation;

sadistic or masochistic abuse; or lascivious exhibition of the

genitals or pubic area of any person.

"Lascivious exhibition" means indecent exposure of

the genitals or pubic area, usually to incite lust.  Not every

exposure is a lascivious exhibition.

To decide whether a visual depiction is a lascivious

exhibition, you must consider the context and setting in which

the genitalia or pubic area is being displayed.  Factors you

may consider include:  the overall content of the material;

whether the focal point of the visual depiction is on the

minor's genitalia or pubic area; whether the setting of the

depiction appears to be sexually inviting or suggestive -- for

example, in a location or in a pose associated with sexual

activity; whether the minor appears to be displayed in an

1  unnatural pose or in inappropriate attire; whether the minor

2  is partially clothed or nude; whether the depiction appears to

3  convey sexual coyness or an apparent willingness to engage in

4  sexual activity; and whether the depiction appears to have

5  been designed to elicit a sexual response in a viewer.

6          This list is not exhaustive, and an image need not

7  satisfy any single factor to be deemed a lascivious

8  exhibition.  Instead, these factors are meant to guide you in

9  determining whether the depiction is a lascivious depiction of

10  the genitalia or pubic area as you consider the overall

11  content of the material.  It is for you to decide the weight

12  or lack of weight to be given to these factors I just read.

13          The word "attempt," attempt the concept, the

14  defendant can be found guilty of an attempt to commit the

15  offense set forth in Counts 2, 3, and 4 only if the following

16  facts are proved beyond a reasonable doubt:

17          First, that the defendant knowingly intended to

18  commit the crime of child pornography production; and

19          Two, the defendant's intent was strongly corroborated

20  by his taking a substantial step toward committing this crime.

21          A "substantial step" is an important action leading

22  up to the committing of an offense, not just an

23  inconsequential act.  It must be more than simply preparing.

24  It must be an act that would normally result in committing the

25  offense.

1       I will now instruct you as to Counts 5, 6, and 7,

2  which is titled "Distributing Material Involving Sexual

3  Exploitation of Minors."  It's a federal crime to knowingly

4  distribute any visual depiction that has been shipped or

5  transported in interstate or foreign commerce by any means,

6  including by computer, when the visual depiction was produced

7  by using a minor engaging in sexually explicit conduct and

8  depicts the conduct.

9       The defendant can be found guilty of this crime only

10 if the following facts are proved beyond a reasonable doubt:

11      One, the defendant knowingly distributed a visual

12 depiction.

13      Two, the depiction was distributed using any means

14 and facility of interstate or foreign commerce, or the

15 depiction was shipped or transported in and affecting

16 interstate or foreign commerce by any means.

17      Three, producing the visual depiction involved using

18 a minor engaged in sexually explicit conduct.

19      Four, the depiction is of a minor engaged in sexually

20 explicit conduct; and

21      Five, the defendant knew that at least one performer

22 in the visual depiction was a minor and knew that the

23 depiction showed the minor engaged in sexually explicit

24 conduct.

25      To "distribute" something simply means to deliver or

1  transfer possession to someone else, with or without any

2  financial interest in the transaction.

3         "Minor" means any person younger than 18 years old.

4         "Interstate or foreign commerce" I have defined for

5  you already above, and it's on page 14 in this packet I'm

6  going to give you.

7         The term "computer" I've defined in this packet at

8  page 15 above.

9         The term "sexually explicit conduct" I have defined

10 at page 15.

11        And for "lascivious exhibition," that term, I have

12 defined this term for you previously at pages 15 through 16.

13        The final count is Count 8.  I will read those

14 elements now, and this is entitled "Sexual Exploitation of

15 Minors, Possession of Child Pornography."  It is a federal

16 crime or offense for any person to knowingly possess any

17 matter containing visual depictions, which have been produced

18 using materials which had been shipped and transported in and

19 affecting interstate or foreign commerce, if the production of

20 such visual depictions involve the use of a minor engaging in

21 sexually explicit conduct and if the visual depictions are of

22 such conduct.

23        The defendant can be found guilty of this crime only

24 if the following facts are proved beyond a reasonable doubt:

25        One, that the defendant knowingly possessed a matter

 1  containing visual depictions;

 2        Two, the depiction had been (a) shipped and

 3  transported using any means and facility of interstate or

 4  foreign commerce, or (b) shipped or transported in and

 5  affecting interstate and foreign commerce, or (c) that it had

 6  been produced using materials which had been shipped or

 7  transported using any means and facility of interstate and

 8  foreign commerce, or (D) it had been produced using materials

 9  that had been shipped or transported in and affecting

10  interstate and foreign commerce by any means.

