```
 1                UNITED STATES DISTRICT COURT
                  MIDDLE DISTRICT OF FLORIDA
 2                      TAMPA DIVISION

 3   UNITED STATES OF AMERICA,   )
                                 )  8:21-cr-355-WFJ-CPT-1
 4            PLAINTIFF,          )  Tampa
                                 )  June 20, 2024
 5            v.                  )  9:41 a.m.
                                 )
 6   GREGORY ALLEN WILLIAMSON,    )
                                 )
 7            DEFENDANT.          )

 8              TRANSCRIPT OF SENTENCING HEARING
               BEFORE THE HONORABLE WILLIAM F. JUNG
 9                UNITED STATES DISTRICT JUDGE

10   APPEARANCES:

11   For the Government:
          MS. ERIN CLAIRE FAVORIT
12        MS. LINDSEY NICOLE SCHMIDT
          United States Attorney's Office
13        Suite 3200
          400 N. Tampa Street
14        Tampa, FL 33602-4798

15   Defendant is Pro Se

16   Standby Counsel for Defendant:
          MR. BJORN ERIK BRUNVAND
17        Bjorn E. Brunvand, PA
          615 Turner Street
18        Clearwater, FL 33756

19   Also Present:  Ms. Tyler Campbell, Probation

20

21
     Court Reporter:         Tracey Aurelio, CRR, RMR, RDR
22                           Federal Official Court Reporter
                             801 N. Florida Avenue, 15th Floor
23                           Tampa, Florida 33602
                             (813) 301-5448
24
             Proceedings recorded by mechanical stenography,
25   transcript produced by computer.
```

_____

2    (Proceedings commenced at 9:41 a.m.)

3        THE COURT:  Good morning.  Why don't I call the case.

4   United States of America v. Gregory Williamson, 21-cr-355.  We

5   have appearances for the government.  Why don't you give me

6   people at the government's table.

7        MS. FAVORIT:  Good morning, Your Honor.  Erin Favorit

8   on behalf of the United States.

9        MS. SCHMIDT:  Lindsey Schmidt on behalf of the United

10  States, Your Honor.  Good morning.

11        MS. FAVORIT:  And at counsel table we have Agent

12  James Keller.

13        THE COURT:  And we have Mr. Williamson.

14        And, Mr. Brunvand, are you standby counsel or full

15  counsel?  What are you?

16        MR. BRUNVAND:  I am currently standby counsel.

17        THE COURT:  And standby counsel Bjorn Brunvand.

18        A couple housekeeping matters first.  So Ms. Favorit,

19  there was a motion I didn't rule on yet, which was a motion

20  for grand jury transcripts.  Mr. Williamson, I assume, did not

21  testify in the grand jury?

22        MS. FAVORIT:  No, he did not, Your Honor.

23        THE COURT:  Have you satisfied any Brady

24  requirements?  If there was Brady in the grand jury, did you

25  produce it?  If there wasn't, of course, you are not required

1  to produce it.

2          MS. FAVORIT:  Yes.  We actually produced that

3  transcript to counsel, and he produced that to Mr. Williamson.

4  So he was able to see the testimony from grand jury.

5          THE COURT:  And then the other housekeeping matter,

6  Mr. Williamson, I assume you want me to appoint appellate

7  counsel for you at the end of this?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  I will certainly do that.  Now, just FYI,

10  I mean, that's going to be it.  You had a couple lawyers.  I'm

11  not going to appoint another one.  So there's a group of

12  lawyers that do appeals work, and Mr. Gooding-Butts picks one

13  at random on the CJA list.  And the reason why it's picked at

14  random is because if I have a court favorite, then that's not

15  right, and maybe I wouldn't pick the lawyer that got me

16  reversed, or if you get me reversed I'm not ever going to pick

17  you again.  So the appellate panel is picked at random, and

18  that will be your attorney.  I won't be picking another one.

19  That will be it.

20          THE DEFENDANT:  Actually, Your Honor, I would like

21  Mr. Brunvand to do it.

22          THE COURT:  Are you willing to do the appeal?

23          MR. BRUNVAND:  My office does appeals, and we would

24  be willing to remain for that.

25          THE COURT:  Then he will be appointed.  I'm glad to

1  hear that because he's a good lawyer.  And they're all good

2  lawyers, but some of them are better than others.  And he is

3  better than others.  He is at the top of the list as quality

4  goes.  And that's a very high level, I might say.  So you're

5  fortunate to have him.