11        Three, producing the visual depiction involved a

12  minor engaged in sexually explicit conduct;

13        Four, the depiction is of a minor engaged in sexually

14  explicit conduct.

15        Five, the defendant knew that at least one performer

16  in the visual depiction was a minor and knew that the

17  depiction showed the minor engaged in sexually explicit

18  conduct; and

19        Six, at least one of the visual depictions involved a

20  prepubescent minor.

21        The term "prepubescent" means relating to or in the

22  period preceding puberty, and generally lacking adult

23  characteristics such as body hair and breast development.

24        There's a couple other terms.  I need to define "on

25  or about" and "knowingly and willfully."  You'll see that the

1    indictment, which you'll have, charges a crime was committed

2    on or about a certain date.  The government doesn't have to

3    prove the crime occurred on an exact date.  The government

4    only has to prove beyond a reasonable doubt that the crime was

5    committed on a date reasonably close to the date alleged.

6         The word "knowingly" means that an act was done

7    voluntarily and intentionally and not because of mistake or

8    accident.

9         The word "willfully" means that the act was committed

10   voluntarily and purposely, with the intent to do something the

11   law forbids; that is, with the bad purpose to disobey or

12   disregard the law.  While a person must have acted with the

13   intent to do something the law forbids before you can find

14   that that person acted willfully, the person need not be aware

15   of the specific law or rule that his conduct may be violating.

16        Each count of the indictment charges a separate

17   crime.  You must consider each crime and the evidence related

18   to it separately.  If you find the defendant guilty or not

19   guilty of one crime, that must not affect your verdict for any

20   other crime.

21        I caution you that the defendant is on trial only for

22   the specific crimes charged in the indictment.  You are here

23   to determine from the evidence in this case whether the

24   defendant is guilty or not guilty of those specific crimes.

25        You must never consider punishment in any way to

1  decide whether the defendant is guilty.  If you find the

2  defendant guilty, the punishment is for the judge alone to

3  decide later.

4       You have heard evidence in this case of acts

5  allegedly done by the defendant that may be similar to those

6  charged in the indictment but were committed on other

7  occasions.  You must not consider this evidence to decide if

8  the defendant engaged in the activity alleged in the

9  indictment, but you may consider this evidence to decide

10 whether:

11      One, the defendant had the state of mind or intent

12 necessary to commit the crime charged in the indictment;

13      Two, the defendant had a motive or the opportunity to

14 commit the acts charged in the indictment;

15      Three, the defendant acted according to a plan or in

16 preparation to commit a crime; or

17      Four, the defendant committed the acts charged in the

18 indictment by accident or by mistake.

19      You've been permitted to take notes during the trial.

20 Most of you -- perhaps all of you -- have taken advantage of

21 that opportunity.  Please use these notes as an aid in your

22 deliberations.  And Mr. Smith will render them to powder as

23 soon as you leave this courthouse, so not to worry about that.

24      You must not give your notes priority over your

25 independent recollection in this very short case.  So don't

1  allow yourself to be unduly influenced by the notes of others.

2  It's your recollection of the evidence that counts.

3         I emphasize notes are not entitled to any greater

4  weight than your memory and recollection.

5         Your verdict, whether guilty or not guilty, must be

6  unanimous.  In other words, you must all agree.  Your

7  deliberations are secret, and you'll never have to explain

8  your verdict to anyone.

9         Each of you must decide the case for yourself but

10 only after fully considering the evidence with the other

11 jurors.  And you'll have all this evidence here.  You must

12 discuss the case with one another and try to reach an

13 agreement.  While you are discussing the case, don't hesitate

14 to reexamine your own opinion and changed your mind if you

15 become convinced that you're wrong.  But don't give up your

16 honest beliefs just because others think differently or

17 because you simply want to get the case over with.

18        Remember that, in a very real way, you're judges.

19 You are judges of the facts.  Your only interest is to seek

20 the truth from the evidence in the case.

21        When you get to the jury room, please choose one of

22 your members as a foreperson.  And that person will direct

23 your deliberations and speak for you in court.

24        There's a verdict form which I'll have for you.  It's

25 very simple.  There are eight counts.  It lists each one.  And

 1  it's not -- some of them have all kinds of issues going on.