6          So we are here -- let me get to the paperwork.  We

7  are here, Mr. Williamson, because a jury found you guilty in

8  March of Counts 1 through 8 of the indictment, which those

9  counts, Count 1 was coercion and enticement of a minor to

10 engage in sexual activity, in violation of Title 18 U.S. Code

11 2422.

12         Count 2 was attempted production of child

13 pornography, in violation of 18 U.S. Code 251.

14         Counts 3 and 4 were charged production and attempted

15 production of child pornography, in violation of Title 18 U.S.

16 Code 2251.

17         Counts 5, 6, and 7 charged you with distribution of

18 child pornography, in violation of Title 18 U.S. Code 2252.

19         And Count 8 charged you with possession of same, in

20 violation of Title 18 U.S. Code 2252.

21         I previously accepted the guilty verdict and adjudged

22 you guilty of those offenses.  I do understand that you

23 dispute it in its entirety.  So we are now here for the

24 sentencing portion.

25         And let me ask you this.  Have you had enough time to

1    review the pre-sentence report and go over these matters as

2    you wish either by yourself or with your standby counsel?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  Now generally, Mr. Williamson, so we do

5    this -- normally I wouldn't get into all this detail, but you

6    are representing yourself with standby counsel.  So the first

7    thing that I'm supposed to do is knock out the PSR, meaning

8    any particular objections by paragraph.  Now, it's my

9    understanding that you object to the PSR basically in its

10   entirety and the verdict, of course, and the way the entire

11   case was handled.

12             But with that objection, which I understand you have

13   made and you reassert here, are there any particular lines or

14   particular paragraphs of the PSR you wish to address, because

15   I'm going to ask the government the same question.  Any

16   particular lines or particular numerical paragraphs of the

17   PSR, which is the revised version 6/10/24, that you wish me to

18   address at this time as a specific objection by line or by

19   paragraph?

20             I have noted for the record you object to the entire

21   thing, the way it was handled, but any particular line or

22   particular paragraph that you wish to verbalize an objection

23   to here and have me address now?

24             THE DEFENDANT:  No, sir.

25             THE COURT:  Government, let me ask you, is there any

1  particular, by paragraph, any objections to the PSR as

2  written?

3          MS. FAVORIT:  No, Your Honor.

4          THE COURT:  So with that said and those responses, I

5  adopt the factual statements and guideline calculations in the

6  pre-sentence report and the statements and findings of facts

7  therein and find that the advisory guidelines are a total

8  offense level 43, criminal history category I.  The guideline

9  sentence is life.  There's a five-year to life term of

10 supervised release as to Counts 1 through 8.  Restitution is

11 to be determined.  We will determine that at a later date.

12          There is a fine range, and I won't impose a fine, but

13 the range under the guidelines -- based upon Mr. Williamson's

14 financial status I won't impose a fine.  The fine range is

15 $50,000 to $500,000, which there will be no fine.  There is an

16 $800 special assessment.  There is a $5,000 per count JVTA

17 assessment that is required.  And there's up to a $50,000 AVAA

18 assessment, and those are referred to in the pre-sentence

19 report.

20          So then having closed the PSR, Mr. Williamson, then I

21 hear what's called allocution, which can be any statements,

22 unsworn argument points to be made.  And the way we -- yes,

23 ma'am.

24          She always corrects my mistakes, so graciously.  Yes.

25          PROBATION OFFICER:  My apologies.  It is criminal

1   history category II.

2          THE COURT:  I'm sorry, II.  I probably misspoke.

3   Thank you.  Thank you.

4          So Mr. Williamson, what we now have is allocution,

5   which is comments, arguments.  It can be anything.  And we

6   will hear from the government, and they can say whatever they

7   want.  And then we will hear from you and/or Mr. Brunvand or

8   any other presentation you wish to make about where the

9   sentencing should come out.  So we will hear from the

10  government at this time by way of allocution and anything you

11  wish to present.

12         MS. FAVORIT:  Yes, Your Honor.  May I approach?

13         THE COURT:  Yes.

14         MS. FAVORIT:  As a housekeeping matter for the United

15  States, when I filed my sentencing memorandum, the attachment

16  had some things that should be sealed or redacted.  So I

17  wondered if I could go ahead and seal the attachment to the

18  sentencing memo.

19         THE COURT:  We'll note that they are sealed, and

20  Mr. Gooding-Butts will take care of that.  And I have read

21  that submission.  It's at Document 270.