 2  This is a fairly simple verdict form.  Take it with you to the

 3  jury room.  When you've all agreed on a verdict, the

 4  foreperson will fill in the form sign it, date it, and carry

 5  it in.  You'll let us know.  You can always -- Mr. Smith and

 6  Officer Arch are here for your comfort.

 7          If you wish to communicate with me at any time, write

 8  down any communication or message you might have and give it

 9  to Mr. Smith or Officer Arch, and they will bring it to me.

10  I'll respond as quickly as possible either in writing or in

11  the courtroom.  Sometimes it takes a moment because we have to

12  gather everybody up.  I'm not suggesting you will have a

13  question for me.  But if you do, write it down, and I will

14  answer it as promptly as possible if I can.  If you do that, I

15  caution you don't tell me how jurors are voting one way or the

16  other.

17          So at this time it's with somewhat of a heavy heart I

18  have to thank Mr. Garcia and Mr. Arndt.  You are the

19  alternates, and we will have to ask you two favors, please.

20  Please keep this sterile here.  Don't discuss it with others.

21  I may have to call you if someone gets sick or something, but

22  we do thank you, and you will not be deliberating with the

23  twelve.

24          Go now, jury, and render a fair and correct verdict.

25          (Jury escorted out of the courtroom.)

1              THE COURT:  Everybody, why don't we just stick

2    around.  Don't head for the highway.

3              Government, Task Force Agent, here are your exhibits.

4    So if you'll remove these from my presence.  Thank you.  We

5    don't want them floating around.  We lose things around here.

6              Does anybody have any issues on the jury

7    instructions?  Do you want to see what I read?  I redacted

8    just like I said, but they are here before they go back.

9              MR. BRUNVAND:  No, Your Honor.

10             MS. FAVORIT:  No, Your Honor.  I did want to address

11   something before you leave.

12             THE COURT:  Yes.

13             MS. FAVORIT:  We forgot to address the forfeiture in

14   the case, whether he wanted a forfeiture trial.

15             THE COURT:  Let's talk about that.  So it's the

16   computers?

17             MS. FAVORIT:  Yes.  It's the electronic evidence in

18   the case.

19             THE COURT:  And that would only become apropos if

20   there was a guilty verdict, right?

21             MS. FAVORIT:  Correct.

22             THE COURT:  In that indication, do you want me to

23   make a finding?  Do you want a jury probably?

24             MR. BRUNVAND:  I think it would be okay with you

25   making the finding if we get to that point.

```
 1        (Attorney-client conference.)

 2            MR. BRUNVAND:  We would be fine with Your Honor

 3   making that decision.

 4            THE COURT:  Very well.  We'll do that then.

 5            MS. FAVORIT:  There is one more matter.  We had to

 6   redact a lot of exhibits.  But there were a few that were so

 7   voluminous with the victim's name because of her email address

 8   that we are asking instead for them to be under seal.

 9            THE COURT:  I will put under seal anything you want.

10   Just let Mr. Smith know and we'll straighten that out.

11            MS. FAVORIT:  Thank you, Your Honor.

12            THE COURT:  I assume there is no objection?

13            MR. BRUNVAND:  No objection.

14            THE COURT:  All right.

15            MS. FAVORIT:  Thank you.

16            THE COURT:  So let's let them get settled.  And if

17   they order lunch, then you all can leave the premises.  Okay?

18            MR. BRUNVAND:  Yes, Your Honor.

19            MS. FAVORIT:  Thank you.

20            THE COURT:  Thank you.

21        (Recess at 10:23 a.m.  Question from jurors at 11:43.)

22            THE COURT:  So we got a note.  Why don't you take a

23   look at it.  And I have a draft response.  You all can

24   critique my response.

25            So it says -- it looks like your foreperson is
```

```
 1   Brittany Davis-Rogers.  "Want a copy of the closing
 2   PowerPoint."  I think the answer there is no.
 3            MR. BRUNVAND:  I agree.
 4            THE COURT:  And specific exhibits that are related to
 5   each count.
 6            So tell me about that response.  Does anybody have an
 7   objection to that?
 8            And for the record, Mr. Williamson is present.
 9            MR. BRUNVAND:  Your Honor, I think they just have to
10   rely on their notes and the instruction.
11            THE COURT:  So is my answer okay?
12            MR. BRUNVAND:  Yes.
13            THE COURT:  What says the government?
14            MS. FAVORIT:  I agree, Your Honor.
15            THE COURT:  So I'm going to staple my answer to a
16   copy of Ms. Davis-Rogers' notes.
17            And did they order lunch?
18            COURT SECURITY OFFICER:  Yes, Your Honor.
19            THE COURT:  So you can sort of be at ease.  Just
20   again, please don't be -- all right.  Back it goes.  So in
21   case they lose this response, I'm going to take a picture of
22   my response so we have it in case somehow they throw it out or
23   something just for the record, just to make sure we have a
24   copy of it.
25            Thank you.  Just make sure we have y'all's cell phone
```

 1   numbers.