22         MS. FAVORIT:  Thank you, Your Honor.

23         The United States believes the facts in this case and

24  the defendant's conduct are egregious and demand that life

25  sentence that he scores within the sentencing guidelines.

It's necessary due to the nature and circumstances, to promote

respect for the law, provide just punishment, afford adequate

deterrence, and protection of the public against this

defendant.

The nature and circumstances of this offense, as I

stated, were egregious.  Your Honor had the benefit of hearing

the entirety of the trial.  And I won't go into too much

detail as you have already read my sentencing memorandum, but

this defendant thought that he scored a windfall with this

family.  He took advantage of a family who came from another

country, a child who did not speak English when she got here.

He slowly over time groomed her, bent her to his will, became

that father figure for her that she did not have in the United

States.

We have victims and we have vulnerable victims.  And

this victim fits into that of vulnerable.  Not just because of

her status as a child, but she was an isolated child from

another country who had to learn English when she got here.

Over time he did what was beneficial to himself, and

he exploited that child.  And he did it in a way in which that

victim feared for her safety with anonymous emails over a year

period where she did not know where these sexually explicit

and eventually child pornography was coming from.  She was

treating Mr. Williamson as that father figure.  And because of

that, she confided in him about those scary emails she was

1  receiving.  And he dismissed her claims, of course because

2  it's him, and he continued that harassment of her behind

3  closed doors.

4      His behavior escalated.  It wasn't just sending these

5  child pornographic attachments or explicit content.  He

6  eventually sexually abused her as we heard from the victim.

7  And not just once, multiple times.  He would kiss her, touch

8  her butt, touch her vagina, and eventually oral sex.

9      When he was ever faced with rejection, instead of

10 taking that and stopping or being the adult in this situation,

11 he would retaliate again via email as he does and would shame

12 her for the sexual activity that happened between them.

13     The evidence that we presented at trial demonstrated

14 that Mr. Williamson was a dangerous predator ready to exploit

15 that vulnerable child.  He routinely used those tactics on

16 her, made her dependent on him and her family dependent on

17 him.  He was the breadwinner.  He was the home renter.

18 Everything was controlled by him.  He purchased the cell phone

19 for the family.  This dangerous behavior, we believe, requires

20 that significant sentence.

21     Going to his history and characteristics, he has a

22 long, demonstrated history of violating the law.  So this

23 isn't simply a one-time offense for Mr. Williamson.  He has

24 been in court quite a bit.  He has been in prison quite a bit.

25 He is a convicted felon, and it is a range of criminal

1  offenses.  It's not just fraud, but batteries, escape from

2  jail charge, schemes to defraud, and specifically violating

3  court orders.  And when he had a court order to not contact

4  the mother of the victim, he violated that over 70 times and

5  continued to violate that here in federal court as you saw

6  with the letter attachments.

7           I wanted to get into that for a second.  This is

8  something that has been ongoing throughout this case, that the

9  victim's mother was generous enough to bring us those letters

10  every time Williamson wrote them.  And we had the benefit of

11  reading those letters, and he would continuously harass, via

12  written word, this family that he victimized already,

13  threatening with legal action, whether it's immigration,

14  threatening to reverse their divorce decree and continuing to

15  say, "I'll see you soon," which is really frightening for the

16  victim's family to receive.  He has acted as if there is no

17  consequences or at least none that he fears.  He continues to

18  deny any and all facts from this case.  That is really scary

19  for eventually releasing him to the public.  This is an

20  individual who will likely never accept the crime that he has

21  committed.  And if he is eventually released to the public,

22  children will be in danger who live near him or around him.

23  At what point will he be able to find a new family who will

24  believe his lies and start this process over again I think is

25  a genuine concern in this case.

1          So there's a strong need to protect the public from

2     further crimes of him.  He demonstrated escalating dangerous

3     behavior against a child.  He took substantial steps to gain

4     access to the victim in this case.  He started small and let

5     that escalate until he became a safe adult for the victim so

6     that he could victimize her.  He again demonstrates zero

7     remorse for his crimes.  And so even today disputing that

8     evidence makes him a danger to our society.

9          Your Honor had the benefit of reading some of his

10    letters that I attached in the sentencing memorandum and that

11    were attached in the PSR, but he will continue to say, "Give

12    all of our children a hug for me, a kiss to the little ones."

13    And when he says "all of our children," he always means the

14    victim.  And that's why he says "all of our children."  And he

15    says, "And, oh, yeah, I will see them soon, real soon."