 2          Thank you.

 3      (Recess at 11:45 a.m.  Verdict at 2:25 p.m.  Jury

 4   escorted into the courtroom.)

 5          THE COURT:  I'm told we have a verdict.

 6          Thank you.  Ms. Davis-Rogers, I understand you have a

 7   verdict.  Would you hand that, please, to Officer Arch?

 8          Thank you.

 9          And so I will read the verdict.  And then we simply

10   poll the jury.  I would say, Juror Number 1, is this your

11   verdict?  And you either say "yes" if it is.  And if it isn't,

12   you say "no."

13          So United States v. Gregory Williamson, 21-cr-355.

14   As to Count 1, coercion and enticement of a minor, we, the

15   jury, find the defendant, Williamson, guilty.

16          As to Count 2, the offense of attempted production of

17   child pornography, we, the jury, find the defendant guilty.

18          As to Count 3, the offense of production of child

19   pornography, we, the jury, find the defendant guilty.

20          As to Count 4, to the offense of production of child

21   pornography or attempted production of child pornography, we

22   find the defendant, Williamson, guilty.

23          As to Count 5, the offense of distributing child

24   pornography, we, the jury, find the defendant, Williamson,

25   guilty.

1          As to Count 6, the offense of distributing child

2    pornography, we, the jury, find the defendant, Williamson,

3    guilty.

4          As to Count 7, distributing child pornography, we,

5    the jury, find the defendant, Williamson, guilty.

6          As to Count 8, the offense of possession of child

7    pornography involving a prepubescent minor, we, the jury, find

8    the defendant, Williamson, guilty.

9          Juror Number 1, is this your verdict?

10         JUROR 1:  Yes.

11         THE COURT:  And Number 2?

12         JUROR 2:  Yes.

13         THE COURT:  Juror 3, is this your verdict?

14         JUROR 3:  Yes.

15         THE COURT:  Number 4?

16         JUROR 4:  Yes.

17         THE COURT:  Number 5, is this your verdict?

18         JUROR 5:  Yes.

19         THE COURT:  Juror 6, is this your verdict?

20         JUROR 6:  Yes.

21         THE COURT:  Juror 7, is this your verdict?

22         JUROR 7:  Yes.

23         THE COURT:  Juror 8, is this your verdict?

24         JUROR 8:  Yes.

25         THE COURT:  And Juror 9, is this your verdit?

1          JUROR 9:  Yes.

2          THE COURT:  Juror 10, is this your verdict?

3          JUROR 10:  Yes.

4          THE COURT:  Juror 11, is this your verdict?

5          JUROR 11:  Yes.

6          THE COURT:  Juror 12, is this your verdict?

7          JUROR 12:  Yes.

8          THE COURT:  Thank you for your service.  Your country

9    thanks you.  You may go.  Have a good week.  Thank you.

10       (Jury escorted out of the courtroom.)

11          THE COURT:  We are in recess.  Thank you.

12       (Proceedings concluded at 2:30 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1  UNITED STATES DISTRICT COURT    )
                                    )
 2  MIDDLE DISTRICT OF FLORIDA      )

 3
                    REPORTER TRANSCRIPT CERTIFICATE
 4
         I, Tracey Aurelio, Official Court Reporter for the United
 5  States District Court, Middle District of Florida, certify,
    pursuant to Section 753, Title 28, United States Code, that
 6  the foregoing is a true and correct transcription of the
    stenographic notes taken by the undersigned in the
 7  above-entitled matter (Pages 1 through    inclusive) and that
    the transcript page format is in conformance with the
 8  regulations of the Judicial Conference of the United States of
    America.
 9
                                  /s    Tracey Aurelio
10                               _____
                                 Tracey Aurelio, RMR, RDR, CRR
11                               Official Court Reporter
                                 United States District Court
12                               Middle District of Florida
                                 Tampa Division
13                               Date:  September 16, 2024

14

15

16

17

18

19

20

21

22

23

24

25
```