16         Because of that, we would also ask that there would

17    be an order for no contact with the victim or the mother or

18    the other children.  I think that there is a serious concern

19    he is going to reach out to those kids at least until they're

20    18.  We would request that as a condition of his sentence.

21         THE COURT:  Yeah, I'm not sure I can do that as a

22    condition of his custodial sentence.  I mean, what would I do?

23    Hold him in contempt?

24         MS. FAVORIT:  Yes.  And I think that is the only

25    mechanism.  But unfortunately, based on his history, I think

 1  that that would be better than nothing.

 2          THE COURT:  All right.  Go ahead.

 3          MS. FAVORIT:  Apart from that, Your Honor, we are

 4  relying on our sentencing memo.  We believe this does demand

 5  that life sentence.  He's 60 years old, and he should spend

 6  the rest of his life in prison for what he did.

 7          THE COURT:  Well, thank you.

 8          Does anyone else in the courtroom wish to speak or

 9  address the Court or present anything along the lines of the

10  government's presentation we've just heard?  Anyone else?

11          All right.  I see no one else.

12          Is that correct, Ms. Favorit?

13          MS. FAVORIT:  That's correct, Your Honor.

14          THE COURT:  So let's hear from the defense,

15  Mr. Brunvand, what you might have to say.  And of course,

16  Mr. Williamson, if he wishes to speak, now would be his time.

17  If he doesn't wish to speak, that's fine, but he's going to

18  have to tell me that according to the Eleventh Circuit.  So go

19  ahead.

20          MR. BRUNVAND:  Yes, Your Honor.  I don't know if you

21  overheard Mr. Williamson indicate to me he wanted me to take

22  over.  Do you need to inquire of him about that?

23          THE COURT:  No.  So that's fine.

24          Mr. Williamson, you prefer that Mr. Brunvand -- he's

25  a very skilled lawyer.  Every judge in this part of the state

1   anyway knows that Bjorn Brunvand is a very good lawyer.  But

2   what -- that's not relevant to your choice.  So you prefer

3   Mr. Brunvand to give your allocution; is that correct?

4           THE DEFENDANT:  Yes, sir.

5           THE COURT:  If you wish to speak, you also may.  Do

6   you understand that?

7           THE DEFENDANT:  Yes, sir.

8           THE COURT:  After he talks, do you want to talk or do

9   you want to leave it to your lawyer?

10          THE DEFENDANT:  No.  I'll leave it to the lawyer.

11          THE COURT:  So I've just heard from you that you're

12  going to rely on counsel, and that's just fine.  He certainly

13  knows what he's doing.

14          All right, Counsel.  Glad to hear from you.

15          MR. BRUNVAND:  Yes, Your Honor.  My client is not

16  quite 60 yet, but he will be 60 next week.  The government

17  indicated that he has served prison time in the past.  I don't

18  believe that's accurate.  There is an entry in the PSR that

19  suggests that at one point he received 369 days' imprisonment.

20  I believe that's probably a year in the county jail.  I didn't

21  see any indication that he has actually served prison time.

22          Other than that, Your Honor, my client maintains his

23  innocence.  He understands the allegations that are made, but

24  he maintains that he did not do the things that the jury

25  convicted him of.

1          We would ask the Court to examine the case and

2     consider a sentence less than life.  I would suggest to you

3     that a sentence of 30 years would still be most likely a life

4     sentence considering the fact that he's going to be 60 years

5     old next week.

6          We would also ask -- Mr. Williamson had asked me to

7     request a recommendation for placement in a facility in the

8     State of California where he has some friends that might be

9     able to visit him.

10         THE COURT:  I will certainly do that.

11         MR. BRUNVAND:  Yes, Your Honor.  And that's all we

12    have.

13         THE COURT:  So Mr. Gooding-Butts will recommend

14    California as a venue of -- and again, that's just a

15    recommendation, but we'll certainly put that down.

16         Anything else from the defense?

17         MR. BRUNVAND:  I guess the only other thing, as far

18    as the idea of ordering him not to be able to have contact, I

19    would suggest the appropriate vehicle for that would be they

20    can file an injunction in state court that can be served on

21    the BOP, but I don't believe that it would be appropriate for

22    the Court to order that.

23         THE COURT:  I'm just unsure whether I can do that.

24    So the solution to that, of course, is that if mail arrives in

25    the mailbox, which we all do with 90 percent of our mail

1  anyway, and you don't want the mail, you just throw it in the

2  trash and you don't open it.

3          Anything else?  Does that conclude the defense

4  presentation?

5          MR. BRUNVAND:  Yes, Your Honor.

6          THE COURT:  So this sentence is imposed considering

7  the nature and circumstances of the offense and the history

8  and characteristics of the defendant and the need for the

9  sentence to reflect the seriousness of the offense and to

10  promote respect for the law and provide just punishment for

11  the offense and to afford adequate deterrence to criminal

12  conduct.  So that's the basis for the guideline sentence.

13          And I've heard from the defense why judgment

14  shouldn't be pronounced.  And Mr. Williamson has told me he is

15  satisfied for his lawyer to speak for him and he chose not to

16  speak.  So I found no cause to the contrary.

17          So I'm not going to hoot and holler and get on a big

18  high-horse here, but I will say that I agreed with everything

19  that Ms. Favorit said.  And pursuant to 3551 and 3553, it's

20  the judgment that Mr. Williamson is committed to the custody

21  of Bureau of Prisons for a term of life.  A term of life is --

22  it's a term of life as to Count 1, which is concurrent with a

23  360-month term as to Counts 2, 3, and 4, and a 240-month term

24  as to Counts 5, 6, 7, and a 120-month term as to Count 8, all

25  to run concurrently.

1        Upon release from imprisonment, if you are released

2    from imprisonment, although I sentenced you to life, you will

3    have to serve a term of supervised release of life.  The term

4    consists of a life term of supervised release as to Counts

5    1 and 8, all such terms to run concurrently.

6        While on supervised release, you will have to comply

7    with the mandatory and standard conditions adopted by the

8    Court in the Middle District, which can be found at 5D1.3(a)

9    and (c) of the U.S. Sentencing Guidelines, and in addition the

10    following special conditions:

11        You will have to participate in a mental health

12    treatment program, out-patient or in-patient, and follow the

13    probation office's instructions regarding the implementation

14    of this directive.  You will have to contribute to the cost of

15    these services not to exceed an amount determined reasonable

16    by the probation office's sliding scale for mental health

17    treatment services.  You will have to participate in a mental

18    health treatment program specializing in sexual offender

19    treatment and submit to polygraph testing for treatment and

20    monitoring purposes.  You will have to follow the probation

21    office's instructions regarding implementation of this

22    directive.

23        Further, you have to contribute to the cost of these

24    services, such treatment and/or polygraphs, not to exceed an

25    amount determined reasonable by the probation officer based

1  upon ability to pay or availability of third-party payment and

2  in conformance with the probation office's sliding scale for

3  treatment services.

4          You will have to register with the state sexual

5  offender registration agencies in any state where you reside,

6  visit, are employed, carry on a vocation, or are a student as

7  directed by probation.  The probation officer shall provide

8  state officials with all information required under Florida

9  sexual predator and sexual offender notification and

10 registration statutes, Florida Statute 943.0435 and/or the Sex

11 Offender Registration and Notification Act, which is Title 1

12 of the Adam Walsh Child Protection and Safety Act of 2006,

13 public law 109-248, and may direct the defendant to report to

14 these agencies personally for required additional processing

15 such as fingerprinting, photographing, and DNA collection.

16         You shall have no direct contact with minors under

17 the age of 18 without the written approval of the probation

18 officer and shall refrain from entering into any area where

19 children frequently congregate, including schools, day care

20 centers, theme parks, playgrounds, et cetera.  You are

21 prohibited from possessing, subscribing to, or viewing any

22 images, videos, magazines, literature, or other materials

23 depicting children in the nude and/or in sexually explicit

24 positions.  Without prior written approval of the probation

25 office, you are prohibited from either possessing or using a

1  computer, including a smartphone, a handheld computer device,

2  a gaming console, or an electronic device capable of

3  connecting to an online service or Internet service provider.

4  This prohibition includes a computer at a public library and

5  Internet cafe, your place of employment, or an educational

6  facility.  Also, you are prohibited from possessing an

7  electronic data storage medium, including flash drives,

8  compact disks or floppy disks, or any data encryption

9  technique or program.  If approved to possess or use a device,

10 you must permit routine inspection of the device, including

11 the hard drive and any other electronic data storage medium to

12 confirm adherence to this condition.

13        The United States Probation Office must conduct the

14 inspection in a manner no more intrusive than necessary to

15 ensure compliance with this condition.  If this condition

16 might affect a third party, including your employer, you must

17 inform the third party of this restriction, including the

18 computer inspection provision.  No contact, direct or

19 indirect, with victim D.A. or any of her blood relatives,

20 including siblings and mother.

21        You shall submit to a search of your person,

22 residence, place of business, any storage units under your

23 control, computer, or vehicle conducted by the United States

24 Probation Officer at a reasonable time and in a reasonable

25 manner based upon a reasonable suspicion of contraband or

1   evidence of a violation of conditions of release.  You will

2   inform any other residents the premises may be subject to a

3   search pursuant to these conditions.  Failure to submit to a

4   search may be grounds for revocation.

5          You are prohibited from incurring any new credit

6   charges, opening additional lines of credit, or obliging

7   yourself for any major purchases without approval of

8   probation.  You will have to provide the probation officer

9   access to any requested financial information.

10         Having been convicted of a qualifying felony, you

11  will have to cooperate in the collection of DNA as directed by

12  probation.  The mandatory drug testing requirements of the

13  Violent Crime Control Act are suspended; however, you must

14  submit to random drug testing not to exceed two tests per week

15  if you're on supervised release.

16         The determination of restitution is deferred.

17  Pursuant to Title 18 U. S. C. 3664(d)(5), a day for the final

18  determination of victim losses shall be under separate order

19  and will not exceed 90 days.

20         Mr. Brunvand, if we have a hearing on that, do you

21  want me to have your client here for that?  It might really

22  disturb his placement out West.

23         MR. BRUNVAND:  No, Your Honor.  I think it would be

24  better if he could be transported as soon as possible.

25         THE COURT:  Mr. Williamson, if there is a restitution

 1  hearing then, Mr. Brunvand is waiving your presence at that.

 2  Do you agree with that?

 3            THE DEFENDANT:  Yes, sir.

 4            THE COURT:  So based upon a financial status, there

 5  is no imposition of a fine.  There is an $800 special

 6  assessment which is due immediately.

 7            Now, what about these other assessments?  Government,

 8  do you know anything about those?

 9            Never mind.  I have it.

10            So I find that the defendant is indigent as shown by

11  his court-appointed counsel.  And the special assessment

12  pursuant to 18 U.S.C. 3014 is not imposed.  Likewise, the

13  assessment pursuant to 18 U.S.C. 2259A is not imposed based on

14  his financial status.

15            After considering the advisory guidelines and all the

16  factors identified in 3553(a)(1) through (7), I find the

17  sentence imposed is sufficient but not greater than necessary

18  to comply with the statutory purposes of sentencing.  The

19  guideline range exceeds 24 months.  And the reason for

20  imposing the selected sentence are as I stated previously in

21  my comments just a minute or two ago.

22            So we will recommend California.  The defendant is

23  remanded to serve his sentence.

24            Having pronounced sentence, government, any

25  objections beyond those previously noted?

1           MS. FAVORIT:  There's no objection, but we would ask

2      that the preliminary order of forfeiture be made final.

3           THE COURT:  And I will certainly enter that as well.

4      Mr. Gooding-Butts will enter that.

5           Mr. Brunvand, Mr. Williamson, any objections beyond

6      those previously noted?

7           MR. BRUNVAND:  No, Your Honor.

8           THE COURT:  All right.  Fourteen-day appeal for the

9      notice of appeal, Mr. Williamson.  Mr. Brunvand will take care

10     of that.  And the clerk will accept any filing without a fee.

11     Mr. Brunvand's good offices will handle your appeal, and the

12     government may file an appeal from this sentence as well.

13           All right.  Thank you.  Good day.

14           (Proceedings concluded at 10:11 a.m.)

15

16

17

18

19

20

21

22

23

24

25

```
1  UNITED STATES DISTRICT COURT    )
                                    )
2  MIDDLE DISTRICT OF FLORIDA       )
```

### REPORTER TRANSCRIPT CERTIFICATE

I, Tracey Aurelio, Official Court Reporter for the United States District Court, Middle District of Florida, certify, pursuant to *Section 753, Title 28, United States Code*, that the foregoing is a true and correct transcription of the stenographic notes taken by the undersigned in the above-entitled matter (Pages 1 through 22 inclusive) and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States of America.

/s    *Tracey Aurelio*
_____
Tracey Aurelio, RMR, RDR, CRR
Official Court Reporter
United States District Court
Middle District of Florida
Tampa Division
Date:  September 16, 2024